Thomas A. Vogele, Esq.  (SBN 254557)
Timothy M. Kowal, Esq. (SBN 254709)
Brendan M. Loper, Esq. (SBN 282198)
THOMAS VOGELE & ASSOCIATES, APC
3199 Airport Loop Drive, Suite A3
Costa Mesa, California 92626
Telephone:  (714) 641-1232
Facsimile:   (888) 391-4105
Email:        tvogele@tvalaw.com
                 tkowal@tvalaw.com

Attorneys for plaintiffs C & C Properties, Inc.,
JEC Panama, LLC and Wings Way, LLC

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT

## OF CALIFORNIA – BAKERSFIELD DIVISION

| | |
|---|---|
| C & C PROPERTIES, INC., a California corporation; JEC PANAMA, LLC, a California limited liability company; and WINGS WAY, LLC, a Delaware limited liability company,<br><br>     Plaintiffs,<br><br>vs.<br><br>SHELL PIPELINE COMPANY, a Delaware limited partnership; ALON USA PARAMOUNT PETROLEUM CORPORATION, a Delaware corporation; EOTT ENERGY OPERATING LIMITED PARTNERSHIP, a Delaware limited partnership; PLAINS ALL AMERICAN GP, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive,<br><br>     Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>  1) **BREACH OF EASEMENT AGREEMENT;**<br>  2) **DECLARATORY RELIEF;**<br>  3) **FRAUD;**<br>  4) **TRESPASS;**<br>  5) **INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE;**<br>  6) **NEGLIGENT INTERFERENCE WITH ECONOMIC ADVANTAGE;**<br>  7) **INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>Action Filed:   November 25, 2014<br>Trial Date:      Not Set |

- 1 -
**COMPLAINT**

35666; 2080-001

Plaintiffs C & C PROPERTIES, INC., a California corporation ("C&C"); JEC PANAMA, LLC, a California limited liability company ("JEC"); and WINGS WAY, LLC, a Delaware limited liability company ("Wings Way"), all having their principal places of business in Bakersfield, California (hereinafter "Plaintiffs"), complain and allege against defendants SHELL PIPELINE COMPANY, a Delaware limited partnership ("Shell Pipeline"); ALON USA PARAMOUNT PETROLEUM CORPORATION, a Delaware corporation ("Alon"); EOTT ENERGY OPERATING LIMITED PARTNERSHIP, a Delaware limited partnership ("EOTT"); PLAINS ALL AMERICAN GP, LLC, a Delaware limited liability company ("Plains"), and DOES 1 through 25 (collectively "Defendants") as follows:

## THE PARTIES

1.      Plaintiff C&C is a California corporation duly organized and existing under the laws of the State of California and is qualified and registered to do business in California, having its principal place of business in Bakersfield, California.

2.      Plaintiff JEC is a California limited liability company whose members are all natural persons or entities that are citizens of either California or Nevada. JEC is qualified and registered to do business in California, having its principal place of business in Bakersfield, California.

3.      Plaintiff Wings Way is a Delaware limited liability company whose members are all citizens of the State of California.  Wings Way is qualified and registered to do business in California, having its principal place of business in Bakersfield, California.

4.      Defendant Shell Pipeline is a Delaware limited partnership whose principal place of business is in Houston, Texas.  After a reasonable search of

**COMPLAINT**

35666; 2080-001

publicly available information, Plaintiffs are informed and believe and thereon allege that Shell Pipeline's partners are not citizens of California.

5.      Defendant Alon is a Delaware corporation whose principal place of business is in Dallas, Texas.

6.      Defendant EOTT is a Delaware limited partnership whose principal place of business is in Houston, Texas.  After a reasonable search of publicly available information, Plaintiffs are informed and believe and thereon allege that EOTT's partners are not citizens of California.

7.      Defendant Plains is a Delaware limited liability company having its principal place of business in Houston, Texas.  After a reasonable search of publicly available information, Plaintiffs are informed and believe and thereon allege that Plains' members are not citizens of California.

8.      The true names and capacities of Defendants sued herein as DOES 1 through 25, inclusive, are unknown at the present time to Plaintiff, who therefore sues such Defendants by such fictitious names pursuant to California Code of Civil Procedure section 474.  Plaintiffs are informed and believe, and thereon allege, that each DOE defendant is responsible in some manner, whether by breach of contract, breach of warranty, breach of covenant, negligence, tort, or otherwise, for the occurrences herein alleged, in that Plaintiffs' injuries and damages as herein alleged were proximately caused by said Defendants' acts, failures to act, representations, and omissions.  Plaintiffs will amend this complaint to allege such DOE defendants' true names and capacities when ascertained.

