Thomas A. Vogele, Esq.  (SBN 254557)
Timothy M. Kowal, Esq. (SBN 254709)
Brendan M. Loper, Esq. (SBN 282198)
THOMAS VOGELE & ASSOCIATES, APC
3199 Airport Loop Drive, Suite A3
Costa Mesa, California 92626
Telephone:  (714) 641-1232
Facsimile:   (888) 391-4105
Email:        tvogele@tvalaw.com
               tkowal@tvalaw.com

Attorneys for plaintiffs C & C Properties, Inc.,
JEC Panama, LLC and Wings Way, LLC

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C & C PROPERTIES, INC., a California corporation; JEC PANAMA, LLC, a California limited liability company; and WINGS WAY, LLC, a Delaware limited liability company,<br><br>          Plaintiffs,<br><br>vs.<br><br>SHELL PIPELINE COMPANY, a Delaware limited partnership; ALON USA PARAMOUNT PETROLEUM CORPORATION, a Delaware corporation; CHEVRON PIPE LINE COMPANY, a Delaware corporation; and DOES 1 through 25, inclusive,<br><br>          Defendants. | CASE NO.: 1:14-cv-01889 JLT<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>   **1) BREACH OF EASEMENT AGREEMENT;**<br>   **2) DECLARATORY RELIEF;**<br>   **3) FRAUD;**<br>   **4) TRESPASS;**<br>   **5) INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE;**<br>   **6) NEGLIGENT INTERFERENCE WITH ECONOMIC ADVANTAGE;**<br>   **7) INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>Action Filed:  November 26, 2014<br>Trial Date:      Not Set |

- 1 -

**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

Plaintiffs C & C PROPERTIES, INC., a California corporation ("C&C"); JEC PANAMA, LLC, a California limited liability company ("JEC"); and WINGS WAY, LLC, a Delaware limited liability company ("Wings Way"), all having their principal places of business in Bakersfield, California (hereinafter "Plaintiffs"), complain and allege against defendants SHELL PIPELINE COMPANY, a Delaware limited partnership ("Shell Pipeline"); ALON USA PARAMOUNT PETROLEUM CORPORATION, a Delaware corporation ("Alon"); CHEVRON PIPE LINE COMPANY, a Delaware corporation ("Chevron Pipe Line"); and DOES 1 through 25 (collectively "Defendants") as follows:

## THE PARTIES

1.    Plaintiff C&C is a California corporation duly organized and existing under the laws of the State of California and is qualified and registered to do business in California, having its principal place of business in Bakersfield, California.

2.    Plaintiff JEC is a California limited liability company whose members are all natural persons or entities that are citizens of either California or Nevada. JEC is qualified and registered to do business in California, having its principal place of business in Bakersfield, California.

3.    Plaintiff Wings Way is a Delaware limited liability company whose members are all citizens of the State of California.  Wings Way is qualified and registered to do business in California, having its principal place of business in Bakersfield, California.

4.    Defendant Shell Pipeline is a Delaware limited partnership whose principal place of business is in Houston, Texas.  After a reasonable search of publicly available information, Plaintiffs are informed and believe and thereon allege that Shell Pipeline's partners are not citizens of California.

- 2 -
**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

5.     Defendant Alon is a Delaware corporation whose principal place of business is in Dallas, Texas.

6.     Chevron Pipe Line is a Delaware corporation.  After a reasonable search of publicly available information, Plaintiffs are informed and believe and thereon allege that Chevron Pipe Line's principal place of business is in Texas.

7.     The true names and capacities of Defendants sued herein as DOES 1 through 25, inclusive, are unknown at the present time to Plaintiff, who therefore sues such Defendants by such fictitious names pursuant to California Code of Civil Procedure section 474.  Plaintiffs are informed and believe, and thereon allege, that each DOE defendant is responsible in some manner, whether by breach of contract, breach of warranty, breach of covenant, negligence, tort, or otherwise, for the occurrences herein alleged, in that Plaintiffs' injuries and damages as herein alleged were proximately caused by said Defendants' acts, failures to act, representations, and omissions.  Plaintiffs will amend this complaint to allege such DOE defendants' true names and capacities when ascertained.

8.     Except as otherwise specified herein, Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, each of the Defendants, including unknown DOE defendants, was the agent and employee of each of its co-Defendants, and in doing the things herein mentioned, was acting under the scope of its authority as such agent and employee and with the permission and consent of each of its co-Defendants.

9.     Plaintiffs are in some doubt as to whether they are entitled to redress from DOES 1 through 25, inclusive, and therefore all Defendants have been joined herein with the intent that the question as to whether all of them, or one or more of them, is liable to Plaintiffs, and to what extent, be resolved; and that liability may be determined in this action; and that the Court may award judgment to Plaintiff as against Defendants, and each of them, either jointly, severally, or in the alternative.

- 3 -

**SECOND AMENDED COMPLAINT**

1

2
## **JURISDICTION**

3
     10.    This is an action to recover damages and obtain injunctive relief under

4
the laws of the State of California, and arises out of the transaction of business,

5
commission of tortious injury, and other activities by Defendants within the County

6
of Kern and elsewhere.  Subject matter jurisdiction is proper in this Court pursuant

7
to 28 U.S.C. § 1332(a)(1), as this is a dispute between citizens of different states

8
where the amount in controversy exceeds $75,000.

9
     11.    This Court has personal jurisdiction over the Defendants because they

10
are all engaged in ongoing business within the State of California, including the

11
transportation of oil, gas, or both, through pipelines on Plaintiffs' real property in

12
Kern County, California.

13
     12.    By conducting business within the forum state, consummating the

14
transactions and committing the acts complained of herein, Defendants sought to

15
avail themselves of the benefits of doing business in California.  Thus, it is not

16
inequitable or unreasonable to hail them into this Court to answer for their conduct

17
and actions as alleged herein.

18

19
## **VENUE**

20
     13.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(2)

21
because it is the site of the events or omissions giving rise to the claims, and the site

22
of the property that is the subject of the action.

23

24
## **GENERAL ALLEGATIONS**

25
     14.    On or about June 28, 2013, Plaintiffs purchased and obtained lawful

26
possession of 138 acres of undeveloped real property ("Subject Property") in

27
Bakersfield, California, County of Kern, from Chevron USA, Inc., a Pennsylvania

28

- 4 -

**SECOND AMENDED COMPLAINT**

corporation ("Chevron USA").  The Subject Property abuts Merle Haggard Drive immediately north of Meadows Field Airport, and is commonly identified as APN 483-010-29.   Plaintiffs intend to develop the Subject Property for commercial/industrial use, and so informed Chevron USA in their negotiations. Among other things, development of the Subject Property involves substantial improvements to Merle Haggard Drive, required by the County of Kern.

15.     Prior to close of escrow, Plaintiffs discovered that Chevron USA had granted three recorded easements ("Recorded Easements") in the Subject Property to Shell Oil Company ("Shell Oil"), a Delaware corporation with its principal place of business in Texas.  The Recorded Easements are located in the southwest and southeast corners of the Subject Property, in the path of the required Merle Haggard Drive improvement project.   Plaintiffs also discovered that sometime later, Shell Oil purportedly assigned the easements to Shell Pipeline.

16.     The Recorded Easements are more specifically identified as follows:

a. An easement TO LAY, CONSTRUCT AND MAINTAIN ONE PIPE LINE FOR THE TRANSPORTATION OF WATER and incidental purposes, recorded OCTOBER 13, 1937 in BOOK 747, PAGE 342 of Official Records (the "747 Easement Agreement," attached hereto as **Exhibit 1**);

b. An easement for A PIPE LINE OR TWO PIPE LINES, FOR THE TRANSPORTATION OF OIL, PETROLEUM, GAS, GASOLINE, WATER AND OTHER SUBSTANCES and incidental purposes, recorded OCTOBER 13, 1937 in BOOK 751, PAGE 111 of Official Records (the "751 Easement Agreement," attached hereto as **Exhibit 2**); and

c. An easement TO LAY, CONSTRUCT AND MAINTAIN A PIPE LINE FOR THE TRANSPORTATION OF OIL and incidental

- 5 -
**SECOND AMENDED COMPLAINT**

purposes, recorded FEBRUARY 26, 1938 in BOOK 765, PAGE 292 of Official Records (the "765 Easement Agreement," attached hereto as **Exhibit 3**).

17.     All three Recorded Easements contain a clause requiring that the grantee "not interfere with or obstruct the use of said premises by Grantor, or injure or interfere with any person or property on or about said premises."

18.     All three Recorded Easements contain a relocation clause.  That clause states:

> "Whenever, in the opinion of Grantor, said pipe line interferes with the Grantor's use of or operations upon the premises, Grantee shall, at its own expense and risk, within sixty (60) days of written request therefor by Grantor, lower or relocate and reconstruct said pipe line upon and across said premises to the depth or along the route specified by Grantor in such request, and shall restore said premises as nearly as possible to the same state and condition there were in prior to the lowering or prior to the reconstruction of said pipe line, as the case may be."

All three easements also contain a restriction on assignment, stating, in relevant part:  "This grant of right of way is personal to Grantee and shall not be assigned by Grantee, in whole or in part, without the written consent of the Grantor being first had."  In connection with Plaintiffs' purchase of the Subject Property, Chevron USA produced purportedly all relevant documents concerning the Subject Property, which did not reveal Chevron USA's written consent to assignment of any of the recorded easements.  Accordingly, Plaintiffs are informed and believe and thereon

- 6 -
**SECOND AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

allege that the grantor never provided written consent to Shell Oil's purported assignment of the Recorded Easements to Shell Pipeline.

19.    Finally, all three Recorded Easements contain a successors clause, stating: "Except as otherwise provided herein, the terms and conditions of this agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto."

20.    After investing millions of dollars to acquire the Subject Property, Plaintiffs made further substantial investments in pre-development activities.  In connection with these activities, Plaintiffs discovered that Defendants' pipelines were not confined to the Recorded Easements at the southwest and southeast corners of the Subject Property.  Instead, the pipelines extend across the entire frontage of the Subject Property, parallel and directly adjacent to Merle Haggard Drive.  The pipelines materially interfere with the road improvement project required by the County, and with Plaintiffs' planned commercial/industrial development.

21.    Accordingly, on or about June 19, 2014, Plaintiffs made written demand on Shell Pipeline for removal or relocation of all pipelines operated within the Recorded Easements within sixty (60) days, per the express terms of the easements.

22.    On or about July 10, 2014, Shell Pipeline responded and informed Plaintiffs that one of the subject pipelines within the 751 Easement had been sold, and that the easement putatively had been assigned to Koch Industries, Inc., ("Koch").  Plaintiffs are informed and believe and thereon allege that Koch later sold and assigned the easement to EOTT Energy Operating Limited Partnership in or about 1998, who later filed for bankruptcy, such that the status of that easement and pipeline(s) is currently unknown.

**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

23.     Shell Pipeline also informed Plaintiffs that it was operating another active pipeline pursuant to a then-unknown unrecorded easement ("First Unrecorded Easement").  A true and correct copy of the First Unrecorded Easement agreement is attached hereto as **Exhibit 4**.  Chevron USA purportedly had granted the First Unrecorded Easement to Getty Oil Company ("Getty Oil"), a Delaware corporation with its principal place of business in New York, in 1982.  Getty Oil purportedly had subsequently assigned the First Unrecorded Easement to Shell Pipeline in 2002.  The First Unrecorded Easement was neither recorded nor disclosed, and Plaintiffs could not have discovered it through reasonable diligence prior to purchasing the Subject Property.

24.     Nonetheless, the First Unrecorded Easement contains relocation, removal, abandonment, and restrictions on assignment clauses effectively identical to the Recorded Easements.  Plaintiffs are informed and believe and thereon allege that the grantor of the First Unrecorded Easement never provided written consent to the grantee's purported assignment to Shell Pipeline.

25.     Despite Plaintiffs' demand, Shell Pipeline has failed and refused to remove or relocate any of its pipelines, despite expressly required under the Recorded Easements and the First Unrecorded Easement.

26.     Plaintiffs subsequently discovered that on December 3, 1996, Chevron USA purportedly granted another unrecorded easement ("Second Unrecorded Easement") to Chevron U.S.A. Holdings, Inc., f/k/a Texaco Exploration and Production, Inc. ("TEPI"), a Delaware corporation whose principal place of business, Plaintiffs are informed and believe, is not in California.  A true and correct copy of the Second Unrecorded Easement agreement is attached hereto as **Exhibit 5**.  Plaintiffs are informed and believe and thereon allege that this Second Unrecorded Easement was purportedly transferred several times before finally being purportedly assigned and transferred to Alon on or about June 1, 2010.  The

- 8 -

**SECOND AMENDED COMPLAINT**

Second Unrecorded Easement was neither recorded nor disclosed, and Plaintiffs could not have discovered it through reasonable diligence prior to purchasing the Subject Property.  Plaintiffs are informed and believe and thereon allege that Alon operates a pipeline within the Second Unrecorded Easement.

27.     The Second Unrecorded Easement also contains relocation, removal, abandonment, and restrictions on assignment clauses effectively identical to the Recorded Easements.  Plaintiffs are informed and believe and thereon allege that the grantor of the Second Unrecorded Easement never provided written consent to TEPI's purported assignment to Alon.

