**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| C & C PROPERTIES, INC., et al. | Case No.: 1:14-cv-01889-DAD- JLT |
| Plaintiffs, | ORDER DENYING PLAINTIFF'S MOTION TO MODIFY THE SCHEDULING ORDER |
| v. | |
| SHELL PIPELINE COMPANY, et al, | (Doc. 140) |
| Defendant. | |

Plaintiffs seek modification of the Court's Scheduling Order pursuant to Rule 16 of the Federal Rules of Civil Procedure, for the purpose of permitting Plaintiffs to file a motion to compel discovery.[1] (Doc. 140) Because the Court finds Plaintiffs failed to act with the diligence required by Rule 16, the motion to modify the Scheduling Order is **DENIED**.

**I.      Background**

In June 2013, Plaintiffs purchased 138 acres of undeveloped land from Chevron USA, Inc. (the "Subject Property), intending to develop the property for commercial and industrial use. (Doc. 103 at 4-5, ¶ 14)  The Subject Property abuts Merle Haggard Drive, and Plaintiffs report they will be required by the County of Kern to make "substantial improvements to Merle Haggard Drive." (*Id.* at 5, ¶ 14)

---

[1] Plaintiffs did not file a Notice of Motion or set the matter for a hearing, and as a result no deadlines were set for the defendants, and the matter was not placed upon the Court's calendar.  Although the Court granted the defendants an opportunity to respond to the motion, no response was filed.  The Court finds the matter is suitable for decision without oral arguments, and declines to set the matter for a hearing pursuant to Local Rule 230(g).

1

Plaintiffs allege that prior to the close of escrow on the Subject Property, they discovered that Chevron granted three recorded easements to Shell Oil Company: the 747 Easement on the southeast corner of the property, the 751 Easement on the southeast corner of the property, and the 765 Easement on the southwest corner of the property. (Doc. 103 at 5-6) By their express terms, each permitted a pipeline or pipelines to be lain within the easements. (*See* Doc. 19-2 at 8, 17, 21)

According to Plaintiffs, the recorded easements "contain a clause requiring that the grantee 'not interfere with or obstruct the use of said premises by Grantor, or injure or interfere with any person or property on or about said premises.'" (Doc. 103 at 6, ¶ 17) Further, Plaintiffs assert that the easements contain a relocation clause, stating:

> Whenever, in the opinion of Grantor, said pipe line interferes with the Grantor's use of or operations upon the premises, Grantee shall, at its own expense and risk, within sixty (60) days of written request therefor by Grantor, lower or relocate and reconstruct said pipe line upon and across said premises to the depth or along the route specified by Grantor in such request, and shall restore said premises as nearly as possible to the same state and condition there were in prior to the lowering or prior to the reconstruction of said pipe line, as the case may be.

(*Id.*, ¶ 18) Plaintiffs assert that Shell Oil assigned the Easements to Shell Pipeline, without Chevron's written consent to the assignments. (*Id.* at 6-7, ¶ 18) In addition, Plaintiffs allege the Easements included "a successors clause, stating: 'Except as otherwise provided herein, the terms and conditions of this agreement shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto.'" (*Id.* at 7, ¶ 19)

Plaintiffs assert that, in conjunction with pre-development activities, they discovered the pipelines "were not confined to the Recorded Easements at the southwest and southeast corners of the Subject Property. Instead, Defendants' pipelines extend across the entire frontage of the Subject Property, parallel and directly adjacent to Merle Haggard Drive. (Doc. 32 at 7) Further, Plaintiffs assert they learned of two unrecorded easements, purportedly held by Shell Pipeline and Alon. (Id. at 8-9) The unrecorded easements both contain "relocation, removal, abandonment, and restrictions on assignment clauses effectively identical to the Recorded Easements." (*Id.*, ¶¶ 24 and 27)

Because development of the property required road improvements of Merle Haggard Drive, the pipelines posed an engineering impediment. (*See* Doc. 19-1 at 2, 3) On June 19, 2014, "Plaintiffs made [a] written demand on Shell Pipeline for removal or relocation of all pipelines operated within the

Recorded Easements within sixty (60) days, per the express terms of the easements. (Doc. 103 at 7, ¶ 21) Plaintiffs made a similar demand to Alon "to relocate or remove its pipeline within sixty (60) days per the express terms of the Second Unrecorded Easement." (*Id.* at 9, ¶ 28)

After Shell and Alon refused to lower or relocate the pipeline, Plaintiffs initiated this action by filing a complaint on November 26, 2014 (Doc. 1), which Plaintiffs later amended in February 2015. (Doc. 32). Plaintiffs filed a motion for a preliminary injunction, which was granted by the Court on December 3, 2015. (Doc. 76) Plaintiffs filed a Second Amended Complaint on May 9, 2016, which is now the operative pleading. (Doc. 103)

On June 21, 2016, the Court held a Scheduling Conference with the parties and determined the applicable deadlines for this action. (Doc. 107, 108) The parties were ordered to complete non-expert discovery no later than December 16, 2016, and expert discovery by January 16, 2017. (Doc. 108 at 1) Any non-dispositive motions were to be filed no later than February 3, 2017, and dispositive motions were to be filed no later than March 14, 2017. (*Id.*)

In the Mid-Discovery Status Conference Statement filed in October 2016, Plaintiffs reported they propounded their first requests for production of documents in April 2015, and a second set in March 2016. (Doc. 115 at 2) Plaintiffs reported they intended "to complete the following discovery:

> (1) limited written interrogatories; (2) depositions of defendants' persons most knowledgeable regarding multiple topics including, but not limited to, the operation of the pipelines, defendants' decisions to not remove the pipelines in response to the June 19, 2014 written demand, and the benefits defendants obtained as a result of not removing the pipelines following Plaintiffs' written demand; (3) additional requests for production; (4) expert discovery, if necessary.