9.      Except as otherwise specified herein, Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, each of the Defendants, including unknown DOE defendants, was the agent and employee of each of its co-Defendants, and in doing the things herein mentioned, was acting

- 3 -
**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

under the scope of its authority as such agent and employee and with the permission and consent of each of its co-Defendants.

10.     Plaintiffs are in some doubt as to whether they are entitled to redress from DOES 1 through 25, inclusive, and therefore all Defendants have been joined herein with the intent that the question as to whether all of them, or one or more of them, is liable to Plaintiffs, and to what extent, be resolved; and that liability may be determined in this action; and that the Court may award judgment to Plaintiff as against Defendants, and each of them, either jointly, severally, or in the alternative.

## JURISDICTION

11.     This is an action to recover damages and obtain injunctive relief under the laws of the State of California, and arises out of the transaction of business, commission of tortious injury, and other activities by Defendants within the County of Kern and elsewhere.  Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1), as this is a dispute between citizens of different states where the amount in controversy exceeds $75,000.

12.     This Court has personal jurisdiction over the Defendants because they are all engaged in ongoing business within the State of California, including the transportation of oil, gas, or both, through pipelines on Plaintiffs' real property in Kern County, California.

13.     By conducting business within the forum state, consummating the transactions and committing the acts complained of herein, Defendants sought to avail themselves of the benefits of doing business in California.  Thus, it is not inequitable or unreasonable to hail them into this Court to answer for their conduct and actions as alleged herein.

- 4 -
**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VENUE

14.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because it is the site of the events or omissions giving rise to the claims, and the site of the property that is the subject of the action.

## GENERAL ALLEGATIONS

15.     On or about June 28, 2013, Plaintiffs purchased and obtained lawful possession of 138 acres of undeveloped real property ("Subject Property") in Bakersfield, California, County of Kern, from Chevron USA, Inc., a Pennsylvania corporation ("Chevron").  The Subject Property abuts Merle Haggard Drive immediately north of Meadows Field Airport, and is commonly identified as APN 483-010-29.   Plaintiffs intend to develop the Subject Property for commercial/industrial use, and so informed Chevron in their negotiations.  Among other things, development of the Subject Property involves substantial improvements to Merle Haggard Drive, required by the County of Kern.

16.     Prior to close of escrow, Plaintiffs discovered that Chevron had granted three recorded easements ("Recorded Easements") in the Subject Property to Shell Oil Company ("Shell Oil"), a Delaware corporation with its principal place of business in Texas.  The Recorded Easements are located in the southwest and southeast corners of the Subject Property, in the path of the required Merle Haggard Drive improvement project.   Plaintiffs also discovered that sometime later, Shell Oil purportedly assigned the easements to Shell Pipeline.

17.     The Recorded Easements are more specifically identified as follows:

   a. An easement TO LAY, CONSTRUCT AND MAINTAIN ONE PIPE LINE FOR THE TRANSPORTATION OF WATER and incidental purposes, recorded OCTOBER 13, 1937 in BOOK 747, PAGE 342 of

- 5 -

**COMPLAINT**

Official Records (the "747 Easement Agreement," attached hereto as **Exhibit 1**);

   b. An easement for A PIPE LINE OR TWO PIPE LINES, FOR THE TRANSPORTATION OF OIL, PETROLEUM, GAS, GASOLINE, WATER AND OTHER SUBSTANCES and incidental purposes, recorded OCTOBER 13, 1937 in BOOK 751, PAGE 111 of Official Records (the "751 Easement Agreement," attached hereto as **Exhibit 2**); and

   c. An easement TO LAY, CONSTRUCT AND MAINTAIN A PIPE LINE FOR THE TRANSPORTATION OF OIL and incidental purposes, recorded FEBRUARY 26, 1938 in BOOK 765, PAGE 292 of Official Records (the "765 Easement Agreement," attached hereto as **Exhibit 3**).

18.   All three Recorded Easements contain a clause requiring that the grantee "not interfere with or obstruct the use of said premises by Grantor, or injure or interfere with any person or property on or about said premises."