28.     On or about June 19, 2014, Plaintiffs notified Alon to relocate or remove its pipeline within sixty (60) days per the express terms of the Second Unrecorded Easement.  Despite demand, Alon has failed and refused to relocate or remove the pipeline.

29.     Notwithstanding the First Unrecorded Easement and Second Unrecorded Easement, Plaintiffs are informed and believe and thereon allege that Defendants currently have pipelines which, in whole or in part, lie outside the easements.

30.     Plaintiffs also discovered that one of the pipelines purportedly operated under the 751 Easement, the current owner of which is currently unknown to Plaintiffs, has been abandoned for more than one (1) year, and thus the easement, at least with respect to this pipeline, is terminated by the terms of the 751 Easement agreement, which require removal on sixty (60) days' notice.

31.     Plaintiffs are informed and believe and thereon allege that Shell Pipeline and its putative assignees, including Alon, have extended and operated their pipelines beyond the geographic scope of the easements and into portions of Plaintiffs' property not permitted by the easements, whether recorded or unrecorded.  Plaintiffs are informed and believe and thereon allege that Shell

- 9 -

**SECOND AMENDED COMPLAINT**

Pipeline has at least four (4) pipelines on the Subject Property; and Alon has at least one (1) pipeline on the Subject Property.

32.     In addition, Plaintiffs are informed and believe and thereon allege that another oil or gas pipeline in the Subject Property, located in the frontage along Merle Haggard Drive, is owned and operated by Chevron Pipe Line.  Plaintiffs are informed and believe and thereon allege that Chevron Pipe Line is operating this pipeline without an easement and without Plaintiffs' consent.

33.     All of the pipelines, whether or not operated pursuant to or within the easements, materially interfere with Plaintiffs' ability to develop the Subject Property.  Defendants' refusal to remove or relocate the pipelines would force Plaintiffs to bear the expense and risk, including risk of bodily injury, to remove or relocate the pipelines.  Defendants' conduct has also disrupted the timetable of Plaintiffs' development and forced Plaintiffs to incur added and extraordinary costs, resulting in material injury to Plaintiffs.  Among other things, Plaintiffs have been forced to bear the expense of obtaining further engineering opinions and legal and consulting fees relating to the road-widening project impacted by Defendants' pipelines.

34.     Moreover, a portion of the Subject Property is subject to a Purchase Agreement and Escrow Instructions dated March 19, 2014 ("Purchase Agreement"), requiring Plaintiffs to obtain necessary approvals from the appropriate governmental authorities to subdivide the Subject Property.  Unless those approvals are obtained prior to the earlier of January 15, 2015 or 15 days after demand by the buyer, Plaintiffs must convey the entire Subject Property. Defendants' pipelines have prevented and are preventing Plaintiffs from obtaining necessary subdivision approvals.  Without immediate injunctive relief requiring Defendants to comply with the terms of the easements and to cease trespassing on the Subject Property, Plaintiffs stand in ongoing and imminent risk of losing the

- 10 -
**SECOND AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11

entire Subject Property, a unique piece of real property.  Defendants' conduct also deprives Plaintiffs of the ability to make productive use of the property, and exposes Plaintiffs to liability resulting from Defendants' continued operation of their pipelines in the path of development. Plaintiffs currently estimate their damages proximately resulting from Defendants' breach would be extremely difficult to assess, but are estimated in an amount of at least $10 million. Independently, during the period of their wrongful entry on and use of the Property without Plaintiffs' consent and in defiance of their demand, Defendants have enriched themselves in bad faith through their willful and unjustified conduct by, among other things, transporting valuable oil and/or gas through the Property, in an amount and value not currently known and subject to proof at trial.

12
13
14
15
16
17
18
19
20

35.    Defendants' refusal to remove or relocate the pipelines also threatens the health and safety of Plaintiffs and the general public.  Defendants have failed and refused to fully identify and disclose the existence and location of various pipelines.  Accordingly, Plaintiff cannot be reasonably sure of whether, where, or how many high-pressure oil and gas lines may be in operation on its Subject Property.  Defendants' wrongful and outrageous conduct subjects Plaintiffs and their agents, employees, contractors, and members of the public to potential danger in developing the Subject Property in the presence of unknown high-pressure pipelines.

21
22
23
24

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Shell Pipeline and Alon)**

25
26

36.    Plaintiffs re-allege paragraphs 1 through 35, inclusive, as if fully set forth and restated herein.

27
28

- 11 -

**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

37.     Shell Pipeline and Alon are putative assignees of Shell Oil as the original grantee under the 747 Easement, 751 Easement, and 765 Easement agreements. Shell Pipeline and Alon are also putative assignees of Chevron USA as the original grantee under the First Unrecorded Easement and Second Unrecorded Easement, respectively.

38.     Pipelines belonging to Shell Pipeline and Alon do currently exist on the 747 Easement and 765 Easement, though whether they are currently active is not known.  Plaintiffs are informed and believe and thereon allege that Shell Oil does not have any pipelines within the easements. Plaintiffs are informed and believe that the areas of both the First Unrecorded Easement and Second Unrecorded Easement contain active pipelines operated by Shell Pipeline and Alon, respectively.

39.     The recorded and unrecorded easement agreements require written consent of the grantor for any assignment to be effective.  Plaintiffs are informed and believe that no such consent was given.

40.     According to the recorded and unrecorded easement agreements, whenever pipelines on the easements interfere with Plaintiffs' use or operation of the property, then upon notice and demand, Shell Pipeline and Alon must relocate their pipelines and restore the property at their expense.

41.     On or about June 19, 2014, Plaintiffs notified Shell Pipeline and Alon that their pipelines interfered with Plaintiffs' use and operation of the Subject Property and demanded relocation and restoration within 60 days.  As of the date of filing this complaint, Defendants have failed to comply.

42.     Shell Pipeline and Alon have failed and refused to comply with the terms of the recorded and unrecorded easement agreements, and have interfered and continue to interfere with the Subject Property and with Plaintiffs' use, in breach of those agreements.

**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

43.     As a result of their ongoing breach, Shell Pipeline and Alon have caused ongoing irreparable harm to Plaintiffs by, among other things, preventing Plaintiffs from performing their contractual obligations to third parties to obtain the necessary governmental approvals to subdivide the Subject Property and record a new map with the County, thus subjecting Plaintiffs to the ongoing risk of imminent foreclosure and ultimate loss of the entire Subject Property on January 15, 2015;  denying or frustrating Plaintiffs' business opportunities and contractual relationships to sell parcels of the Subject Property; subjecting Plaintiffs to the risk of litigation; preventing Plaintiffs from developing and making beneficial use of the undeveloped Subject Property; and requiring Plaintiffs and their employees and contractors to incur the expense and risk, including the risk of severe bodily injury and death, inherent in detecting, removing, and relocating the pipelines, whether known or unknown.  Plaintiffs should not be expected to incur these risks, which are by their nature difficult or impossible to measure, made moreso by the fact that Shell Pipeline and Alon have superior knowledge, skill, and experience concerning the whereabouts, placement, maintenance, and safe removal/relocation of the high-pressure pipelines.

## SECOND CAUSE OF ACTION

### DECLARATORY RELIEF – TERMINATION OF PERSONAL EASEMENTS

**(Against Shell Pipeline and Alon)**

44.     Plaintiffs re-allege paragraphs 1 through 43, inclusive, as if fully set forth and restated herein.

45.     Pursuant to each of the Recorded Easements, the First Unrecorded Easement, and the Second Unrecorded Easement, the easements are personal to the grantee and may not be assigned without the written consent of the grantor.

- 13 -
**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

46.     Standard Oil Company of California, now Chevron USA, is the grantor of all the easements.  Shell Oil is the original grantee of the Recorded Easements.  Getty is the original grantee of the First Unrecorded Easement.  TEPI is the original grantee of the Second Unrecorded Easement.

47.     Plaintiffs are informed and believe that Shell Pipeline and Alon are purported assignees of Shell Oil, Getty, and/or TEPI.  However, by virtue of Plaintiffs' investigation and Chevron USA's production of purportedly all relevant documents concerning the Subject Property, Plaintiffs are informed and believe and thereon allege that Chevron USA never provided written consent to any purported assignment by Shell Oil, Getty, or TEPI concerning any of the easements to Shell Pipeline and Alon.

48.     By operation of the express terms of the easement agreements requiring written consent for any assignments, and the fact that no written consent was provided, the purported assignments to Shell Pipeline and Alon are invalid and void ab initio.

49.     On or about June 19, 2014, Plaintiffs made a demand on Shell Pipeline and Alon to remove the pipelines.  As of the date this complaint was filed, Shell Pipeline and Alon have failed to comply.

50.     A controversy exists now between Plaintiffs and Shell Pipeline and Alon over the validity of the purported assignments of the easements to Shell Pipeline and Alon and whether the easements have expired for nonuse.  Plaintiffs request a declaration to determine the parties' respective rights and obligations concerning the easements.

**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

### THIRD CAUSE OF ACTION

### DECLARATORY RELIEF – INDEMNITY

### (Against Shell Pipeline and Alon)

51.     Plaintiffs re-allege paragraphs 1 through 50, inclusive, as if fully set forth and restated herein.

52.     Pursuant to each of the Recorded Easements, the First Unrecorded Easement, and the Second Unrecorded Easement, Shell Pipeline and Alon, as putative assignees, are required to bear all expenses to relocate the pipelines in the easements upon demand and notice that the pipelines conflict with Plaintiffs' use of the property.

53.     Plaintiffs contend that, in addition to damages resulting from Shell Pipeline and Alon's' failure to comply with Plaintiffs' notice and demand to relocate the pipelines, Shell Pipeline and Alon are further obligated to indemnify Plaintiffs and hold them harmless with respect to any claims, whether by Shell Pipeline and Alon or any third parties, arising out of Shell Pipeline and Alon's failure to remove or relocate the pipelines, including but not limited to efforts by Plaintiffs to relocate or remove them.

54.     A controversy exists between Plaintiffs and Shell Pipeline and Alon over the rights and obligations concerning the easements and the pipelines. Plaintiffs request a declaration to determine the parties' respective rights and obligations concerning Shell Pipeline and Alon's obligation to indemnify Plaintiffs for claims arising out of Shell Pipeline and Alon's ongoing failure to comply with the removal and relocation provisions of the easement agreements.

**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

# FOURTH CAUSE OF ACTION

## TRESPASS

### (Against All Defendants)

55.     Plaintiffs re-allege paragraphs 1 through 54, inclusive, as if fully set forth and restated herein.

56.     Since at least June 28, 2013, Defendants, without the consent or authority and against the will of Plaintiffs, have entered onto the Subject Property by and through their pipelines described above.

57.     The effect of Defendants' conduct as described above has been to frustrate and delay Plaintiffs' efforts to make productive use of the undeveloped Subject Property, including timely compliance with County requirements.  The existence of oil, gas, water, or other pipelines on the property, some of which may be currently active, prevents and frustrates development until substantial efforts are done to safely remove the pipelines.  The existence of the pipelines also prevents Plaintiffs from obtaining necessary subdivision approvals, thereby jeopardizing Plaintiffs' interests in the Subject Property under the Purchase Agreement. Defendants' conduct thus deprives Plaintiffs of the value of their substantial investment.

58.     Plaintiffs advised Defendants on or about June 19, 2014 that Defendants were trespassing on the Subject Property without Plaintiffs' consent and demanded that Defendants remove the pipelines immediately.  To date, Defendants have refused to comply.

59.     Defendants, by and through their conduct, intend to continue to trespass, and therefore continue to deprive Plaintiffs of their right to exclusive possession of the property.  Plaintiffs are informed and believe and thereon allege that, unless restrained by this Court, Defendants will continue to trespass on the Subject Property, resulting in continued irreparable harm to Plaintiffs.

**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

60.     As a result of Defendants' conduct, Plaintiffs have been deprived of the use and benefit of the Subject Property.  The potential damages that could proximately result from Defendants' continued trespass would be extremely difficult, if not impossible, to assess accurately, but are estimated in the range of $10 million. The measure of Defendants' unjust enrichment resulting from its wrongdoing is unknown at this time, and is subject to proof at trial.

61.     Defendants' continuing trespass alleged herein will require Plaintiffs to bring a multiplicity of actions to protect Plaintiffs' property interests, thereby rendering Plaintiffs' remedy at law inadequate.

62.     Plaintiffs are informed and believe and thereon allege that Defendants' trespass was conducted with oppression, fraud or malice so as to cause injury to Plaintiffs, and Defendants should be punished for their despicable conduct carried with a willful and conscious disregard of the rights and safety of Plaintiffs and the general public

63.     Plaintiffs seek preliminary and/or permanent injunctive relief to remedy the immediate, irreparable, and ongoing harm that the trespassing and inherently dangerous and disruptive high-pressure oil and gas pipelines directly impose on Plaintiffs, the public, and the environment.