(*Id.* at 2-3) Plaintiffs indicated they had not initiated this discovery because they were waiting for defendants to produce documents that were responsive to the first two requests. (*Id.* at 3) The Court found the statement of the parties indicated discovery was "proceeding appropriately" and vacated the mid-discovery status conference. (Doc. 116) The Court also "reminded [counsel] of their obligation to complete all discovery within the time frames set forth in the Scheduling Order." (*Id.*)

On March 14, 2017, Plaintiffs filed a motion for partial summary judgment.[2] (Doc. 124) Later

---

[2] The Court heard oral arguments on April 18, 2017, and indicated a written order would follow. (Doc. 131) The motion remains under submission.

that month, Plaintiffs served a third set of document requests to Shell. (Doc. 140 at 3) Shell refused to respond to the discovery, after which the parties filed a Joint Statement Re Discovery Disagreement on May 15, 2017, in which the parties indicated they had stipulated to extend the filing of discovery motions to that date. (Doc. 132 at 2) The Court held a telephonic conference with the parties on June 12, 2017, and authorized Plaintiffs to file a motion to compel discovery. (Doc. 136) Upon the filing of the Joint Statement, the Court set an additional telephonic conference regarding the dispute, which was held on June 29, 2017. (Docs. 137, 139) "The Court reminded counsel that the deadline for non-dispositive motions expired in February 2017," as the stipulation to extend the deadline was not filed with or approved by the Court. (Doc. 139) In addition, the parties were "advised that the Court does not look favorably on motions to amend the case schedule filed after the expiration of the operative deadline," and informed that "to file a motion that is not timely according to the case schedule, they must file a motion to amend the case schedule under Rule 16." (*Id.*) Thereafter, Plaintiffs filed the motion to modify the Scheduling Order that is now pending before the Court. (Doc. 140)

**II.    Scheduling Orders**

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

4

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

### III. Discussion and Analysis

As noted above, the Scheduling Order in this action set forth a non-expert discovery deadline of December 16, 2016, and expert discovery deadline of January 16, 2017, as requested by the parties. (Doc. 104 at 3; Doc. 108 at 1) With these deadlines, the Court also ordered: "All non-dispositive pre-trial motions shall be filed no later than **February 3, 2017**, and heard on or before **March 3, 2017**." (Doc. 108 at 3, emphasis in original) The motion now pending before the Court was not filed until after these deadlines passed. Thus, Plaintiffs are required to demonstrate good cause—and diligence—under Rule 16.

Plaintiffs fail to demonstrate they acted diligently in seeking discovery in issue, or in seeking leave to amend the Scheduling Order. Plaintiffs report they took the deposition of Shell's person most knowledgeable at the end of January 2017—after the non-expert discovery deadline. (Doc. 140 at 3) Although the parties, evidently, agreed to extend the deadlines for this purpose (Doc. 140 at 5), the Court was not informed and did not approve of the extension of its deadlines.

According to Plaintiffs, during this deposition, "C&C learned that Shell did not have the required written consent from the original grantor of its easement." (*Id.*) Based upon this information, Plaintiffs served a third set of document requests on March 23, 2017, "seeking evidence of Shell's benefits obtained by the use of the property for the full five-year period under California Civil Code section 3334, rather than the shorter period that would apply if Shell had had a valid easement." (Doc. 140 at 3, 6) However, there is no explanation why Plaintiffs waited nearly *two months* after the

5

deposition to seek this additional discovery from Shell, which objected to the requests and did not provide responsive documents. (*Id.* at 6)

Significantly, Plaintiffs fail to show both that the discovery issues could not have been reasonably foreseen or anticipated, or that they were diligent in seeking amendment of the case schedule "once it became apparent that [they] could not comply with the order." *See Jackson*, 186 F.R.D. at 607. Despite the Court's ordered deadlines and disputes between the parties, Plaintiffs did not seek formal extensions of the deadlines or assistance from the Court in obtaining discovery responses from the defendants. Moreover, the Ninth Circuit determined a court may deny "further discovery if the movant has failed diligently to pursue discovery in the past." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). In light of Plaintiffs' lack of diligence in pursuing the discovery in this action, and in seeking leave to amend the Court's schedule when it appeared they would not be able to meet the discovery deadlines ordered by the Court, the relief requested under Rule 16 will not be granted. *See id.*

## IV.    Conclusion and Order

Based upon the foregoing, the Court **ORDERS**: Plaintiff's motion to amend the scheduling order (Doc. 140) is **DENIED**.

IT IS SO ORDERED.

Dated:    **December 20, 2017**                    /s/ Jennifer L. Thurston
                                                    UNITED STATES MAGISTRATE JUDGE