19.   All three Recorded Easements contain a relocation clause.  That clause states:

> "Whenever, in the opinion of Grantor, said pipe line interferes with the Grantor's use of or operations upon the premises, Grantee shall, at its own expense and risk, within sixty (60) days of written request therefor by Grantor, lower or relocate and reconstruct said pipe line upon and across said premises to the depth or along the route specified by Grantor in such request, and shall restore said premises as nearly as possible to the same state and condition there were in prior to the lowering or

**COMPLAINT**

35666; 2080-001

prior to the reconstruction of said pipe line, as the case

may be."

All three easements also contain a restriction on assignment, stating, in relevant part:  "This grant of right of way is personal to Grantee and shall not be assigned by Grantee, in whole or in part, without the written consent of the Grantor being first had."  In connection with Plaintiffs' purchase of the Subject Property, Chevron produced purportedly all relevant documents concerning the Subject Property, which did not reveal Chevron's written consent to assignment of any of the recorded easements.  Accordingly, Plaintiffs are informed and believe and thereon allege that the grantor never provided written consent to Shell Oil's purported assignment of the Recorded Easements to Shell Pipeline.

20.     Finally, all three Recorded Easements contain a successors clause, stating: "Except as otherwise provided herein, the terms and conditions of this agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto."

21.     After investing millions of dollars to acquire the Subject Property, Plaintiffs made further substantial investments in pre-development activities.  In connection with these activities, Plaintiffs discovered that Defendants' pipelines were not confined to the Recorded Easements at the southwest and southeast corners of the Subject Property.  Instead, the pipelines extend across the entire frontage of the Subject Property, parallel and directly adjacent to Merle Haggard Drive.  The pipelines materially interfere with the road improvement project required by the County, and with Plaintiffs' planned commercial/industrial development.

22.     Accordingly, on or about June 19, 2014, Plaintiffs made written demand on Shell Pipeline for removal or relocation of all pipelines operated within

**COMPLAINT**

the Recorded Easements within sixty (60) days, per the express terms of the easements.

23.     On or about July 10, 2014, Shell Pipeline responded and informed Plaintiffs that one of the subject pipelines within the 751 Easement had been sold, and that the easement putatively had been assigned to Koch Industries, Inc., ("Koch").  Plaintiffs are informed and believe and thereon allege that Koch later sold and assigned the easement to EOTT in or about 1998.  Com

24.     Shell Pipeline also informed Plaintiffs that it was operating another active pipeline pursuant to a then-unknown unrecorded easement ("First Unrecorded Easement").  A true and correct copy of the First Unrecorded Easement agreement is attached hereto as **Exhibit 4**.  Chevron purportedly had granted the First Unrecorded Easement to Getty Oil Company ("Getty Oil"), a Delaware corporation with its principal place of business in New York, in 1982.  Getty Oil purportedly had subsequently assigned the First Unrecorded Easement to Shell Pipeline in 2002.  The First Unrecorded Easement was neither recorded nor disclosed, and Plaintiffs could not have discovered it through reasonable diligence prior to purchasing the Subject Property.

25.     Nonetheless, the First Unrecorded Easement contains relocation, removal, abandonment, and restrictions on assignment clauses effectively identical to the Recorded Easements.  Plaintiffs are informed and believe and thereon allege that the grantor of the First Unrecorded Easement never provided written consent to the grantee's purported assignment to Shell Pipeline.

26.     Despite Plaintiffs' demand, Shell Pipeline has failed and refused to remove or relocate any of its pipelines, despite expressly required under the Recorded Easements and the First Unrecorded Easement.

27.     Plaintiffs subsequently discovered that on December 3, 1996, Chevron purportedly granted another unrecorded easement ("Second Unrecorded

- 8 -
**COMPLAINT**

Easement") to Chevron U.S.A. Holdings, Inc., f/k/a Texaco Exploration and Production, Inc. ("TEPI"), a Delaware corporation whose principal place of business, Plaintiffs are informed and believe, is not in California.  A true and correct copy of the Second Unrecorded Easement agreement is attached hereto as **Exhibit 5**.  Plaintiffs are informed and believe and thereon allege that this Second Unrecorded Easement was purportedly transferred several times before finally being purportedly assigned and transferred to Alon on or about June 1, 2010.  The Second Unrecorded Easement was neither recorded nor disclosed, and Plaintiffs could not have discovered it through reasonable diligence prior to purchasing the Subject Property.  Plaintiffs are informed and believe and thereon allege that Alon operates a pipeline within the Second Unrecorded Easement.