### FIFTH CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE
### ECONOMIC ADVANTAGE
### (Against All Defendants)

64.     Plaintiffs re-allege paragraphs 1 through 63, inclusive, as if fully set forth and restated herein.

65.     Plaintiffs were and are engaged in valid and existing business for the development of commercial/industrial space in the Subject Property.  Plaintiffs

- 17 -
**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

1   have a reasonable expectation of economic benefit from that development in that

2   Plaintiffs have negotiated with general and sub-contractors to supply infrastructure

3   services and with several purchasers of individual, divided building lots within the

4   Subject Property for the construction of commercial and industrial buildings.

5   Plaintiffs expect that timely completion of the development will yield a profit of not

6   less than approximately $10 million.

7         66.    Defendants knew of Plaintiffs' economic relationships and

8   development plans at the time they received notice their pipelines interfered with

9   Plaintiffs' use.

10         67.    Defendants intentionally disrupted the economic relationships

11   Plaintiffs had with third parties for the development of the Subject Property by

12   refusing to remove or relocate their pipelines.

13         68.    As a result of Defendants' intentional acts, the business relationships

14   between Plaintiffs and third parties involved in the development of the Subject

15   Property have been disrupted in that breaking ground and construction have been

16   indefinitely halted due to Defendants' willful failure and refusal to remove their

17   pipelines.

18         69.    Defendants' interference with Plaintiffs' business relationships and

19   economic activity has resulted in damage to Plaintiffs in an amount to be proven at

20   trial, but no less than approximately $10 million.

21         70.    Plaintiffs are informed and believe and thereon allege that Defendants'

22   actions and omissions herein alleged were conducted with oppression, fraud or

23   malice so as to cause injury to Plaintiffs.  Defendants should be punished for their

24   despicable conduct carried with a willful and conscious disregard of the rights of

25   Plaintiffs.

26

27

28

**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

# SIXTH CAUSE OF ACTION

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (Against All Defendants)

71.   Plaintiffs re-allege paragraphs 1 through 70, inclusive, as if fully set forth and restated herein.

72.   Plaintiffs were and are engaged in valid and existing business for the development of commercial/industrial space in the Subject Property, and have a reasonable expectation of economic benefit from that development, as alleged above.

73.   Defendants knew or should have known of Plaintiffs' economic relationships and development plans at the time they received notice their pipelines interfered with Plaintiffs' use.

74.   Defendants knew or should have known that their failure and refusal to remove or relocate their pipelines would disrupt Plaintiffs' economic relationships and opportunities in developing the Subject Property.

75.   As a result of Defendants' negligent acts and omissions, the business relationships between Plaintiffs and third parties involved in the development of the Subject Property have been disrupted in that breaking ground and construction have been indefinitely halted due to Defendants' failure to remove their pipelines.

76.   Defendants' interference with Plaintiffs' business relationships and economic activity has resulted in damage to Plaintiffs in an amount to be proven at trial, but no less than approximately $10 million.

**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

### SEVENTH CAUSE OF ACTION

### INJUNCTIVE RELIEF – SPECIFIC PERFORMANCE

### (Against Shell Pipeline and Alon)

77.     Plaintiffs re-allege paragraphs 1 through 76, inclusive, as if fully set forth and restated herein.

78.     Plaintiffs have materially performed under all applicable easement agreements and are legally and equitably entitled to Shell Pipeline and Alon's reciprocal performance thereunder – specifically, removal of the pipelines in the Subject Property.

79.     Plaintiffs are informed and believe and thereon allege that there is no dispute that Defendants Shell Pipeline and Alon currently have and operate pipelines on the Subject Property, that Plaintiffs have demanded their removal within 60 days, and that Shell Pipeline and Alon failed to comply with that demand.

80.     Plaintiffs will suffer and have suffered irreparable harm as a result of Shell Pipeline and Alon's breaches and wrongful conduct.  Among other things, Shell Pipeline and Alon's conduct prevents Plaintiffs from performing their contractual obligations to third parties; subjects Plaintiffs to the ongoing risk of imminent foreclosure and loss of the entire Subject Property on January 15, 2015; subjects Plaintiffs to the risk of litigation; denies or frustrates Plaintiffs' unique business opportunities and contractual relationships; prevents Plaintiffs from developing and making beneficial use of the undeveloped Subject Property; and forces Plaintiffs and their employees and contractors to incur expense and risk, including risk of bodily injury, which Shell Pipeline and Alon are obligated to incur.  Plaintiffs should not be expected to incur these risks, which are by their nature difficult or impossible to measure, made moreso by the fact that Shell Pipeline and Alon have superior knowledge, skill, and experience concerning the

**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

whereabouts, placement, maintenance, and safe removal/relocation of the high-pressure pipelines.

81.    As a result of the special nature and peculiar value of the obligations Shell Pipeline and Alon have breached, money damages would not be a just or reasonable substitute for their specific performance.  Moreover, it is impossible to ascertain the legal measure of money damages.

WHEREFORE, Plaintiffs pray as follows:

1.    Compensatory damages in an amount to be proven at trial;

2.    Restitution and disgorgement based in part on unjust enrichment and Civil Code section 3334;

3.    Accounting and tracing;

4.    Constructive trust;

5.    Equitable lien;

6.    Specific performance;

7.    Injunctive relief;

8.    Punitive damages;

9.    Reasonable attorneys' fees as authorized by the written agreements;

10.    Costs of suit;

11.    Such other and further relief as the Court deems just and proper.

DATED: March 15, 2016                    THOMAS VOGELE & ASSOCIATES, APC


By: /s/  Timothy M. Kowal
_____
        Thomas A. Vogele
        Timothy M. Kowal
        Attorneys for plaintiffs C & C Properties,
        Inc., JEC Panama, LLC, and Wings
        Way, LLC

- 21 -
**SECOND AMENDED COMPLAINT**

43534.doc; 2080-001

EXHIBIT 1

342

STATE OF CALIFORNIA,)
                    )ss.
County of Kern      )

    R. B. Sloan being duly sworn deposes and says that he is one of the persons named as a claimant in the foregoing claim of lien; that he has read the same and knows the contents thereof; that the same is true, and that it contains, among other things, a correct statement of his demand, after deducting all just credits and offsets.

Subscribed and sworn to before
me, this 9th day of October, 1937.
(SEAL) Harry V. Miller, Notary
Public in and for the County of Kern,
State of California.

STATE OF CALIFORNIA,)
                    )ss.
County of Kings     )

    H. Jones being duly sworn, deposes and says that he is one of the persons named as a claimant in the foregoing claim of lien; that he has read the same and knows the contents thereof; that the same is true, and that it contains, among other things, a correct statement of his demand, after deducting all just credits and offsets.

Subscribed and sworn to before me
this 11th day of October, 1937.
(SEAL) E. E. Hall, Notary Public
in and for the County of Kern,
State of California.

    Recorded at Request of Karl F. Kennedy Oct. 13, 1937 at 9 A. M. in Book 747 of Official Records Page 340 Kern County Records.

                                  Chas. H. Shomate, Recorder

                                  By Frances Ahmann, Deputy Recorder

24501  Compared By: _____  Checked By: _____

ORIGINAL-SHELL OIL CO.  ------oOo------

    THIS AGREEMENT, dated the 31st day of August, 1937, by and between STANDARD OIL COMPANY OF CALIFORNIA, a corporation, hereinafter termed Grantor, and SHELL OIL COMPANY, also a corporation, hereinafter termed Grantee, WITNESSETH:

    THAT Grantor, for and in consideration of the full and prompt performance of the things to be performed by Grantee as hereinafter set out and contained, hereby grants to Grantee, subject to cancellation as hereinafter provided and under the terms, conditions and provisions hereinafter contained, a right of way and easement to lay, construct, maintain, operate, repair, renew, from time to time change the size of, and remove one pipe line not exceeding 4" and 6" in diameter for the transportation of water in, under, along and across that certain property situate in the Counties of Kern and Kings, State of California, and described as follows, to-wit:

    The Northwest quarter of Section Nineteen, Township Twenty-two South, Range Nineteen East and the Southeast quarter of the Southeast quarter of Section Thirty-four Township Twenty-eight South, Range Twenty-seven East (NW 1/4 of Sec. 19, T. 22 S., R. 19 E., and the SE 1/4 of SE 1/4 of Sec. 34, T. 28 S., R. 27 E.) M.D.B. & M.

    The route along which said 4" pipe line is to be laid is more particularly described as follows:

    Beginning at a point which bears South 0° 02' 53" East, 15.40 feet from the Northwest corner of said Section 19; thence North 18° 59' 36" East, 16.29 feet to a point which bears North 89° 59' 37" East, 5.29 feet from the Northwest corner of said Section 19.

    The route along which said 6" pipe line is to be laid is more particularly described as follows:

    Beginning at a point on the Southerly line of said Section 34 which lies 15 feet Westerly from the Northeast corner of the Northwest quarter of Section 2, T. 29

343

S.,R. 27 E.; thence Northerly at right angles to the Southerly line of said Section 34 a distance of 3 feet; thence Easterly parallel with and 3 feet Northerly from the Southerly line of said Section 34 to a point in the Easterly boundary of said Section 34.

It is understood and agreed that Grantee shall not do nor permit any welding on any pipe line installed within 150 feet of any oil or gas well now drilled or being drilled or hereafter drilled on the said lands by Grantor.

Grantee shall not interfere with or obstruct the use of said premises by Grantor, or injure or interfere with any person or property on or about said premises.

Grantee shall bury its pipe line so that it will pass beneath previously laid pipe lines which it may cross, and so that it will be at all points at least eighteen (18) inches below the surface of the ground, and shall promptly and properly back-fill all excavations made by or for Grantee on the premises.

Whenever, in the opinion of Grantor, said pipe line interferes with Grantor's use of or operations upon the premises, Grantee shall, at its own expense and risk, within sixty (60) days after written request therefor by Grantor, lower or relocate and re-construct said pipe line upon and across said premises to the depth or along the route specified by Grantor in such request, and shall restore said premises as nearly as possible to the same state and condition they were in prior to the lowering or prior to the reconstructing of said pipe line, as the case may be.

Grantee and its employees and agents shall, at any and all times when necessary, have free access to the said pipe line, over such reasonable route as Grantor may designate or approve, for the purpose of exercising the rights hereby granted.

This grant of right of way is personal to Grantee and shall not be assigned by Grantee, in whole or in part, without the written consent of Grantor being first had. No written consent by Grantor hereunder shall be deemed a waiver by Grantor of any of the provisions hereof, except to the extent of such consent.

It is further understood and agreed that this agreement and the rights and privileges herein given Grantee shall terminate in the event that Grantee shall fail, for a period of one year, to maintain and operate said pipe line.

In the event of the termination of this grant of right of way Grantee shall thereupon, at its own expense and risk, remove all pipe and any other property placed by or for Grantee upon said land, and restore said premises as nearly as possible to the same state and condition they were in prior to the construction of said pipe line, but, if it should fail so to do within sixty (60) days after such termination, Grantor may do so, at the risk of Grantee, and all cost and expense of such removal and the restoration of said premises as aforesaid, together with interest thereon at the rate of twelve per cent per annum, shall be paid by Grantee upon demand; and in case of a suit to enforce or collect the same, Grantee agrees to pay Grantor in addition a reasonable attorney's fee to be fixed and allowed by the court.

Upon the termination of the rights hereby granted, Grantee shall execute and deliver to Grantor, within thirty (30) days after service of a written demand therefor, a good and sufficient quitclaim deed to the rights arising hereunder. Should Grantee fail or refuse to deliver to Grantor a quitclaim deed, as aforesaid, a written notice by Grantor reciting the failure or refusal of Grantee to execute and deliver said quitclaim deed, as herein provided, and terminating said grant shall, after ten (10) days from the date of recordation of said notice, be conclusive evidence against Grantee and all persons claiming under Grantee of the termination of said grant.

Grantee shall and will pay, before the same become delinquent, all charges, taxes, rates and assessments upon or against said pipe line and any other property or improve-ments placed by or for Grantee upon said premises, but Grantor may, at all times after any delinquency, pay and discharge all of such delinquent charges, taxes, rates and

344

assessments, after reasonable verification thereof, and all such payments so made by Grantor, with interest thereon at the rate of twelve per cent per annum from date of payment, will be paid by Grantee upon demand. The amount of such payments and interest shall be a charge and lien against all pipe and other property placed by or for Grantee on the said premises, and in case of a suit, after such demand, to enforce or collect the same, Grantee agrees to pay Grantor in addition thereto a reasonable attorney's fee to be fixed and allowed by the court.

Grantee shall be responsible for, and shall pay the party or parties entitled to payment for, any damage to or loss of property, or injury to or death of person, that directly or indirectly may be caused by or arise or result from the exercise or enjoyment of any of the rights herein granted, and shall hold Grantor harmless from and indemnify it against any and all claims therefor. Such damage or loss, if suffered by Grantor and if not mutually agreed upon shall be ascertained and determined by three disinterested persons, one thereof to be appointed by Grantor, one by Grantee, and the third by the two so appointed as aforesaid, and the award of such three persons, or any two of them, shall be final and conclusive. Grantee agrees to hold Grantor harmless from and to indemnify it against any claim for damage to or loss of property of Grantee in, on, and about the right of way herein granted, or injury to or death of any person on said premises on behalf of or at the invitation of Grantee, whether such claim arise out of the operations of Grantor or otherwise.