28.     The Second Unrecorded Easement also contains relocation, removal, abandonment, and restrictions on assignment clauses effectively identical to the Recorded Easements.  Plaintiffs are informed and believe and thereon allege that the grantor of the Second Unrecorded Easement never provided written consent to TEPI's purported assignment to Alon.

29.     On or about June 19, 2014, Plaintiffs notified Alon to relocate or remove its pipeline within sixty (60) days per the express terms of the Second Unrecorded Easement.  Despite demand, Alon has failed and refused to relocate or remove the pipeline.

30.     Notwithstanding the First Unrecorded Easement and Second Unrecorded Easement, Plaintiffs are informed and believe and thereon allege that Defendants currently have pipelines which, in whole or in part, lie outside the easements.

31.     Plaintiffs also discovered that one of the pipelines purportedly operated under the 751 Easement was sold to Plains.  Plaintiffs are informed and believe that this pipeline had been abandoned for more than one (1) year, and thus

35666; 2080-001

the easement, at least with respect to this pipeline, is terminated by the terms of the 751 Easement agreement, which require removal on sixty (60) days' notice.

32.     On October 7, 2014, Plaintiffs notified Plains to remove its abandoned pipeline.  Plains failed to comply.

33.     Plaintiffs are informed and believe and thereon allege that Shell Pipeline and its putative assignees EOTT, Alon, and Plains have extended and operated their pipelines beyond the geographic scope of the easements and into portions of Plaintiffs' property not permitted by the easements, whether recorded or unrecorded.  Plaintiffs are informed and believe and thereon allege that Shell Pipeline has at least four (4) pipelines on the Subject Property; and Alon, EOTT, and Plans each have at least one (1) pipeline on the Subject Property.

34.     All of the pipelines, whether or not operated pursuant to or within the easements, materially interfere with Plaintiffs' ability to develop the Subject Property.  Defendants' refusal to remove or relocate the pipelines would force Plaintiffs to bear the expense and risk, including risk of bodily injury, to remove or relocate the pipelines.  Defendants' conduct has also disrupted the timetable of Plaintiffs' development and forced Plaintiffs to incur added and extraordinary costs, resulting in material injury to Plaintiffs.  Among other things, Plaintiffs have been forced to bear the expense of obtaining further engineering opinions and legal and consulting fees relating to the road-widening project impacted by Defendants' pipelines.

35.     Moreover, a portion of the Subject Property is subject to a Purchase Agreement and Escrow Instructions dated March 19, 2014 ("Purchase Agreement"), requiring Plaintiffs to obtain necessary approvals from the appropriate governmental authorities to subdivide the Subject Property.  Unless those approvals are obtained prior to the earlier of January 15, 2015 or 15 days after demand by the buyer, Plaintiffs must convey the entire Subject Property.

**COMPLAINT**

35666; 2080-001

Defendants' pipelines have prevented and are preventing Plaintiffs from obtaining necessary subdivision approvals.  Without immediate injunctive relief requiring Defendants to comply with the terms of the easements and to cease trespassing on the Subject Property, Plaintiffs stand in ongoing and imminent risk of losing the entire Subject Property, a unique piece of real property.  Defendants' conduct also deprives Plaintiffs of the ability to make productive use of the property, and exposes Plaintiffs to liability resulting from Defendants' continued operation of their pipelines in the path of development.

36.     Defendants' refusal to remove or relocate the pipelines also threatens the health and safety of Plaintiffs and the general public.  Defendants have failed and refused to fully identify and disclose the existence and location of various pipelines.  Accordingly, Plaintiff cannot be reasonably sure of whether, where, or how many high-pressure oil and gas lines may be in operation on its Subject Property.  Defendants' wrongful and outrageous conduct subjects Plaintiffs and their agents, employees, contractors, and members of the public to potential danger in developing the Subject Property in the presence of unknown high-pressure pipelines.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
#### (Against All Defendants)

37.     Plaintiffs re-allege paragraphs 1 through 36, inclusive, as if fully set forth and restated herein.

38.     Shell Pipeline and Alon are putative assignees of Shell Oil as the original grantee under the 747 Easement, 751 Easement, and 765 Easement agreements.