Any notice provided herein to be given by either party hereto to the other may be served by depositing in the United States Post Office, postage prepaid, a sealed envelope containing a copy of such notice and addressed to said other party above named at its principal place of business, and the same shall be sufficient service of such notice.

Grantee hereby recognizes Grantor's title and interest in and to the land over which the aforesaid right of way is hereby granted and agrees never to assail or resist Grantor's title or interest therein.

Except as otherwise provided herein, the terms and conditions of this agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto.

It is understood and agreed that this grant is made subject to all valid and existing licenses, leases, grants, exceptions and reservations affecting said premises.

IN WITNESS WHEREOF, the said parties hereto have caused this agreement to be executed in duplicate by their proper officers, who are thereunto duly authorized.

Prepared By___    Description Approved:_
Form Approved:   Engineer Supt.Tel.&    (SEAL)   STANDARD OIL COMPANY OF CALIFORNIA
Fitchburg,Madison      Tel.Div.             By C. E. Bultmann, Contract Agent
No._____       Approved for Execution:_     By Lee Laird,Asst. Secretary
Examined
Approved:                   (SEAL)   SHELL OIL COMPANY
CHECKED    Mgr. Right of Way Dept.        By J. U. Stair, Vice President
By: D. H. As to Desc.             By B. D. Koontz,Assistant Secretary
By: M.W.S., As to File
APPROVED
By B.D.K., As to Form
F.S.C.
E.P.T. Vice Pres.
For'd For Signature L.A.B.

STATE OF CALIFORNIA, )
                )SS.
County of Los Angeles,)

On This 23rd day of August, A.D., 1937, before me, M. M. BROWN a Notary Public in and for the said County and State, personally appeared J. U. STAIR, known to me to be the Vice President, and B. D. KOONTZ, known to me to be the Asst. Secretary of the SHELL OIL COMPANY the Corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument, on behalf of the Corporation herein named, and acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal

345

the day and year in this certificate first above written.

(SEAL) M. M. Brown

Notary Public in and for said County and State.

My commission expires June 8, 1938.

STATE OF CALIFORNIA, )
                     )ss.
City and County of San Francisco,)

On this third day of September, in the year of our Lord One Thousand Nine Hundred and thirty seven before me, Frank L. Owen a Notary Public in and for said City and County and State, residing therein, duly commissioned and sworn, personally appeared C. E. HULTMANN and LEE LAIRD known to me to be the Contract Agent and Assistant Secretary respectively of STANDARD OIL COMPANY OF CALIFORNIA the Corporation described in and that executed the within instrument, and also known to me to be the persons who executed it on behalf of the said Corporation therein named, and they acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, at my office in the City and County and State aforesaid the day and year in this certificate first above written.

(SEAL) Frank L. Owen

Notary Public in and for said City and County of San Francisco, State of California.

Recorded at Request of Snell Oil Company Oct. 13, 1937 at 9 A. M. in Book 747 of Official Records Page 342 Kern County Records.

Chas. H. Shomate, Recorder

By Frances Ahmann, Deputy Recorder

24502  Compared By: J. Robercraft          Checked By: A. Lyder          Z

I.R.S. $6.00
Cancelled
This Deed Requires I.R.S.

---000---

GRANT DEED

In consideration of $10.00, receipt of which is acknowledged, EUGENE METTLER and ELSIE METTLER  his wife whose address is_ do hereby grant to HENRY H. METTLER, a married man whose address is _ all that real property in the County of Kern, State of California, described as:

The Southwest quarter of the Southeast quarter (SW 1/4 of SE 1/4) of Fractional Section Four (4), Township Twenty-eight (28) South, Range Twenty-five (25) East, M.D.B.M. excepting therefrom one-half of all oil, gas or other hydrocarbon substances within or underlying said premises, together with the right of ingress and egress to and from said property for the purpose of removing same.

Dated this 7th day of October, 1937.

Eugene Mettler
Elsie Mettler

STATE OF CALIFORNIA )
                    )ss.
COUNTY OF KERN      )

On this 7th day of October, 1937, before me, Constance Campbell a Notary Public in and for said County, personally appeared Eugene Mettler known to me to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same.

WITNESS my hand and official seal.

(SEAL)  Constance Campbell

Notary Public in and for said County and State.

STATE OF CALIFORNIA )
                    )ss.
COUNTY OF KERN      )

On this 8th day of October, 1937, before me, Constance Campbell, a Notary

EXHIBIT 2

111

heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

SEALED with our seals and dated this 28th day of September, A.D., 1937.

WHEREAS, the above bounden Principal has entered into a certain written contract with the above named Obligee, dated the 17th day of September 1937 for drilling and oil well on Section 24, Township 31, Range 22, Kern County, State of California, said well to be drilled to a depth of approximately 2500 feet, which contract is hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

Now, therefore, the condition of the above obligation is such, That if the above bounden Principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner said contract specified, and shall pay over, make good and reimburse to the above named Obligee, all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect.

                          CALIFORNIA COMMERCIAL DRILLING. CO.
                          By Wm. Walker, V. Pres.
              (SEAL)      STANDARD ACCIDENT INSURANCE COMPANY
                          By Robert Livingston. Attorney-in-fact

STATE OF CALIFORNIA   )
                      ) SS.
COUNTY OF LOS ANGELES,)

ON THIS 28th day of September A. D., 1937, before me A. James a Notary Public in and for Los Angeles County, State of California, residing therein, duly commissioned and sworn, personally appeared Robert Livingston and personally known to me to be the Attorney -in-Fact of the Standard Accident Insurance Company, the Corporation described in and that executed the within instrument, and known to me to be the person who executed the within instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this Certificate first above written.

              (SEAL)    A. James

Notary Public in and for the County of Los Angeles, State of California. My Commission expires 6/1/39.

Recorded at Request of Brookshire Oil Co., Oct. 11, 1937, at 45 min. past 2 P.M., in Book 751 of Official Records, Page 110 Kern County Records.

                          Chas. H. Shomate, Recorder
                          By Frances Ahmann, Deputy Recorder

24475    Compared by:              Checked by:

              ------000------

ORIGINAL-SHELL OIL CO.

THIS AGREEMENT, dated the 31st day of August, 1937, by and between STANDARD OIL COMPANY OF CALIFORNIA, a corporation, hereinafter termed Grantor, and SHELL OIL COMPANY also a corporation, hereinafter termed Grantee.

                          WITNESSETH:

THAT Grantor, for and in consideration of the full and prompt performance of the things to be performed by Grantee as hereinafter set out and contained, hereby grants to Grantee, subject to cancellation as hereinafter provided and under the terms, conditions and provisions hereinafter contained, a right of way and easement to lay,

112

construct, maintain, operate, repair, renew, from time to time change the size of, and remove a pipe line or two pipe lines, as the case may be, for the transportation of oil, petroleum, gas, gasoline, water or other substances in, under, along and across that certain property situate in the Counties of Kern, Kings and Fresno, State of California, and described as follows, to-wit:   The Southeast quarter of Section One, Township Sixteen South, Range Thirteen East; the Northeast quarter of Section Eleven, Township Seventeen South, Range Fourteen East; Sections Nine, Fifteen, Twenty-Section Seven and the East half of Section Twenty-nine, Township Nineteen South, Range Sixteen East; three and Twenty-five, all in Township Twenty South, Range Sixteen East; Section Thirty-one, Township Twenty South, Range Seventeen East; Sections Five, Nine, Fifteen, Twenty-three and Twenty five, all in Township Twenty-one South, Range Seventeen East; the Northeast quarter of Section Thirty-one Township Twenty-one South, Range Eighteen East; Sections Three and Eleven and the Southeast quarter and the Northwest quarter of Section Thirteen, all in Township Twenty-two South, Range Eighteen East; Section Nineteen, Township Twenty-two South, Range Nineteen East; Section Thirty-six, Township Twenty-seven South, Range Twenty-three East; the Southeast quarter of Section Thirty-four Township Twenty-eight South, Range Twenty-seven East; the Southeast quarter of the Southeast quarter of Section Thirty-two, Township Twenty-eight South, Range Twenty-eight East; the North half of the Northwest quarter of Section Five, Township Twenty-nine South, Range Twenty-eight East; and the Southwest quarter of Section Nineteen, and the West half of the Southwest quarter and the Southwest quarter of the Southwest quarter of the Northwest quarter of Section Twenty-nine, Township Twenty-nine South, Range Twenty-nine East, (SE 1/4 of Sec. 1, T. 16 S., R. 13 E.; NE 1/4 of Sec. 11, T. 17 S., R.14 E.; Sec. 7 and E 1/2 of Sec. 29, T. 19 S., R. 16 E.; Secs. 9, 15, 23 and 25, all in T. 20 S., R. 16 E.; Sec. 31, T. 20 S., R. 17 E.; Secs. 5,9, 15, 23 and 25, all in T. 21 S., R. 17 E.; NE 1/4 of Sec. 31, T.21 S., R. 18 E.; Secs. 3 and 11 and SE 1/4 and NW 1/4 of Sec. 13, all in T. 22 S., R. 18 E.; Sec. 19, T. 22 S., R.19 E.; Sec. 36, T.27 S., R.23 E.; SE 1/4 of Sec. 34, T.28 S., R.27  E.; SE 1/4 of SE 1/4 of Sec. 32, T.28 S., R.28 E.; N 1/2 of NW 1/4 of Sec. 5, T.29 S., R.28 E.; and SW 1/4 of Sec. 19 and W 1/2 of SW 1/4 and SW 1/4 of SW 1/4 of NW 1/4 of Sec. 29, T.29 S., R.29 E.) M.D.B. & M.

The route along which one pipe line shall be laid is described as follows: Beginning at a point which bears North 0° 10' 30" West, 29.22 feet from the Northwest corner of the Southwest quarter of said Section 29, T.29 S., R.29 E.; thence South 57° 52' 16" East, 26.60 feet to a point; thence Southerly parallel with and 22.50 feet Easterly at right angles from the Westerly line of the Southwest quarter of said Section 29 to a point in the Southerly line of the Southwest quarter of said Section 29, also   Beginning at a point which bears North 89° 40' 20" East, 1799.68 feet from the Southwest corner of said Section 19, T.29 S., R.29 E.; thence North 53° 38' 16" West, 2233.29 feet to a point which bears North 0° 3' 9" East, 1333.34 feet from the Southwest corner of said Section 19, also  Beginning at a point on the Easterly boundary of said Section 32, T.28 S., R.28 E., which lies 5 feet Northerly of the Southeast corner thereof; thence Westerly on a line parallel with and 5 feet Northerly of the Southerly line of said Section 32, a distance of 625.71 feet to a point; thence North 67° 08' 23" West 571.18 feet to a point; thence North 83° 27' 38" West to a point on the Westerly boundary of the Southeast quarter of the Southeast quarter of said Section 32, also Beginning at a point which bears South 89° 34' 36" West, 2365 feet from the Southeast corner of said Section 13, T.22 S., R.18 E.; thence North 28°57' 34" West, 6001.78 feet to a point which bears South 0° 22' 09" East, 7.50 feet from the Northwest corner of said Section 13; excepting therefrom that portion lying within the Southwest quarter of said Section 13, also  Beginning at a point which bears South 89° 30' 13" West, 7.48 feet from the Southeast corner of said Section 11, T.22 S., R.18 E.;

thence North 45° 45' 40" West, 7490.43 feet to a point which bears South 1° 8' 40" East, 25.18 feet from the Northwest corner of said Section 11, also   Beginning at a point which bears North 89° 46' 13" West, 25.25 feet from the Southeast corner of said Section 3, T.22 S., R.18 E.; thence North 45° 45' 40" West, 10.08 feet to a point; thence North 59° 09' West, 6141.20 feet to a point which bears South 0° 28' 08" East, 2150.8 feet from the Northwest corner of said Section 3, also  Beginning at a point which bears South 0° 10' 45" West, 1030.9 feet from the Northeast corner of said Section 31, T.21 S., R.18 E.; thence North 59° 09' West, 1997.59 feet to a point which bears North 89° 46' 53" East, 922.7 feet from the North quarter corner of said Section 31, also  Beginning at a point which bears North 0° 08' 45" West, 2182.3 feet from the Southeast corner of said Section 25, T.21 S., R.17 E.; thence North 59° 09' West, 2311.97 feet to a point; thence North 60° 56' 30" West, 3764.45 feet to a point which bears North 88° 59' 30" East, 20 feet from the Northwest corner of said Section 25, also

Beginning at a point which bears South 0° 14' 23" East, 5.49 feet from the Northeast  corner of the Northwest quarter of said Section 5, T.29 S. ,R 28 E.; thence South 78° 00' 59" West, 71.49 feet; thence South 89° 45' 37" West, parallel with and 20 feet Southerly from the Northerly boundary of said Section 5, to a point  in the Westerly boundary of said Section 5, also

Beginning at a point which bears North 89° 55' 13" East, 101.99 feet from the Southwest corner of said Section 19, T. 22 S; R.19 E.; thence North  51° 48' 17" West 129.85 feet to a point which bears North 0° 02' 05"  West, 80.44 feet from the Southwest corner of said Section 19, also

Beginning at a point which bears South 0° 53' 30" West, 45.12 feet from the Northeast corner of the Southeast quarter of said Section 36, T.27 S., R.23 E.; thence North 50° 52' 30" West, 4231.62 feet to a point which bears South 89° 41' 30" West, 686.46 feet from the Northeast corner of the Northwest quarter of said Section 36.