**COMPLAINT**

35666; 2080-001

39.    Pipelines belonging to Shell Pipeline and Alon do currently exist on the 747 Easement and 765 Easement, though whether they are currently active is not known.  Plaintiffs are informed and believe and thereon allege that Shell Oil does not have any pipelines within the easements.

40.    Plaintiffs are informed and believe and thereon allege that EOTT and Plains are putative assignees of Shell Pipeline.  Such pipelines belonging to Defendants do currently exist on the 751 Easement, though whether they are currently active is not known.

41.    The easement agreements require written consent of the grantor for any assignment to be effective.  Plaintiffs are informed and believe that no such consent was given.

42.    According to the easement agreements, whenever pipelines on the easements interfere with Plaintiffs' use or operation of the property, then upon notice and demand, Defendants must relocate their pipelines and restore the property at their expense.

43.    On or about June 19, 2014, Plaintiffs notified Shell Pipeline, Alon, EOTT, and Plains that their pipelines interfered with Plaintiffs' use and operation of the Subject Property and demanded relocation and restoration within 60 days.  As of the date of filing this complaint, Defendants have failed to comply.

44.    Defendants have interfered and continue to interfere with the Subject Property and with Plaintiffs' use.

45.    As a result of their ongoing breach, Defendants have caused ongoing irreparable harm to Plaintiffs by, among other things, preventing Plaintiffs from performing their contractual obligations to third parties to obtain the necessary governmental approvals to subdivide the Subject Property and record a new map with the County, thus subjecting Plaintiffs to the ongoing risk of imminent foreclosure and ultimate loss of the entire Subject Property on January 15, 2015;

**COMPLAINT**

35666; 2080-001

denying or frustrating Plaintiffs' business opportunities and contractual relationships to sell parcels of the Subject Property; subjecting Plaintiffs to the risk of litigation; preventing Plaintiffs from developing and making beneficial use of the undeveloped Subject Property; and requiring Plaintiffs and their employees and contractors to incur the expense and risk, including the risk of severe bodily injury and death, inherent in detecting, removing, and relocating the pipelines, whether known or unknown.  Plaintiffs should not be expected to incur these risks, which are by their nature difficult or impossible to measure, made moreso by the fact that Defendants have superior knowledge, skill, and experience concerning the whereabouts, placement, maintenance, and safe removal/relocation of the high-pressure pipelines.

## SECOND CAUSE OF ACTION

## DECLARATORY RELIEF – TERMINATION OF PERSONAL EASEMENTS

### (Against All Defendants)

46.     Plaintiffs re-allege paragraphs 1 through 45, inclusive, as if fully set forth and restated herein.

47.     Pursuant to each of the Recorded Easements, the First Unrecorded Easement, and the Second Unrecorded Easement, the easements are personal to the grantee and may not be assigned without the written consent of the grantor.

48.     Standard Oil Company of California, now Chevron, is the grantor of all the easements.  Shell Oil is the original grantee of the Recorded Easements.  Getty is the original grantee of the First Unrecorded Easement.  TEPI is the original grantee of the Second Unrecorded Easement.

49.     Plaintiffs are informed and believe that Defendants are purported assignees of Shell Oil, Getty, and/or TEPI.  However, by virtue of Plaintiffs'

**COMPLAINT**

35666; 2080-001

investigation and Chevron's production of purportedly all relevant documents concerning the Subject Property, Plaintiffs are informed and believe and thereon allege that Chevron never provided written consent to any purported assignment by Shell Oil, Getty, or TEPI concerning any of the easements to Defendants.

50.    By operation of the express terms of the easement agreements requiring written consent for any assignments, and the fact that no written consent was provided, the purported assignments to Defendants are invalid and void ab initio.

51.    On or about June 19, 2014, Plaintiffs made a demand on Defendants to remove the pipelines.  As of the date this complaint was filed, Defendants have failed to comply.

52.    A controversy exists now between Plaintiffs and Defendants over the validity of the purported assignments of the easements to Defendants and whether the easements have expired for nonuse.  Plaintiffs request a declaration to determine the parties' respective rights and obligations concerning the easements.

### THIRD CAUSE OF ACTION
### DECLARATORY RELIEF – INDEMNITY
**(Against All Defendants)**

53.    Plaintiffs re-allege paragraphs 1 through 52, inclusive, as if fully set forth and restated herein.

54.    Pursuant to each of the Recorded Easements, the First Unrecorded Easement, and the Second Unrecorded Easement, Defendants, as putative assignees, are required to bear all expenses to relocate the pipelines in the easements upon demand and notice that the pipelines conflict with Plaintiffs' use of the property.