The route along which two pipe lines shall be laid is described as follows: Beginning at a point which bears North 0° 41' 27" East, 1162.44 feet from the Southeast corner of said Section 34, T.28, S., R.27 E.; thence South 49° 34' 36"  West 1752.44 feet to a point which lies 21.5 feet Northerly at right angles from the Southerly line of said Section 34; thence Westerly parallel with and 21 1/2 feet Northerly of the South line of said Section 34 to a point on the Westerly boundary of said Southeast quarter of Section 34.

One pipe line shall be laid along a line lying Northerly of, parallel with and distant 3 feet measured at right angles from existing pipe line of Grantee, theroute of said existing pipe line being approximately described as follows:

Beginning at a point in the East line of the Southeast quarter of Section 1, T.16 S., R.13 E., 1913 feet North of the Southeast corner of said quarter section; thence North 36° 15' West, 955 feet over the Northeast quarter of the Southeast quarter of said section to a point in the North line of said quarter section, 570 feet West of the Northeast corner of said quarter section, also

Beginning at a point in the East line of Section 11, T.17 S., R.14 E., 100 feet South of the Northeast corner thereof; thence North 36° 15' West, 122 feet over the Northeast quarter of the Northeast quarter of said section to a point in the North line thereof 70 feet West of the Northeast corner of said section, also

Beginning at a point in the South line of Section 7, T.19 S., R.16 E., 810 feet West of the Southeast corner thereof; thence North 19° 47' West 5575 feet over the Southeast quarter, the West half of the Northeast quarter and the Northeast quarter of the Northwest quarter of said section to a point in the North line thereof 47 feet West of the Northeast corner of the Northwest quarter of said section, also

Beginning at a point in the South line of Section 29, T.19 S., R.16 E., 421 feet

**114**

West of the Southeast corner thereof; thence North 19° 47' West, 5570 feet over the
East half of the Southeast quarter, the Northwest quarter of the Southeast quarter,
and the West half of the Northeast quarter of said section to a point in the North
line thereof 329 feet East of the Northwest corner of the Northeast quarter of said
section, also

Beginning at a point in the Northerly line of said Section 9, T.20 S., R.16 E.,
distant thereon Westerly 6.09 feet from a 4" iron pipe marking the North quarter section
corner of said Section 9; thence approximately South 27° 35' East, 5800 feet, more or
less, to a point in the Easterly line of said Section 9, distant thereon Northerly
103.96 feet from the Southeast corner of said Section 9, also

Beginning at a point in the Northerly line of said Section 15, T.20 S., R.16 E.,
distant thereon Easterly 53.59 feet from the Northwest corner of said Section 15; thence
approximately South 46° 48' East, 7194 feet, more or less, to a point in the Easterly
line of said Section 15, distant thereon Northerly 281.77 feet from the Southeast corner
of said Section 15, also

Beginning at a point in the Northerly line of said Section  23, T.20 S., R.16 E.,
distant thereon Easterly 300.00 feet from the Northwest corner of said Section 23;
thence South 44° 50' 46" East, 2628.37 feet; thence South 53° 40' 46" East, 334.05 feet,
to a point in the Northerly right of way line of Southern Pacific Railroad; thence
crossing said right of way South 14° 00' East, 200.00 feet to a point in the Southerly
right of way line of said Southern Pacific Railroad; thence South 53° 40' East,
334.05 feet; thence approximately South 44° 51' East, 3652 feet, more or less, to a
point in the Easterly line of said Section 23, distant thereon Northerly 141.75 feet
from the Southeast corner of said Section 23; excepting from this description that
portion thereof lying between the said northerly and southerly right of way lines of
Southern Pacific Railroad, also

Beginning at a point in the Northerly line of said Section 25, T.20 S., R.16 E.,
distant thereon Easterly 141.00 feet from the Northwest corner of said Section 25;
thence South 39° 18' 21" East, 660.74 feet; thence South 37° 48' 11" East, 304.77 feet;
thence South 40° 48' 31" East, 304.77 feet; thence approximately South 39° 18' East,
5490 feet, more or less, to a point in the Easterly line of said Section 25, distant
thereon Northerly 166.21 feet from the Southeast corner of said Section 25, also

Beginning at a point in the Northerly line of said Section 31, T.20 S., R.17 E.,
distant thereon Easterly 134.39 feet from the Northwest corner of said Section 31; thence
South 39° 18' 21" East, 21.03 feet; thence approximately South 41° 04' East, 6950 feet
more or less, to a point in the Southerly line of said Section 31, distant thereon
Easterly 932.56 feet from the South quarter section corner of said Section 31, also

Beginning at a point in the Northerly line of said Section 5, T.21 S., R.17 E.,
distant thereon Easterly 680.02 feet from the Northwest corner of said Section 5, and
distant also Easterly 932.56 feet from the South quarter section corner of said Section
31; thence approximately South 41° 07' East, 6998 feet, more or less, to a point in
the Easterly line of said Section 5, distant thereon Northerly 19.80 feet from the
Southeast corner of said Section 5, also

Beginning at a point in the Northerly line of said Section 9, T.21 S., R.17 E.,
distant thereon Easterly 19.76 feet from the Northwest corner of said Section 9;
thence approximately South 45° 15' East 7448 feet, more or less, to a point in the
Easterly line of said Section 9, distant thereon Northerly 19.96 feet from the
Southeast corner of said Section 9, also

Beginning at a point in the Northerly line of said Section 15, T.21 S., R.17 E.,
distant thereon Easterly 19.80 feet from the Northwest corner of said Section 15;
thence approximately South 44° 32' East, 7359 feet, more or less, to a point in the

115

Southerly line of said Section 15, distant thereon Westerly 119.35 feet from the Southeast corner of said Section 15, also

Beginning at a point in the Westerly line of said Section 23, T.21 S., R.17 E., distant thereon Southerly 118.83 feet from the Northwest corner of said Section 23; thence approximately South 45° 48' East, 7333 feet, more or less, to a point in the easterly line of said Section 23, distant thereon Northerly 19.97 feet from the Southeast corner of said Section 23.

It is understood and agreed that Grantee shall not do nor permit any welding on any pipe line installed within 150 feet of any oil or gas well now drilled or being drilled or hereafter drilled on the said lands by Grantor.

Grantee shall not interfere with or obstruct the use of said premises by Grantor, or injure or interfere with any person or property  on or about said premises.

Grantee shall bury its pipe line so that it will pass beneath previously laid pipe lines which it may cross, and so that it will be at all points at least eighteen (18) inches below the surface of the ground, and shall promptly and properly back-fill all excavations made by or for Grantee on the premises.

Whenever, in the opinion of Grantor, said pipe line interferes with Grantor's use of or operations upon the premises, Grantee shall, at its own expense and risk, within sixty (60) days after written request therefor by Grantor, lower or relocate and reconstruct said pipe line upon and across said premises to the depth or along the route specified by Grantor in such request, and shall restore said premises as nearly as possible to the same state and condition they were in prior to the lowering or prior to the reconstructing of said pipe line, as the case may be.

Grantee and its employees and agents shall, at any and all times when necessary have free access to the said pipe line, over such reasonable route as Grantor may designate or approve, for the purpose of exercising the rights hereby granted.

This grant of right of way is personal to Grantee and shall not be assigned by Grantee, in whole or in part, without the written consent of Grantor being first had.  No written consent by Grantor hereunder shall be deemed a waiver by Grantor of any of the provisions hereof, except to the extent of such consent.

It is further understood and agreed that this agreement and the rights and privileges herein given Grantee shall terminate in the event  that Grantee shall fail, for a period of one year, to maintain and operate said  pipe lines.

In the event of the termination of this grant of right of way Grantee shall thereupon, at its own expense and risk, remove all pipe and any other property placed by or for Grantee upon said land, and restore said premises as nearly as possible to the same state and condition they were in prior to the construction of said pipe line, but, if it should fail so to do within sixty (60) days after such termination, Grantor may so do, at the risk of Grantee, and all cost and expense of such removal and the restoration of said premises as aforesaid, together with interest thereon, shall be paid by Grantee upon demand; and in case of a suit to enforce or collect the same, Grantee agrees to pay Grantor in addition a reasonable attorneys' fee to be fixed and allowed by the court.

Upon the termination of the rights hereby granted, Grantee shall execute and deliver to Grantor, within thirty (30) days after service of a written demand there-for, a good and sufficient quitclaim deed to the  rights arising hereunder.  Should Grantee fail or refuse to deliver to Grantor a quitclaim deed, as aforesaid, a written notice by Grantor reciting the failure or refusal of Grantee to execute and deliver said quitclaim deed, as herein provided, and terminating said grant shall, after ten (10) days from the date of recordation of said notice, be conclusive evidence against

116

Grantee and all persons claiming under Grantee of the termination of said grant.

Grantee shall and will pay, before the same become delinquent, all charges, taxes, rates and assessments upon or against said pipe line and any other property or improvements placed by or for Grantee upon said premises, but Grantor may, at all times after any delinquency, pay and discharge all of such delinquent charges, taxes, rates and assessments, after reasonable verification thereof, and all such payments so made by Grantor, with interest thereon from date of payment, will be paid by Grantee upon demand. The amount of such payments and interest shall be a charge and lien against all pipe and other property placed by or for Grantee on the said premises, and in case of a suit, after such demand, to enforce or collect the same, Grantee agrees to pay Grantor in addition thereto a reasonable attorneys' fee to be fixed and allowed by the court.

Grantee shall be responsible for, and shall pay the party or parties entitled to payment for, any damage to or loss of property, or injury to or death of person, that directly or indirectly may be caused by or arise or result from the exercise or enjoyment of any of the rights herein granted, and shall hold Grantor harmless from and indemnify it against any and all claims therefor. Such damage or loss, if suffered by Grantor and if not mutually agreed upon, shall be ascertained and determined by three disinterested persons, one thereof to be appointed by Grantor, one by Grantee and the third by the two so appointed as aforesaid, and the award of such three persons, or any two of them, shall be final and conclusive. Grantee agrees to hold Grantor harmless from and to indemnify it against any claim for damage to or loss of property of Grantee in, on, and about the right of way herein granted, or injury to or death of any person on said premises on behalf of or at the invitation of Grantee, whether such claim arise out of the operations of Grantor or otherwise.

Any notice provided herein to be given by either party hereto to the other may be served by depositing in the United States Post Office, postage prepaid, a sealed envelope containing a copy of such notice and addressed to said other party above named at its principal place of business, and the same shall be sufficient service of such notice.

Grantee hereby recognizes Grantor's title and interest in and to the land over which the aforesaid right of way in hereby granted and agrees never to assail or resist Grantor's title or interest therein.

Except as otherwise provided herein, the terms and conditions of this agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto.

It is understood and agreed that this grant is made subject to all valid and existing licenses, leases, grants, exceptions and reservations affecting said premises.

IN WITNESS WHEREOF, the said parties hereto have caused this agreement to be executed in duplicate by their proper officers, who are thereunto duly authorized.

| | | |
|---|---|---|
| Checked<br>By: D.J.S. | (SEAL) | STANDARD OIL COMPANY OF CALIFORNIA |
|   As To Desc.<br>By: M.W.S. | | By C. E. Bultmann, Contract Agent |
|   As To File<br>Approved | | By Lee Laird, Asst. Secretary |
| By: B.D.K. | (SEAL) | SHELL OIL COMPANY |
|   As To Form<br>F.E.X.<br>E.F.D. | | By J. U. Stair, Vice President |
|   Vice-Pres.<br>For'd for<br>Signature<br>L.A.B. | | By B. D. Koontz, Assistant Secretary |

STATE OF CALIFORNIA )
                     ) SS.
COUNTY OF LOS ANGELES)

ON THIS 23rd day of August, A. D., 1937, before me, M. M. BROWN, a Notary Public

117

in and for the said County and State, personally appeared J. U. STAIR, known to me to
be the Vice President, and B. D. KOONTZ, known to me to be the Asst. Secretary of the
SHELL OIL COMPANY the Corporation that executed the within Instrument, known to me to
be the persons who executed the within Instrument, on behalf of the Corporation here-
in named, and acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal
the day and year in this certificate first above written.

           (SEAL)    M. M. Brown

Notary Public in and for said County and State. My Commission Expires June 8, 1938.

STATE OF CALIFORNIA    )
                    ) SS.
CITY AND COUNTY OF SAN FRANCISCO,)

On this third day of September, in the year of our Lord One Thousand Nine Hundred
and thirty seven before me, FRANK L. OWEN a Notary Public in and for said City and
County and State, residing therein, duly commissioned and sworn, personally appeared
C. E. BULTMANN and LEE LAIRD known to me to be the Contract Agent and Assistant
Secretary respectively of STANDARD OIL COMPANY OF CALIFORNIA the Corporation described
in and that executed the within instrument, and also known to me to be the persons who
executed it on behalf of the said Corporation therein named and they acknowledged to
me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal,
at my office in the City and County and State aforesaid the day and year in this
certificate first above written.