**COMPLAINT**

35666; 2080-001

55.     Plaintiffs contend that, in addition to damages resulting from Defendants' failure to comply with Plaintiffs' notice and demand to relocate the pipelines, Defendants are further obligated to indemnify Plaintiffs and hold them harmless with respect to any claims, whether by Defendants or any third parties, arising out of Defendants' failure to remove or relocate the pipelines, including but not limited to efforts by Plaintiffs to relocate or remove them.

56.     A controversy exists between Plaintiffs and Defendants over the rights and obligations concerning the easements and the pipelines.  Plaintiffs request a declaration to determine the parties' respective rights and obligations concerning Defendants' obligation to indemnify Plaintiffs for claims arising out of Defendants' ongoing failure to comply with the removal and relocation provisions of the easement agreements.

## FOURTH CAUSE OF ACTION

### TRESPASS

### (Against All Defendants)

57.     Plaintiffs re-allege paragraphs 1 through 56, inclusive, as if fully set forth and restated herein.

58.     Since at least June 28, 2013, Defendants, without the consent or authority and against the will of Plaintiffs, have entered onto the Subject Property by and through their pipelines described above.

59.     The effect of Defendants' conduct as described above has been to frustrate and delay Plaintiffs' efforts to make productive use of the undeveloped Subject Property, including timely compliance with County requirements.  The existence of oil, gas, water, or other pipelines on the property, some of which may be currently active, prevents and frustrates development until substantial efforts are done to safely remove the pipelines.  The existence of the pipelines also prevents

**COMPLAINT**

Plaintiffs from obtaining necessary subdivision approvals, thereby jeopardizing Plaintiffs' interests in the Subject Property under the Purchase Agreement. Defendants' conduct thus deprives Plaintiffs of the value of their substantial investment.

60.     Plaintiffs advised Defendants on or about June 19, 2014 that Defendants were trespassing on the Subject Property without Plaintiffs' consent and demanded that Defendants remove the pipelines immediately.  To date, Defendants have refused to comply.

61.     Defendants, by and through their conduct, intend to continue to trespass, and therefore continue to deprive Plaintiffs of their right to exclusive possession of the property.  Plaintiffs are informed and believe and thereon allege that, unless restrained by this Court, Defendants will continue to trespass on the Subject Property, resulting in continued irreparable harm to Plaintiffs.

62.     As a result of Defendants' conduct, Plaintiffs have been deprived of the use and benefit of the Subject Property.  The potential damages that could proximately result from Defendants' continued trespass would be extremely difficult, if not impossible, to assess accurately, but are estimated in the range of $10 million.

63.     Defendants' continuing trespass alleged herein will require Plaintiffs to bring a multiplicity of actions to protect Plaintiffs' property interests, thereby rendering Plaintiffs' remedy at law inadequate.

64.     Plaintiffs are informed and believe and thereon allege that Defendants' trespass was conducted with oppression, fraud or malice so as to cause injury to Plaintiffs, and Defendants should be punished for their despicable conduct carried with a willful and conscious disregard of the rights and safety of Plaintiffs and the general public.

**COMPLAINT**

35666; 2080-001

# FIFTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (Against All Defendants)

65.    Plaintiffs re-allege paragraphs 1 through 64, inclusive, as if fully set forth and restated herein.

66.    Plaintiffs were and are engaged in valid and existing business for the development of commercial/industrial space in the Subject Property.  Plaintiffs have a reasonable expectation of economic benefit from that development in that Plaintiffs have negotiated with general and sub-contractors to supply infrastructure services and with several purchasers of individual, divided building lots within the Subject Property for the construction of commercial and industrial buildings. Plaintiffs expect that timely completion of the development will yield a profit of not less than approximately $10 million.

67.    Defendants knew of Plaintiffs' economic relationships and development plans at the time they received notice their pipelines interfered with Plaintiffs' use.

68.    Defendants intentionally disrupted the economic relationships Plaintiffs had with third parties for the development of the Subject Property by refusing to remove or relocate their pipelines.

69.    As a result of Defendants' intentional acts, the business relationships between Plaintiffs and third parties involved in the development of the Subject Property have been disrupted in that breaking ground and construction have been indefinitely halted due to Defendants' willful failure and refusal to remove their pipelines.