           (SEAL)    Frank L. Owen

Notary Public in and for said City and County of San Francisco, State of California.

Recorded at Request of Shell Oil Company, Oct. 13, 1937, at 9 A.M., in Book 751
of Official Records, Page 111 Kern County Records.

                      Chas. H. Shomate, Recorder

                      By Frances Ahmann, Deputy Recorder

24503  Compared by: M. Wahn      Checked by: M. Lamb       W

------000------

THIS IS TO CERTIFY, THAT POMONA PUMP CO., a California Corporation, whose address
is 206 E. Commercial Street, Pomona, California, has installed a POMONA TURBINE WATER-
PUMPING PLANT bearing serial number P-97; consisting of One Pomona Deep Well Turbine
Pump direct connected to a 30 HP, 440 volt, 3 phase, 60 cycle Westinghouse motor,
50 feet 12" x 1 1/2" Column and shaft, one 1-stage, 14" MC turbine assembly on the
following described land West 1/2 Sec. 22 in Twp. 31 Range 27 Kern County, California,
and NOTICE IS HEREBY GIVEN that said PUMPING PLANT COMPLETE is sold under a CONDITIONAL
or LEASE SALES CONTRACT to Grover Fughitt, Bakersfield (Old River), Calif., in which
it is specifically provided that said pumping plant shall retain its status as personal
property and that the title to the same is and shall remain in Pomona Pump Co., until
payment in full therefor has been made.

           (SEAL)      POMONA PUMP CO.

                      By Donald C. McKenna

                          Its Vice President

                      By Jule H. Coffey,

                          Its Asst. Secretary

STATE OF CALIFORNIA  )
                  ) SS.
COUNTY OF LOS ANGELES)

On this 11th day of October, 1937, before me Eva S. Smith, a Notary Public in
and for said county, personally appeared Donald C. McKenna known to me to be the Vice
President and Jule H. Coffey, known to me to be the Asst. Secretary of POMONA PUMP CO.,

EXHIBIT 3

292

Recorded at request of Shell Oil Co., Feb-19-1938, at 9 A.M., in Book 765 of Official Records, Page 238 Kern County Records.

Chas. H. Stonate, Recorder

By Frances Ahmann, Deputy Recorder

3758    Compared by: *N. Hohrecht*    Checked by: *P. Brite*    B.

------000------

Consideration Less than One Hundred Dollars.                    5-2-122
Original-Shell Oil Co.

THIS AGREEMENT, dated the 19th day of January, 1938, by and between Standard Oil Company of California, a corporation, hereinafter termed Grantor and Shell Oil Company, also a corporation, hereinafter termed Grantee,

WITNESSETH: That Grantor, for and in consideration of the full and prompt performance of the things to be performed by Grantee, as hereinafter set out and contained, hereby grants to Grantee, subject to cancellation as hereinafter provided and under the terms, conditions and provisions hereinafter contained, a right of way and easement to lay, construct, maintain, operate, repair, renew, from time to time change the size of, and remove a 6-inch pipe line for the transportation of oil in, under, along and across that certain property situate in the County of Kern, State of California, and described as follows, to-wit:

The Southeast quarter of the Southeast quarter of Section Thirty-four, Township Twenty-eight South, Range Twenty-seven East (SE 1/4 of the SE 1/- of Sec. 34, T. 28 S., R. 27 E.) M.D.B.& M.

The Route along which said line is to be laid is shown in red on blue print No. J-131, attached hereto and made a part hereof.

It is understood and agreed that Grantee shall not do nor permit any welding on any pipe line installed within 150 feet of any oil or gas well now drilled or being drilled or hereafter drilled on the said lands by Grantor.

B.D.K.
G.M.F.

Grantee shall not interfere with or obstruct the use of said premises by Grantor, or injure or interfere with any person or property on or about said premises.

Grantee shall bury its pipe  line so that it will pass beneath previously laid pipe lines which it may cross, and so that it will be at all points at least eighteen (18) inches below the surface of the ground, and shall promptly and properly back-fill all excavations made by or for Grantee on the premises.

Whenever, in the opinion of Grantor, said pipe line interferes with Grantor's use of or operations upon the premises, Grantee shall, at its own expense and risk, within sixty (60) days after written request therefor by Grantor, lower or relocate and reconstruct said pipe line upon and across said premises to the depth or along the route specified by Grantor in such request, and shall restore said premises as nearly as possible to the same state and condition they were in prior to the lowering or prior to the reconstructing of said pipe line, as the case may be.

Grantee and its employees and agents shall, at any and all times when necessary, have free access to the said pipe line, over such reasonable route as Grantor may designate or approve, for the purpose of exercising the rights hereby granted.

This grant of right of way is personal to Grantee and shall not be assigned by Grantee, in whole or in part, without the written consent of Grantor being first had.  No written consent by Grantor hereunder shall be deemed a waiver by Grantor of any of the provisions hereof, except to the extent of such consent.

It is further understood and agreed that this agreement and the rights and privileges herein given grantee shall terminate in the event that Grantee shall fail, for a period of one year, to maintain and operate said pipe line.

B.D.K.
G.M.F.

In the event of the termination of this grant of right of way Grantee shall thereupon, at its own expense and risk, remove all pipe and any other property

293

placed by or for Grantee upon said land, and restore said premises as nearly as possible to the same state and condition they were in prior to the construction of said pipe line, but, if it should fail so to do within sixty (60) days after such termination, Grantor may so do, at the risk of Grantee, and all cost and expense of such removal and the restoration of said premises as aforesaid, together with interest thereon at the rate of twelve per cent per annum, shall be paid by Grantee upon demand; and in case of a suit to enforce or collect the same, Grantee agrees to pay Grantor in addition a reasonable attorney's fee to be fixed and allowed by the court.

Upon the termination of the rights hereby granted, Grantee shall execute and deliver to Grantor, within thirty (30) days after service of a written demand therefor, a good and sufficient quitclaim deed to the rights arising hereunder. Should Grantee fail or refuse to deliver to Grantor a quitclaim deed, as aforesaid, a written notice by Grantor reciting the failure or refusal of Grantee to execute and deliver said quitclaim deed, as herein provided, and terminating said grant shall, after ten (10) days from the date of recordation of said notice, be conclusive evidence against Grantee and all persons claiming under Grantee of the termination of said grant.

Grantee shall and will pay, before the same become delinquent, all charges, taxes, rates and assessments upon or against said pipe line and any other property or improvements placed by or for Grantee upon said premises, but Grantor may, at all times after any delinquency, pay and discharge all of such delinquent charges, taxes, rates and assessments, after reasonable verification thereof, and all such payments so made by Grantor, with interest thereon at the rate of twelve per cent per annum from date of payment, will be paid by Grantee upon demand. The amount of such payments and interest shall be a charge and lien against all pipe and other property placed by or for Grantee on the said premises, and in case of a suit, after such demand, to enforce or collect the same, Grantee agrees to pay Grantor in addition thereto a reasonable attorney's fee to be fixed and allowed by the Court.

Grantee shall be responsible for, and shall pay the party or parties entitled to payment for, any damage to or loss of property, or injury to or death of person, that directly or indirectly may be caused by or arise or result from the exercise or enjoyment of any of the rights herein granted, and shall hold Grantor harmless from and indemnify it against any and all claims therefor. Such damage or loss, if suffered by Grantor and if not mutually agreed upon, shall be ascertained and determined by three disinterested persons, one thereof to be appointed by Grantor, one by Grantee, and the third by the two so appointed as aforesaid, and the award of such three persons, or any two of them, shall be final and conclusive. Grantee agrees to hold Grantor harmless from and to indemnify it against any claim for damage to or loss of property of Grantee in, on, and about the right of way herein granted, or injury to or death of any person on said premises on behalf of or at the invitation of Grantee, whether such claim arise out of the operations of Grantor or otherwise.

Any notice provided herein to be given by either party hereto to the other may be served by depositing in the United States Post Office, postage prepaid, a sealed envelope containing a copy of such notice and addressed to said other party above named at its principal place of business, and the same shall be sufficient service of such notice.

Grantee hereby recognizes Grantor's title and interest in and to the land over which the aforesaid right of way is hereby granted and agrees never to assail or resist Grantor's title or interest therein.

Except as otherwise provided herein, the terms and conditions of this agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto.

It is understood and agreed that this grant is made subject to all valid and existing licenses, leases, grants, exceptions and reservations affecting said premises.

IN WITNESS WHEREOF, the said parties hereto have caused this agreement to be executed in duplicate by their proper officers, who are thereunto duly authorized.

Prepared by
Form Approved?
Pillsbury, Madison & Sutro
No.
Examined _
Approved:
Mgr. Right of Way Dept.
          Description Approved:

Engineer          Supt.Tel.& Tel.Div.
     Approved for Execution: _
Checked
By D.J.S.As to Desc.
By C.W.M.As to File
APPROVED
By B.D.K. As to Form
     E.F.D. Vice Pres.
          Vice Pres.
For'd for Signature L.A.B.

(SEAL) STANDARD OIL COMPANY OF CALIFORNIA
     By C. E. Bultmann, Contract Agent
     By G. M. Foster, Asst. Secretary

(SEAL) SHELL OIL COMPANY
     By J. U. Stair, Vice President
     By B. D. Koontz, Assistant Secretary

STATE OF CALIFORNIA   )
                      )ss.
COUNTY OF LOS ANGELES )

On this 26th day of January, A.D., 1938, before me, M. M. Brown, a Notary Public in and for the said County and State, personally appeared J. U. Stair, known to me to be the Vice President and B. D. Koontz, known to me to be the Asst. Secretary of the Shell Oil Company, the Corporation that executed the within instrument, known to me to be the persons who executed the within instrument, on behalf of the Corporation herein named, and acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

          (SEAL)     M. M. Brown

Notary Public in and for said County and State. My Commission Expires June 6, 1938.

STATE OF CALIFORNIA          )
                             )ss.
CITY AND COUNTY OF SAN FRANCISCO )

On this second day of February in the year of our Lord one thousand nine hundred and thirty eight, before me, Frank L. Owen, a Notary Public in and for said City and County and State, residing therein, duly commissioned and sworn, personally appeared C. E. Bultmann and G. M. Foster, known to me to be the Contract Agent and Assistant Secretary respectively of Standard Oil Company of California, the Corporation described in and that executed the within instrument, and also known to me to be the persons who executed it on behalf of the said Corporation therein named, and they acknowledged to me that such Corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in the City and County and State aforesaid, the day and year in this certificate first above written.

          (SEAL)     Frank L. Owen

Notary Public in and for said City and County of San Francisco, State of California.



SHELL OIL COMPANY
LOS ANGELES
RIGHT OF WAY MAP

RIGHT OF WAY THRU PROPERTY OF STANDARD OIL CO.
SE¼ OF S.E.¼ SEC. 34   T28S   R27E   M.D.B.&M.

First American Title

Recorded at request of Shell Oil Company, Feb-26-1938, at 9 A.M., in Book
765 of Official Records, Page 292 Kern County Records.

Chas. H. Shomate, Recorder

By Frances Ahmann, Deputy Recorder

4280    Compared by: N. Hohenest          Checked by: R. Ratz         B.

------000------

This Deed Requires Nil I.R.S.

GRANT DEED

In consideration of $10.00, receipt of which is acknowledged, GEO. W.
SHEARER, whose address is_ do hereby grant TO CHARLES F. SMITH and ANNA M. SMITH,
his wife, whose address is_ all that real property in the County of Kern, State of
California, described as:

Lots Five (5), Seven (7), Nine (9), Fourteen (14), Sixteen (16), Eighteen
(18), Twenty (20), Twenty-two (22), Twenty-six (26), Thirty (30) and Thirty-four
(34) of Tract No. 1053, as per Map thereof recorded August 18, 1937 in Book 4,
Page 86 of Maps in the office of the County Recorder of said County.

SUBJECT TO:  Any and all matters of record.

Dated this 18th day of March, 1938.

Geo. W. Shearer

STATE OF CALIFORNIA }
                    } SS.
COUNTY OF KERN      }

On this 18th day of March, 1938, before me, Freal W. Harvey, a Notary
Public in and for said County, personally appeared Geo. W. Shearer, known to me to
be the person whose name is subscribed to the within instrument, and acknowledged
that he executed the same.

WITNESS my hand and official seal.

(SEAL)    Freal W. Harvey

Notary Public in and for said County and State.

Recorded at Request of Charles F. Smith Mar-18-1938 at 11 A. M. in Book
765 of Official Records, Page 296 Kern County Records.

Chas. H. Shomate, Recorder

By Frances Ahmann, Deputy Recorder

5876    Compared By: N. Mills           Checked By: M. Foster       X

------000------

This Deed Requires _ I.R.S.