**COMPLAINT**

35666; 2080-001

70.    Defendants' interference with Plaintiffs' business relationships and economic activity has resulted in damage to Plaintiffs in an amount to be proven at trial, but no less than approximately $10 million.

71.    Plaintiffs are informed and believe and thereon allege that Defendants' actions and omissions herein alleged were conducted with oppression, fraud or malice so as to cause injury to Plaintiffs.  Defendants should be punished for their despicable conduct carried with a willful and conscious disregard of the rights of Plaintiffs.

## SIXTH CAUSE OF ACTION

### NEGLIGENT INTERFERENCE WITH PROSPECTIVE
### ECONOMIC ADVANTAGE

**(Against All Defendants)**

72.    Plaintiffs re-allege paragraphs 1 through 71, inclusive, as if fully set forth and restated herein.

73.    Plaintiffs were and are engaged in valid and existing business for the development of commercial/industrial space in the Subject Property, and have a reasonable expectation of economic benefit from that development, as alleged above.

74.    Defendants knew or should have known of Plaintiffs' economic relationships and development plans at the time they received notice their pipelines interfered with Plaintiffs' use.

75.    Defendants knew or should have known that their failure and refusal to remove or relocate their pipelines would disrupt Plaintiffs' economic relationships and opportunities in developing the Subject Property.

76.    As a result of Defendants' negligent acts and omissions, the business relationships between Plaintiffs and third parties involved in the development of the

- 18 -
**COMPLAINT**

Subject Property have been disrupted in that breaking ground and construction have been indefinitely halted due to Defendants' failure to remove their pipelines.

77.     Defendants' interference with Plaintiffs' business relationships and economic activity has resulted in damage to Plaintiffs in an amount to be proven at trial, but no less than approximately $10 million.

## SEVENTH CAUSE OF ACTION
## INJUNCTIVE RELIEF – SPECIFIC PERFORMANCE
### (Against All Defendants)

78.     Plaintiffs re-allege paragraphs 1 through 77, inclusive, as if fully set forth and restated herein.

79.     Plaintiffs have materially performed under all applicable easement agreements and are legally and equitably entitled to Defendants' reciprocal performance thereunder – specifically, removal of the pipelines in the Subject Property.

80.     Plaintiffs are informed and believe and thereon allege that there is no dispute that Defendants Shell Pipeline and Alon currently have and operate pipelines on the Subject Property, that Plaintiffs have demanded their removal within 60 days, and that Defendants failed to comply with that demand.

81.     Plaintiffs will suffer and have suffered irreparable harm as a result of Defendants' breaches and wrongful conduct.  Among other things, Defendants' conduct prevents Plaintiffs from performing their contractual obligations to third parties; subjects Plaintiffs to the ongoing risk of imminent foreclosure and loss of the entire Subject Property on January 15, 2015;  subjects Plaintiffs to the risk of litigation; denies or frustrates Plaintiffs' unique business opportunities and contractual relationships; prevents Plaintiffs from developing and making beneficial

**COMPLAINT**

35666; 2080-001

use of the undeveloped Subject Property; and forces Plaintiffs and their employees and contractors to incur the expense and risk, including risk of bodily injury, that Defendants are contractually obligated to incur.  Plaintiffs should not be expected to incur these risks, which are by their nature difficult or impossible to measure, made moreso by the fact that Defendants have superior knowledge, skill, and experience concerning the whereabouts, placement, maintenance, and safe removal/relocation of the high-pressure pipelines.

82.   As a result of the special nature and peculiar value of the obligations Defendants have breached, money damages would not be a just or reasonable substitute for their specific performance.  Moreover, it is impossible to ascertain the legal measure of money damages.

WHEREFORE, Plaintiffs pray as follows:

1.   Compensatory damages in an amount to be proven at trial;

2.   Specific performance;

3.   Injunctive relief;

4.   Punitive damages;

5.   Reasonable attorneys' fees as authorized by the written agreements;

6.   Costs of suit;

7.   Such other and further relief as the Court deems just and proper.


DATED: November 25, 2014        THOMAS VOGELE & ASSOCIATES, APC

By:_____
        Thomas A. Vogele
        Timothy M. Kowal
        Attorneys for plaintiffs C&C Properties,
        Inc., JEC Panama, LLC, and Wings
        Way, LLC

- 20 -
**COMPLAINT**

35666; 2080-001