GRANT DEED

In consideration of $10.00, receipt of which is acknowledged, EDWARD
KIRSCHENMAN, whose address is _ do hereby grant TO CHARLES F. SMITH and ANNA M.
SMITH, husband & wife, whose address is_ all that real property in the County of
Kern, State of California, described as:

Lots Ten (10), Thirteen (13), Nineteen (19), Twenty-one (21), and Twenty-
five (25) of Tract, No. 1053, as per Map thereof recorded August 18, 1937 in Book
4 Page 86 of Maps, in the Office of the County Recorder of said County.

Dated this 16th day of March, 1938.

Edward Kirschenman

STATE OF CALIFORNIA }
                    } SS.
COUNTY OF KERN      }

On this 16th day of March, 1938, before me, Freal W. Harvey, a Notary
Public in and for said County, personally appeared Edward Kirschenman, known to me

EXHIBIT 4

C131

CV-126

THIS AGREEMENT, dated the ____8th____ day of ___February_____, 19⁸², by and

between CHEVRON U.S.A. INC., a corporation, hereinafter termed Grantor, and _____

GETTY OIL COMPANY
_____ , also a corporation,
hereinafter termed Grantee.

### WITNESSETH:

1. Grantor, for and in consideration of the full and prompt performance of the things to be performed by Grantee as hereinafter set out and contained, hereby grants to Grantee, subject to termination as hereinafter provided and under the terms, conditions and provisions hereinafter contained, a right of way and easement to lay, construct, maintain, operate, repair, renew, from time to time change the size of, and remove a pipe lines for the transportation of oil, petroleum, gas, gasoline, water or other substances in, under, along and across that "pipeline" hereinafter called

certain real property (hereinafter called "said premises") situate in the County of_____Kern_____ , State of California, and described as follows:

Township 28 South, Range 27 East, M.D.B.&M.

Section 34:  S½S½S½SE¼ EXCEPT the westerly 110 feet thereof and also the Seventh Standard Road right of way.

Said pipe line  shall be constructed along the route shown by a heavy broken line on that portion of Grantee's drawing No. 850-W-56 dated February 8, 1982 and designated Exhibit "A", attached to and made a part of this agreement; provided, however, where said pipelines lie North of the Seventh Standard Road right of way, a future county road 110 feet wide, they shall be constructed entirely within the ten foot strip of land North of and immediately adjacent to said county road right of way.



2. Grantee shall not interfere with or obstruct the use of said premises by Grantor or injure or interfere with any person or property on or about said premises.

3. Grantee, in the exercise of the rights granted to it hereunder, shall not do or permit to be done any welding or operations involving sparks or flame within a distance of three hundred (300) feet from any oil or gas

- 1 -

LD-423 (CD-1-77)
Printed in U.S.A.

well, or oil, gas or gasoline container, or place of discharge to atmosphere of oil, gas or gasoline, whether located on said premises or on adjacent lands, without prior consent of Grantor, and then only subject to and in accordance with the provisions hereof and such other conditions as may be expressed in said consent.

4. Grantee shall bury its pipe line so that it will pass beneath previously laid pipe lines which it may cross, and so that it will be at all points at least  forty-eight (48)  inches below the surface of the ground, and shall promptly and properly back-fill all excavations made by or for Grantee on said premises. Grantee shall ascertain and plainly mark before any excavations are made and during all times that work is being performed the exact location of all pipe lines or other facilities which may be below the surface of the ground or otherwise not plainly visible. Grantee hereby accepts sole responsibility for so doing and shall be solely liable for all loss, damage, injury or death caused or contributed to by any lack of or improper marking.

5. Grantee at its sole risk and expense shall do all things necessary to assure that the facility which it constructs hereunder will not be damaged by, and hereby waives all claims for damage to said facility resulting from, electrolysis or similar action resulting from or connected with Grantor's operation of any existing or future cathodic protection system on or in the vicinity of said premises.

6. At such time or times as, in the opinion of Grantor, said pipe line interferes with Grantor's use of or operations upon said premises, Grantee, shall at its own risk and expense, within sixty (60) days after written request therefor by Grantor, lower or relocate and reconstruct said pipe line upon and across said premises to the depth or along the route specified by Grantor in such request, and shall restore said premises as nearly as possible to the same state and condition they were in prior to the construction and lowering or reconstruction of said pipe line; provided, however, if all or any part of said premises is acquired in any manner by the federal or state or any local government or political subdivision or other public body or agency, the obligations of Grantee under this paragraph shall be null and void with respect to the lands so acquired and shall not inure to the benefit of any such government, subdivision, body or agency.

7. Grantee and its employees and agents shall have free access to the said pipe line over such reasonable route as Grantor may designate or approve for the purpose of exercising the rights herein given.

8. This grant of right of way is personal to Grantee and shall not be assigned or transferred by Grantee voluntarily, by operation of law, by merger or other corporate proceedings, or otherwise, in whole or in part, without the written consent of Grantor first being had. No written consent by Grantor hereunder shall be deemed a waiver by Grantor of any of the provisions hereof, except to the extent of such consent.

9. Upon the violation by Grantee of any of the terms and conditions set forth herein and the failure to remedy the same within thirty (30) days after written notice from Grantor so to do, then at the option of Grantor this agreement and the rights herein given Grantee shall forthwith terminate.

10. This agreement and the rights herein given Grantee shall terminate in the event that Grantee shall fail for a continuous period of one year to maintain and operate said pipe line.

11. Grantor or Grantee shall have the right at any time to terminate any portion or all of the rights herein given by giving to the other party hereto not less than ninety (90) days' notice in writing of its intention so to do; provided, however, if all or any part of said premises is acquired in any manner by the federal or state or any local government or political subdivision or other public body or agency, the Grantor's rights of termination under this paragraph shall be null and void with respect to the lands so acquired and shall not inure to the benefit of any such government, subdivision, body or agency.

12. Upon the termination of the rights herein given, Grantee shall at its own risk and expense remove all pipe and any other property placed by or for Grantee upon said premises hereunder and restore said premises as nearly as possible to the same state and condition they were in prior to any construction of said pipe line, but if it should fail so to do within sixty (60) days after such termination, Grantor may so do at the risk of Grantee, and all cost and expense of such removal and the restoration of said premises as aforesaid, together with interest thereon at the rate of ten per cent per annum, shall be paid by Grantee upon demand; and in case of a suit to enforce or collect the same, Grantee agrees to pay Grantor in addition a reasonable attorney's fee to be fixed and allowed by the court.

13. Upon the termination of the rights herein given, Grantee shall execute and deliver to Grantor within thirty (30) days after service of a written demand therefor a good and sufficient quitclaim deed to the rights herein given. Should Grantee fail or refuse to deliver to Grantor a quitclaim deed as aforesaid, a written notice by Grantor reciting the failure or refusal of Grantee to execute and deliver said quitclaim deed as herein provided and terminating this agreement shall, after ten (10) days from the date of recordation of said notice, be conclusive evidence against Grantee and all persons claiming under Grantee of the termination of the rights herein given.

14. Grantee shall pay, before the same become delinquent, all charges, taxes, rates and assessments upon or against said pipe line and any other property or improvements placed by or for Grantee upon said premises hereunder, but Grantor may at all times after any delinquency pay and discharge all of such delinquent charges, taxes, rates and assessments after reasonable verification thereof, and all such payments so made by Grantor,

LD-423 (CD-1-77)
Printed in U.S.A.

with interest thereon at the rate of ten per cent per annum from date of payment, shall be paid by Grantee upon demand. The amount of such payments and interest shall be a charge and lien against all pipe and other property placed by or for Grantee on said premises, and in case of a suit after such demand to enforce or collect the same, Grantee agrees to pay Grantor in addition thereto a reasonable attorney's fee to be fixed and allowed by the court.

15. Grantee agrees to indemnify and hold Grantor and its affiliates (as used in this paragraph and in Paragraph 16 hereof, "affiliates" means Standard Oil Company of California and any company in which Standard Oil Company of California/now or hereafter owns, directly or indirectly, at least fifty-one per cent of the shares of stock entitled to vote at a general election for directors) and their respective officers, directors, employees, successors and assigns, and each of them, harmless from and against all liability or claims thereof for loss of or damage to property (to whomever belonging) or injury or death of any person proximately caused in whole or in part by any negligence of Grantee or its contractors, or by any acts for which Grantee or its contractors are liable without fault, in the exercise of the rights herein granted; save and except in those instances where such loss or damage or injury or death is proximately caused in whole or in part by any negligence of Grantor or its contractors or affiliates or by any acts for which Grantor or its contractors or affiliates are liable without fault.

16. Grantee shall secure and maintain at its own expense during the term of this right of way and easement, liability insurance, in respect of said premises and all activities on or about or in connection with said premises of the types and in the minimum amounts described generally as follows: Premises Operations, Bodily Injury and Property Damage Liability Insurance with the explosion, collapse and underground exclusions deleted, with a limit of liability of $500,000 per occurrence. Such insurance shall be endorsed to name Grantor, its affiliates, officers, directors, employees, successors and assigns, and each of them, as additional insured. Grantee, prior to occupancy, shall furnish a Certificate of Insurance of the foregoing items and such certificate shall require 30 days' written notice of cancellation or reduction in coverage.

17. Any notice provided herein to be given by either party hereto to the other may be served by depositing in the United States Post Office, postage prepaid, a sealed envelope containing a copy of such notice and addressed to said other party at its address set out below, and the same shall be sufficient service of such notice.

Grantor:     P.O. Box 8000, Concord, CA  94524
              575 Market Street, San Francisco, California  94105
              Attention: Land Department

Grantee:     P.O. Box 2087, Bakersfield, CA  93303 ✓

              Attn:  Western Region Transportation Manager ✓

Either party may change its address where notices are to be sent pursuant to this paragraph by giving notice thereof to the other party in the manner set forth in this paragraph.

18. Grantee hereby recognizes Grantor's title and interest in and to said premises and agrees never to assail or resist Grantor's title or interest therein.

19. Except as otherwise provided herein, the terms and conditions of this agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto.

20. This grant is subject to all valid and existing licenses, leases, grants, exceptions, reservations and conditions affecting said premises.

IN WITNESS WHEREOF, the parties hereto have executed this agreement in duplicate.

Chevron U.S.A. Inc.

By _____
    J. D. FROGGATT    ASST. SECRETARY

GETTY OIL COMPANY

By _____
    Attorney in Fact

By _____
    Assistant Secretary

LD-423 PAGE 3 OF 3 (CD-12-77)
Printed in U.S.A.

T.28S./R.27E.

T.29S./R.27E.

Sec. 34

Sec. 2

SEVENTH

STONER

STANDARD

ROSENLIEB

ROAD

CHEVRON USA INC.

AIRPORTS DEVELOPERS

AIRPORT PROPERTY

EXHIBIT A
Scale: 1"=300'
Dated: 2-8-82

ADJACENT TO, & 10' NORTH of ROAD R/W.

5' NORTH of ROAD R/W.

EXHIBIT 5

T178-B-29

THIS AGREEMENT, dated the 3rd day of December, 1996, by and between CHEVRON U.S.A. INC., a corporation, hereinafter termed Grantor, and   TEXACO EXPLORATION AND PRODUCTION INC.

_____, also a corporation, hereinafter termed Grantee,

### WITNESSETH:

1. Grantor, for and in consideration of the full and prompt performance of the things to be performed by Grantee as hereinafter set out and contained, hereby grants to Grantee, subject to termination as hereinafter provided, and under the terms, conditions and provisions hereinafter contained, a right of way and easement to lay, construct, maintain, operate, repair, renew, from time to time change the size of, and remove a pipe line for the transportation of oil, petroleum, gas, gasoline, water or other substances in, under, along and across that certain real property (hereinafter called "said premises") situate in the County of _____ Kern _____, State of California, and described as follows:

> Township 28 South, Range 27 East, MDM
>
> Section 34: S/2SE/4 EXCEPT the westerly 110 feet thereof, and also the Seventh Standard Road right of way.
>
> Said pipe line shall be constructed within a strip of land 10 feet in width, the centerline of which is shown on Exhibit A, dated November 15, 1996, attached to and made a part of this agreement.

2. Grantee shall not interfere with or obstruct the use of said premises by Grantor or injure or interfere with any person or property on or about said premises.

3. Grantee, in the exercise of the rights granted to it hereunder, shall not do or permit to be done any welding or operations involving sparks or flame within a distance of three hundred (300) feet from any oil or gas well, or oil, gas or gasoline container, or place of discharge to atmosphere of oil, gas or gasoline, whether located on said premises or on adjacent lands, without prior consent of Grantor, and then only subject to and in accordance with the provisions hereof and such other conditions as may be expressed in said consent.

4. Grantee shall bury its pipe line so that it will pass beneath previously laid pipe lines which it may cross, and so that it will be at all points at least forty eight (48) inches below the surface of the ground, and shall promptly and properly back-fill excavations made by or for Grantee on said premises. Grantee shall ascertain and plainly mark before any excavations are made and during all times that work is being performed the exact location of all pipe lines or other facilities which may be below the surface of the ground or otherwise not plainly visible. Grantee hereby accepts sole responsibility for so doing and shall be solely liable for all loss, damage, injury or death caused or contributed to by any lack of or improper marking.

5. Grantee at its sole risk and expense shall do all things necessary to assure that the facility which it constructs hereunder will not be damaged by, and hereby waives all claims for damage to said facility resulting from, electrolysis or similar action resulting from or connected with Grantor's operation of any existing or future cathodic protection system on or in the vicinity of said premises.

6. At such time or times as, in the opinion of Grantor, said pipe line interferes with Grantor's use of or operations upon said premises, Grantee shall, at its own risk and expense, within sixty (60) days after written request therefore by Grantor, lower or relocate and re-erect said pipe line over and across said premises to the depth or along the route specified by Grantor in such request, and shall restore said premises as nearly as possible to the same state and condition they were in prior to the construction and lowering or reconstruction of said pipe line; provided, however, if all or any part of said premises is acquired in any manner by the federal or state or any local government or political subdivision or other public body or agency, the obligations of Grantee under this paragraph shall be null and void with respect to the lands so acquired and shall not inure to the benefit of any such government, subdivision, body or agency.

7. Grantee and its employees and agents shall have free access to said pipe line over such reasonable route as Grantor may designate or approve for the purpose of exercising the rights herein given.

8. This grant of right of way is personal to Grantee and shall not be assigned or transferred by Grantee voluntarily, by operation of law, by merger or other corporate proceedings, or otherwise, in whole or in part, without the prior written consent of Grantor. No written consent by Grantor hereunder shall be deemed a waiver by Grantor of any of the provisions hereof, except to the extent of such consent.

9. Upon the violation by Grantee of any of the terms and conditions set forth herein and the failure to remedy the same within thirty (30) days after written notice from Grantor so to do, then at the option of Grantor this agreement and the rights herein given Grantee shall forthwith terminate.

10. This agreement and the rights herein given Grantee shall terminate in the event that Grantee shall fail for a continuous period of one year to maintain and operate said pipe line.

11. Grantor or Grantee may from time to time terminate any portion or all of the rights of Grantee hereunder by giving to the other party hereto written notice of termination not less than ninety (90) days prior to a designated termination date; provided, however, if all or any part of said premises is acquired in any manner by any federal, state or local government or any other political subdivision, public body or agency of government, the Grantor's rights of termination under this paragraph shall be null and void with respect to the lands so acquired and shall not inure to the benefit of any such government, subdivision, body or agency.

12. Upon the termination of the rights herein given, Grantee shall at its own risk and expense remove all pipe and any other property placed by or for Grantee upon said premises hereunder and restore said premises as nearly as possible to the same state and condition it was in prior to any construction of said pipe line, but if it should fail so to do within sixty (60) days after such termination, Grantor may so do at the risk of Grantee, and all cost and expense of such removal and the restoration of said premises as aforesaid, together with interest thereof at the rate of ten percent per annum, shall be paid by Grantee upon demand; and in case of a suit to enforce or collect the same, Grantee agrees to pay Grantor in addition a reasonable attorney's fee to be fixed and allowed by the court.

13. Upon the termination of the rights herein given, Grantee shall execute and deliver to Grantor within thirty (30) days after service of a written demand therefor a good and sufficient quitclaim deed to the rights herein given. Should Grantee fail or refuse to deliver to Grantor a quitclaim deed as aforesaid, a written notice by Grantor reciting the failure or refusal of Grantee to execute and deliver said quitclaim deed as herein provided and terminating this agreement shall, after ten (10) days from the date of recordation of said notice, be conclusive evidence against Grantee and all persons claiming under Grantee of the termination of the rights herein given.

14.  Grantee shall pay, before the same become delinquent, all charges, taxes, rates and assessments upon or against said pipe line and any other property or improvements placed by or for Grantee upon said premises hereunder, but Grantor may at all times after any delinquency pay and discharge all of such delinquent charges, taxes, rates and assessments after reasonable verification thereof, and all such payments so made by Grantor, with interest thereon at the rate of ten percent per annum from date of payment, shall be paid by Grantee upon demand. The amount of such payments and interest shall be a charge and lien against all pipe and other property placed by or for Grantee on said premises, and in case of a suit after such demand to enforce or collect the same, Grantee agrees to pay Grantor in addition thereto a reasonable attorney's fee to be fixed and allowed by the court.

15.  Grantee agrees to indemnify and hold Grantor and its affiliates (as used in this Paragraph and in Paragraph 16 hereof, "affiliates" means Chevron Corporation and any company in which Chevron Corporation now or hereafter owns, directly or indirectly, at least fifty percent of the shares of stock entitled to vote at a general election for directors) and their respective officers, directors, employees, successors, and assigns, and each of them, harmless from and against all liability or claims thereof for loss of or damage to property (to whomever belonging) or injury to or death of any person (including an employee of Grantee, Grantor or its affiliates) or for loss or damage arising from attachments, liens or claims of materialmen or laborers, including claims and reasonable attorneys' fees relating to any of the foregoing, resulting from the exercise of the rights herein granted.  Such indemnity shall apply whether or not Grantor or its affiliate was or is claimed to be passively, concurrently or actively negligent, and regardless of whether liability without fault is imposed or sought to be imposed on Grantor and/or its affiliates.  This indemnity shall not apply where such loss, damage, injury, liability or claim is the result of the sole negligence or willful misconduct of Grantor or its affiliates.

16.  Grantee assumes full responsibility for, and agrees to indemnify, hold harmless, and defend Grantor and its affiliates and their respective officers, directors, employees, successors and assigns, and each of them, from and against all loss, liability, claims, fines, expenses, costs (including attorneys' fees and expenses) and causes of action caused by or arising out of any federal, state, or local laws, rules, orders, and regulations as may be amended applicable to any waste material, hazardous substances or other regulated substances on or below the surface of the said premises or the presence, disposal, release or threatened release of all waste material, hazardous substance or other regulated substances from said premises into the atmosphere or into or upon land or any water course or body of water, including ground water, which are attributable to Grantee's operations upon said premises or are a result of the actions of Grantee's officers, employees or agents in furtherance of Grantee's operations upon said premises. This indemnification shall apply to liability for voluntary environmental response actions undertaken pursuant to the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) or any other federal, state, or local law.

17.  Any notice provided herein to be given by either party hereto to the other may be served by depositing in the United States Post Office, postage prepaid, a sealed envelope containing a copy of such notice and addressed to said other party at its address set out below, and the same shall be sufficient service of such notice.

| | |
|---|---|
| Grantor: | P. O. Box 1392, Bakersfield, CA  93302 |
| | Attention:  Manager, California Division Land |
| Grantee: | 5005 Business Park North, Suite 200 |
| | Bakersfield, Ca 93309 |

Either party may change its address where notices are to be sent pursuant to this paragraph by giving notice thereof to the other party in the manner set forth in this paragraph.

18.  Grantee hereby recognizes Grantor's title and interest in and to said premises and agrees never to assail or resist Grantor's title or interest therein.

19.  Except as otherwise provided herein, the terms and conditions of this agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto.

20.  This grant is subject to all valid and existing licenses, leases, grants, exceptions, reservations and conditions affecting said premises.

IN WITNESS WHEREOF, the parties hereto have executed this agreement in duplicate.

CHEVRON U.S.A. INC.

By _____

Assistant Secretary

TEXACO EXPLORATION AND PRODUCTION INC.

By _____

**Attorney-in-Fact**

By _____

LD-423 Page 4 of 4 (10-92)



# SE 1/4
## SECTION 34
## T28S, R27E, MDB&M
## Kern County, California

C/4 CORNER
SECTION 34

E/4 CORNER
SECTION 34

| CURVE | DELTA | RADIUS | ARC | CHORD | TANGENT | CHORD BRG |
|---|---|---|---|---|---|---|
| C2 | 44° 40' 34" | 4.17 | 3.25 | 3.17 | 1.71 | N 66° 13' 54" W |
| C3 | 65° 52' 52" | 4.17 | 4.79 | 4.53 | 2.70 | S 74° 14' 19" W |
| C4 | 2° 53' 12" | 1000.00 | 50.38 | 50.38 | 25.20 | N 71° 22' 38" W |
| C5 | 55° 22' 52" | 4.17 | 4.03 | 3.87 | 2.19 | S 63° 00' 24" W |
| C6 | 55° 26' 42" | 4.17 | 4.03 | 3.88 | 2.19 | N 63° 02' 19" E |
| C7 | 19° 18' 19" | 1740.94 | 586.60 | 583.83 | 296.10 | S 79° 35' 12" E |
| C8 | 21° 43' 28" | 1744.94 | 661.62 | 657.66 | 334.83 | S 78° 22' 36" E |
| C10 | 0° 09' 31" | 13944.55 | 38.60 | 38.60 | 19.30 | S 88° 36' 36" E |
| C11 | 5° 25' 01" | 1744.94 | 164.97 | 164.91 | 82.55 | S 64° 48' 21" E |

N 01° 28' 07" E

N 01° 15' 49" E

SE 1/4
SECTION 34

C/L TEPI NATURAL GAS LINE

C3

C11  C4

L2

C7

C8

C5

C6  L3

L4

N 89° 18' 10" W
404.70

N 87° 26' 10" W
374.40

N 86° 37' 20" W
388.46

N 88° 34' 11" W
286.07

C10

C2

L5

L6

S 89° 14' 18" E   2642.05

SEVENTH STANDARD ROAD

NW CORNER
SECTION 2 29/27

N/4 CORNER
SECTION 2 29/27

SE CORNER
SECTION 34

N

LICENSED LAND SURVEYOR
KENNETH HENRY VALLEY
4335
EXP. 6/30/00
STATE OF CALIFORNIA

| LINE | BEARING | DISTANCE |
|---|---|---|
| L2 | N 72° 49' 14" W | 23.34 |
| L3 | S 35° 18' 58" W | 3.55 |
| L4 | N 87° 53' 33" W | 170.60 |
| L5 | N 87° 33' 02" W | 154.92 |
| L6 | N 43° 53' 37" W | 11.15 |

Texaco Exploration &
Production Inc.
Bakersfield Division

## EXHIBIT "A"

## TEPI – NORTH OF THE RIVER
## NATURAL GAS PIPELINE
## CHEVRON USA

Prepared by:
VALLEY INTERNATIONAL, INC.
4110 Pinewood Lake Drive
Bakersfield, CA  93309
Phone: (805) 834-1674

REV. 3-18-97   \96-15\CHEVUSA2

| Drawn: KHV | Date 11/14/96 | A.F.E. No. 92274 |
|---|---|---|
| Ch'k'd: | Scale 1"=400' | DWG. NO.   SHEET 1 OF 1 |
| App'd'd: | | |

Thomas A. Vogele, Esq.  (SBN 254557)
Timothy M. Kowal, Esq. (SBN 254709)
Brendan M. Loper, Esq. (SBN 282198)
THOMAS VOGELE & ASSOCIATES, APC
3199 Airport Loop Drive, Suite A3
Costa Mesa, California 92626
Telephone:   (714) 641-1232
Facsimile:    (888) 391-4105
Email:        tvogele@tvalaw.com
              tkowal@tvalaw.com

Attorneys for claimants C & C Properties,
Inc., JEC Panama, LLC and Wings Way,
LLC

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C & C PROPERTIES, INC., a California corporation; JEC PANAMA, LLC, a California limited liability company; and WINGS WAY, LLC, a Delaware limited liability company, | CASE NO.: 1:14-cv-01889 JLT |
| | **PROOF OF SERVICE** |
| Plaintiffs, | Action Filed:  March 4, 2015 |
| vs. | |
| SHELL PIPELINE COMPANY, a Delaware limited partnership; ALON USA PARAMOUNT PETROLEUM CORPORATION, a Delaware corporation; CHEVRON PIPE LINE COMPANY, a Delaware corporation; and DOES 1 through 25, inclusive, | |
| Defendants. | |

I, declare that I am over the age of 18 years, employed in the County of
Orange, and not a party to the within action; my address is 3199 Airport Loop
Drive, Suite A3, Costa Mesa, CA 92626.  On May 9, 2016 I served the foregoing
document described as **PLAINTIFFS' SECOND AMENDED COMPLAINT** via
CM/ECF Notice of Electronic Filing (NEF) to:

- 1 -
**PROOF OF SERVICE**

1
2   Keith E. McCullough
    kmccullough@AlvaradoSmith.com
3   Kevin A. Day
    kday@AlvaradoSmith. com
4   ALVARADOSMITH
5   A Professional Corporation
    1 MacArthur Place, Suite 200
6   Santa Ana, California 92707
7   Tel: (714) 852-6800
    Fax: (714) 852-6899
8
9   Attorneys for defendants SHELL PIPELINE
    COMPANY, a Delaware Limited Partnership,
10  ALON USA ENERGY, INC. and
11  PARAMOUNT PETROLEUM CORPORATION
    erroneously sued as ALON USA PARAMOUNT PETROLEUM
12  CORPORATION
13
14
        I declare under penalty of perjury that the foregoing is true and correct.
15
16
                            /s/ Angela Brown
17                          Angela Brown
18
19
20
21
22
23
24
25
26
27
28
                            - 2 -
                    **PROOF OF SERVICE**