UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C & C PROPERTIES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SHELL PIPELINE COMPANY, et al.,<br><br>Defendants. | No. 1:14-cv-01889-DAD-JLT<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Doc. No. 124) |

This matter is before the court on plaintiffs' motion for partial summary judgment. (Doc. No. 124.) A hearing on the motion was held on April 18, 2017. Attorneys Timothy Kowal and Thomas Vogele appeared on behalf of plaintiffs. Attorney Kevin Day appeared on behalf of defendants. Having considered the parties' briefs and oral arguments, and for the reasons set forth below, the court will deny plaintiffs' motion for summary judgment.

## BACKGROUND[1]

Plaintiffs C&C Properties ("C&C"), JEC Panama, LLC, and Wings Way, LLC purchased 138 acres of undeveloped land in Bakersfield, California from defendant, Chevron U.S.A., Inc.

---

[1] The relevant facts that follow are principally derived from defendants' separate statement of facts ("DSSF") and additional undisputed material facts filed in opposition to plaintiffs' motion for partial summary judgment. (Doc. No. 126-2.) The court notes that the DSSF mainly responds to plaintiffs' statement of undisputed facts and conclusions of law in support of its motion for partial summary judgment. Above, the court recites the statement of facts that are in large part undisputed.

1

("Chevron") on June 28, 2013 (hereinafter "the property"). (*See* Doc. No. 103 ("SAC") at ¶ 14.) According to the allegations of the SAC, "plaintiffs intend to develop the Subject Property for commercial /industrial use." (*Id.*) It is undisputed that title transferred to plaintiff C&C Properties on October 29, 2013. (Doc. No. 126-2 at ¶ 7.) However, prior to the closing of escrow in October 2013, plaintiffs discovered three recorded easements located on the southwest and southeast corners of the property. (*Id.* at ¶ 15.) These easements had been granted to defendant, Shell Oil Company, by the property's prior owner, Chevron. (*Id.*) The easements corresponded to pipelines discovered by plaintiffs in April 2014. (*Id.* at ¶ 20.) The pipelines extended across the frontage of the property "parallel and directly adjacent to Merle Haggard Drive." (*Id.*) Upon investigation, plaintiffs learned that the pipelines belonged to defendants Shell and Alon USA Paramount Petroleum Corporation ("Alon"). (*Id.* at ¶ 23.) Although plaintiffs found four pipelines assigned to Shell and one pipeline assigned to Alon, easements with respect to only the following three pipelines are at issue here: (1) Shell's 12" common-carrier "Cross-Valley Pipeline;" (2) Shell's 14" Bakersfield Crude Pipeline;"[2] and (3) Alon's 10" high-pressure natural gas pipeline. (*See* Doc. No. 126-2 at ¶¶ 8–10, 13–14).

      Shell acquired the 1982 Getty Easement (hereinafter "the Getty Easement"), originally granted by Chevron to Getty Oil, by purported assignments in 1999 and either late 2010 or 2011. (*Id.* at ¶ 1.) Shell did not obtain Chevron's written consent for this assignment. (*Id.* at ¶ 3.) The easement on which Alon's 10" high-pressure natural gas pipeline easement sits was acquired through the 1996 Texaco Easement, originally granted by Chevron to Texaco, assigned to Equilon in June 2005, assigned to Big West in October 2005, and finally assigned to Alon in 2010 (hereinafter "the Texaco Easement"). (*Id.* at ¶ 4.) Alon similarly did not obtain Chevron's written consent for this assignment. (*Id.* at ¶ 6.)

      The terms of the easements are substantially similar. Both the Getty and Texaco Easements provide that they may not be assigned or transferred without the written consent of the

---

[2] Defendants dispute the relevance of Shell's 14" Bakersfield Crude Pipeline, arguing that the operative complaint contains no causes of action related to it. (Doc. No. 126-2 at ¶ 9.) Because resolution of this issue is not necessary to disposing of the instant motion, the court declines to address it.

grantor. (*Id.* at ¶¶ 2, 5.) Among other provisions, specifically at issue here is the relocation clause within each agreement. Those relocation clauses provide that if in the opinion of the grantor, the "pipeline interferes with the grantor's use of or operations upon such premises," the grantee must within 60 days at the request of the grantor lower or relocate the pipeline along a route specified by the grantor. (Doc. No. 124-4 at 10, 15.)

After some investment in the property, plaintiffs determined that "the pipelines materially interfere with the road improvement project required by the County, and with plaintiffs' planned commercial/industrial development." (SAC at ¶ 20.) As a result of this determination, on June 19, 2014, plaintiffs issued letters to defendants Shell and Alon demanding removal or relocation of the pipelines in accordance with the relocation clauses of the easement agreements. (Doc. No. 126-2 at ¶¶ 15, 18, 25, 32.) Both Alon and Shell responded to plaintiffs' letter and refused to lower or relocate the pipelines. (*Id.* at ¶¶ 16, 18.)

As a result of defendants' refusal, plaintiffs filed suit in federal court on November 26, 2014 and sought a preliminary injunction compelling defendants to remove their pipelines. (Doc. Nos. 1, 19.) Upon briefing and oral argument, the assigned magistrate judge took the matter under submission. Thereafter, Alon agreed to remove its 10" pipeline within 120 days without a court order and Shell also agreed to remove its 12" Cross-Valley Pipeline within 120 days without a court order. (*Id.*) However, Shell refused to remove its 14" Bakersfield Crude Pipeline. (*Id.*) On September 23, 2015, the assigned magistrate judge issued findings and recommendations, recommending that plaintiffs' motion for a preliminary injunction to remove the 14" Bakersfield Crude Pipeline be granted in part. (Doc. No. 72 at 18.) On December 3, 2015, the district judge previously assigned to this action adopted the findings and recommendations in full. (Doc. No. 76 at 2.) In their partial motion for summary judgment now pending before the court, plaintiffs represent that all pipelines were removed by April 16, 2016. (Doc. No. 124 at 11.) In this action plaintiffs seek damages resulting from these violations of the relocation clauses of the agreements.

Plaintiffs filed the instant motion for partial summary judgment on March 14, 2017. (Doc. No. 124.) Defendants filed their opposition on April 4, 2017. (Doc. No. 126.) Plaintiffs filed

3

their reply on April 11, 2017.  (Doc. No. 129.)

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On a motion for summary judgment, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may meet its burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." *Id.* at 323.

If the moving party meets its burden, the burden then shifts to the opposing party to demonstrate the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings

but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

When evaluating the evidence to determine whether there is a genuine issue of fact, the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

"When as is the case here, the moving party is a plaintiff, he or she must adduce admissible evidence on all matters as to which he or she bears the burden of proof." *Grimmway Enters. v. PIC Fresh Glob., Inc.*, 548 F. Supp. 2d 840, 845 (E.D. Cal. 2008) (quoting *Zands v. Nelson*, 797 F. Supp. 805, 808 (S.D. Cal. 1992)) (internal quotation marks omitted); *see also S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (noting that plaintiffs, as the

moving party and "the party with the burden of persuasion at trial, the Gas Company must establish 'beyond controversy every essential element of its' Contract Clause claim." (quoting William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 14:124–127 (2001))).

**DISCUSSION**

Plaintiff's motion moves for summary judgment on three causes of action: ejectment, trespass, and breach of contract. The court addresses each in turn.

**A.  Ejectment**

Plaintiffs first move for summary judgment on the issue of ejectment. (Doc. No. 124 at 12–14.)

The SAC does not allege ejectment as a separate cause of action—indeed, the words "ejectment" or "eject" appear nowhere in plaintiffs' SAC. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of *the claim* showing that pleader is entitled to relief") (emphasis added). The court therefore construes plaintiff's motion for summary judgment as an attempt to amend the pleadings under Federal Rule of Civil Procedure 15(b). *See Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) ("Where plaintiffs 'fail to raise a claim properly in their pleadings, . . . if they raised it in their motion for summary judgment, they should be allowed to incorporate it by amendment under Fed. R. Civ. P. 15(b).'") (internal brackets omitted) (quoting *Jackson v. Hayakawa*, 605 F.2d 1121, 1129 (9th Cir. 1979)).

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a). Otherwise, a party must seek leave of court to amend a pleading or receive the opposing party's written consent. Fed. R. Civ. P. 15(a)(2).

The Federal Rules of Civil Procedure provide that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, leave to amend need not be granted where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *See Amerisource Bergen Corp. v.*

*Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)). "Prejudice to the opposing party is the most important factor." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31 (1971)); *see also Sonoma Cty. Ass'n of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

A complaint states a claim for ejectment so long as it alleges "ownership in plaintiff; that the defendant wrongfully entered and dispossessed him; and that he still keeps him out of possession. No further averment [is] required." *Nathan v. Dierssen*, 164 Cal. 607, 610 (1913) (citing *Payne v. Treadwell*, 16 Cal. 220 (1860); *Salmon v. Symonds*, 24 Cal. 260, 261–62 (1864); *Johnson v. Vance*, 86 Cal. 128 (1890); and *F.A. Hihn Co. v. Fleckner*, 106 Cal. 95 (1895)).

The court does not find that amendment would prejudice the opposing party here, since defendants did not oppose amendment in their opposition to plaintiff's motion for summary judgment. Although defendants dispute whether plaintiffs are entitled to summary judgment on their ejectment claim, they did not argue that stating an ejectment claim was prejudicial or in any way procedurally improper. Absent any objection by defendants, the court finds no prejudice to them from amendment. The court similarly finds nothing to indicate that amending the complaint to add an ejectment claim was done in bad faith or will produce an undue delay in litigation. Accordingly, plaintiffs' motion, construed as a motion to amend, will be granted.

Proceeding to the merits of plaintiffs' motion for partial summary judgment, it is undisputed that plaintiff C&C owned the property as of October 29, 2013. (Doc. No. 124-2 at ¶ 7.) The parties instead dispute whether the easements terminated. Plaintiffs contend that the easements terminated, at which point the pipelines were no longer permitted on the property.

Central to plaintiffs' argument is paragraph 8 of both the Getty Easement and the Texaco Easement. Those two provisions each state:

> This grant of right of way is personal to Grantee and shall not be assigned or transferred by Grantee voluntarily, by operation of law, by merger or other corporate proceedings, or otherwise, in whole or in part, without the written consent of the Grantor first being had.

7

(Doc. No. 124-4 at 10, 15.) Neither party disputes that the easements were assigned, nor that defendants Shell and Alon never obtained written consent for the assignments. (Doc. No. 126-2 at ¶¶ 1, 3, 4, 6.)

Plaintiffs contend that this failure to obtain written consent constituted a breach of these provisions. Even assuming plaintiffs are correct, however, they have not demonstrated that the mere fact of such a breach automatically terminates the easements. Indeed, such an interpretation is belied by other terms of the easements. In this regard, the easements contain several explicit methods of terminating. For instance, paragraph 9 of the easements states that

> Upon the violation by Grantee of any of the terms and conditions set forth herein and the failure to remedy the same within thirty (30) days *after written notice from Grantor so to do*, then at the option of the Grantor this agreement and the rights herein given Grantee shall forthwith terminate.

(Doc. No. 124-4 at 10, 15) (emphasis added). Thus, if plaintiffs sought to terminate the easements, they could have invoked paragraph 9 and provided written notice to defendants. However, there is no evidence before the court on summary judgment that this occurred. Moreover, an interpretation of the easements that provides for automatic termination in the event of a breach would render paragraph 9 superfluous, since there would be no use for a termination clause in an agreement that terminates automatically. *See Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW, 2014 WL 171830, at *4 (N.D. Cal. Jan. 15, 2014) ("If a contract has a termination clause, the clause controls and a party to the contract may only terminate in accordance with the terms specified."); *Mad River Lumber Sales, Inc. v. Willburn*, 205 Cal. App. 2d 321, 324 (1962) (holding that defendant "could only terminate the contract in accordance with the terms specified in the contract and by which she had limited her power of termination for breach"). Accordingly, if plaintiffs did not adhere to the terms governing termination, it appears that the easements could not have ended automatically.

In addition, California courts have addressed an analogous factual scenario in which a similar provision governing assignments was contained within a lease agreement. *See Buchanan v. Banta*, 204 Cal. 73 (1928). Although the lease in *Buchanan* prohibited assignments without written consent of the lessor, the lessee nonetheless proceeded to assign the lease to a third party

without obtaining consent. *Id.* at 74. The California Supreme Court determined that such an assignment, though it did breach the lease agreement, did not automatically terminate the agreement. *Id.* at 76–77. Instead, the court held that "where there is a clause in a lease that it shall not be assigned without previous written consent of the lessor, and this covenant is breached, the lessor has only the option to forfeit the lease for such breach; the assignment is not void, but *voidable*, only at the option of the lessor, which option he must exercise according to law." *Id.* (emphasis added) (internal citations omitted); *see also People v. Klopstock*, 24 Cal. 2d 897, 901 (1944) (noting that "[t]he successive assignments . . . though made without the written consent of the lessor, were merely voidable, not void; there was no ipso facto termination of the lease by reason of the lessee's failure to obtain the lessor's written consent to assignment."). The court finds this logic, employed by the California Supreme Court in *Buchanan* and *Klopstock,* applicable to the easements at issue in this case.

Here, plaintiffs have not demonstrated that a failure to abide by paragraph 8 of the easements terminated those easements as a matter of law. Because the easements became voidable rather than void, plaintiffs must establish that they exercised their option to terminate the easements. However, plaintiffs have pointed to no evidence before the court on summary judgment establishing that they do so.

Because plaintiffs carry the burden of persuasion at trial on their ejectment claim, they "must establish beyond controversy every essential element" of their claim. *S. Cal. Gas Co.*, 336 F.3d at 888. Having failed to show that the easements terminated automatically, plaintiffs have failed to establish that the presence of the pipelines on the property was wrongful as a matter of law, as they must do to succeed on their ejectment claim. *See Nathan*, 164 Cal. at 610.

Accordingly, plaintiffs' motion for summary judgment on their ejectment claim will be denied.

**B.    Trespass**

Next, plaintiffs move for summary judgment on their trespass claim. "Trespass is an unlawful interference with possession of property." *Staples v. Hoefke*, 189 Cal. App. 3d 1397, 1406 (1987) (citing *Girard v. Ball*, 125 Cal. App. 3d 772, 788 (1981)); *see also Ralphs Grocery*

*Company v. Victory Consultants, Inc.*, 17 Cal. App. 5th 245, 261-62 (2017). A trespass may occur "if the party, entering land pursuant to a limited consent, i.e., limited as to purpose or place, proceeds to exceed those limits by divergent conduct on the land of another." *Mangini v. Aerojet-Gen. Corp.*, 230 Cal. App. 3d 1125, 1141 (1991); *see also Cardenas v. Whittemore*, No. 10cv1808-LAB-KSC, 2013 WL 941634, at * 6 (S.D. Cal. Mar. 11, 2013). A defendant may also be liable for trespass "although he has acted in good faith, under the mistaken belief, however reasonable, that he is committing no wrong." *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1480–81 (1986) (quoting Prosser and Keeton on Torts (5th ed. 1984) § 13, pp. 73–74); *see also Commil USA, LLC v. Cisco Systems, Inc.*, ___U.S.___, ___, 135 S. Ct. 1920, 1930 (2015); *Donahue Schriber Realty Group, Inc. v. Nu Creation Outreach*, 232 Cal. App. 4th 1171, 1178 (2014).

There is no dispute that plaintiffs own the property, since title was transferred from Chevron to C&C on October 29, 2013. (Doc. No. 126-2 at ¶ 12.) There is also no dispute that defendants occupied the property by maintaining pipelines on it more than sixty days after C&C sent demand letters to Shell and Alon. (Doc. No. 124 at 11.) Defendants also held the requisite intent for trespass because they knew the pipelines traversed the property. *See Miller*, 187 Cal. App. 3d at 1480 (1986) ("The intent required as a basis for liability as a trespasser is simply an intent to be at the place on the land where the trespass allegedly occurred.") (internal quotation marks omitted) (quoting Prosser and Keeton on Torts (5th ed. 1984) § 13, pp. 73–74)). Thus, the remaining issue before the court is whether defendants' occupation of plaintiffs' property was in excess of the permission granted to them.[3]

/////

---

[3] There is an additional issue of damages in a trespass action. The California Supreme Court has held that "[f]or every trespass upon real property the law presumes nominal damages." *Empire Gravel Min. Co. v. Bonanza Gravel Min. Co.*, 67 Cal. 406, 409 (1885); *see also Polin v. Chung Ho*, 8 Cal. App. 3d 673, 676 (1970). Plaintiffs do not move for summary judgment on the issue of damages, and the court therefore need not reach this issue. (*See id.* at 18) ("Based on these undisputed facts, the Court should find Alon trespassed upon the Property between August 19, 2014 and April 10, 2016, and that C&C is entitled to damages to be proven at trial as a matter of law.").

Plaintiffs' theory as to why defendants' occupation was in excess of the permission granted is based upon paragraph six of the easements. Those paragraphs, which are again identical, state in relevant part:

> At such time or times as, in the opinion of the Grantor, said pipe line interferes with Grantor's use of or operations upon said premises, Grantee shall, at its own risk and expense, within sixty (60) days after written request therefore by Grantor, lower or relocate and re-erect said pipeline over and across said premises to the depth or along the route specified by Grantor in such respect, and shall restore said premises as nearly as possible to the same state and condition they were in prior to the construction and lowering or reconstruction of said pipeline . . . .

(Doc. No. 124-4 at 10, 15.) It is undisputed on summary judgment that C&C served written requests on Shell and Alon on June 19, 2014 to relocate or lower their pipelines, although the parties dispute the legal effect of those letters. (Doc. No. 126-2 at ¶¶ 15, 18.) It is also undisputed that those pipelines were not removed within sixty days of the written requests. (*Id.* at ¶¶ 16, 19.) Plaintiffs' theory, in essence, is that because defendants did not timely remove their pipelines, they exceeded their permission to maintain their pipelines on the sixty-first day after C&C's letters were sent, thereby becoming trespassers.

Defendants contend that a triable issue of fact exists as to whether they ever exceeded the scope of the permission granted to them. In their brief in opposition to summary judgment on this claim, defendants focus on the language in paragraph six of the easements referring to "the opinion of the Grantor." Defendants argue that, for a variety of reasons, plaintiffs' opinion was invalid. If a factual dispute exists as to the validity of the opinion, defendants contend that the court cannot grant summary judgment in favor of plaintiffs on their trespass claim.

The court interprets this provision of the easements as a "satisfaction clause" often found in contracts, in which "performance must be satisfactory to the promisor, so that this becomes a condition precedent." 1 Witkin, Contracts § 806 (11th ed. 2017). Such provisions are enforceable under California law. *Mattei v. Hooper*, 51 Cal. 2d 119, 126 (1958) ("We conclude that the contract here was neither illusory nor lacking in mutuality of obligation because the parties inserted a provision in their contract making plaintiff's performance dependent on his satisfaction with the leases to be obtained by him."); *Larwin-S. Cal., Inc. v. JGB Inv. Co.*, 101

Cal. App. 3d 626, 639 (1979) ("The California Supreme Court expressly held that contracts containing satisfaction clauses are nonetheless enforceable."); *see also Grimes v. New Century Mortgage Corp.*, 340 F.3d 1007, 1012 (9th Cir. 2003). Two types of satisfaction clauses exist in California. The first, governed by "an objective standard of reasonableness," governs satisfaction clauses "where commercial value or quality is in issue." *Larwin-S. Cal.*, 101 Cal. App. 3d at 639. The second, analyzed on a subjective standard, governs satisfaction clauses "involving fancy, taste, or judgment." *Weisz Trucking Co. v. Emil R. Wohl Constr.*, 13 Cal. App. 3d 256, 261 (1970).

Here, the clause of the easements requires an opinion that the "pipe line interferes with Grantor's *use* of or *operations* upon such premises," and makes no reference to any aesthetic aspect of the pipelines. Thus, it would appear that the satisfaction clause here is designed solely to protect the Grantor's ability to maximize the economic value of the property. *See Kadner v. Shields*, 20 Cal. App. 3d 251, 263 (1971) (noting that the subjective test is normally reserved for instances where "something more than financial impact appears to be involved"). Therefore, the objective standard applies. *See id.* ("In the absence of a specific expression in the instrument or a clear indication from the nature of the subject matter, the preference of the law is for the less arbitrary standard of the reasonable man.") (internal quotations marks and citation omitted).

The next question is whether C&C's conclusion that defendants' pipelines interfered with its use and operation of the premises was objectively reasonable as a matter of law. Contract law does not permit a party to unreasonably claim dissatisfaction when invoking a satisfaction clause. *Mattei,* 51 Cal.2d at 123; *Weisz Trucking*, 13 Cal. App. 3d at 261 (citing *Collins v. Vickter Manor, Inc.*, 47 Cal. 2d 875, 882–83 (1957)) (noting that "dissatisfaction cannot be claimed arbitrarily, unreasonably, or capriciously").

According to the declaration of C&C president Craig Carver, plaintiffs' opinion of interference was based on "[Diversified Project Services International, Inc.'s ("DPSI")] determination that the project would not be feasible if the pipeline remained in place." (Declaration of Craig Carver I (Doc. No. 124-4) ("Carver Decl."), ¶ 3.) Plaintiffs summarize the risks and obstacles DPSI determined that the pipelines would pose to the development of the

property as follows:

- Increased risk of pipeline explosions, environmental harm, and traffic accidents
- Contractors unwilling to work heavy equipment over shallow oil and gas pipelines
- Loss of developable acreage, with assets being moved into the Property out of the area of the pipelines
- Increased time needed to prepare and approve non-standard plans; and
- Ultimately, the inability to prepare any buildable plans that could keep the pipelines in place.

(*Id.* at ¶ 7.)

In response, defendants contend that DPSI's initial determinations were based on the wrong road design and that the development plans were changed in March 2015.[4] (Doc. No. 126 at 12–13.) The deposition of Luis Alberto Lopez, an engineer and the person most qualified for DPSI, is instructive on this issue. At his deposition taken March 2, 2017, Mr. Lopez testified that in March 2015, DPSI developed plans setting Merle Haggard Drive on the specific plan line, or "a designated street center line based on the City of Bakersfield and County of Kern planning documents." (Doc. No. 126-1 at 58.) The previous plans were set on a specific plan line about fifteen to twenty feet south of the section line. This is because, according to Mt. Lopez, "up until very late in the game" the engineers were still unable to determine which pipeline belonged to Chevron, Shell, or Alon. (*Id.* at 59.) DPSI was also instructed not to reach out directly to the oil companies themselves to determine the exact location of the pipelines. (*Id.*) Upon placing Merle Haggard Drive on the specific plan line, the road surface was moved away from the pipelines such that the pipelines were now generally under the sidewalk, curb, and gutter, save for the turn pockets. (*Id.* at 60.) When asked hypothetically about whether placement of the pipelines under the sidewalk or landscaping would eliminate any kind of interference, Mr. Lopez responded in the

---

[4] Defendants explain that this information was not available to them at the time of the July 6, 2015 hearing on plaintiffs' motion for preliminary injunction because they had not yet had the benefit of discovery. (Doc. No. 126 at 13.)

affirmative.  (*Id.* at 46–47.)  However, Lopez also testified that in his professional opinion the pipelines still interfered with C& C's development plans as of the 2014/2015 time period.  (Doc. No. 129-1 at 22–23.)

In order to confirm whether any claimed interference was eliminated by the March 2015 plans, defendants hired SPEC Services, Inc. ("SPEC Services"), an engineering firm, to prepare an exhibit demonstrating how far the road placement had been moved as between the two plan sheets.  (Doc. No. 126 at 17.)  SPEC Services plotted the engineering plans prepared by DPSI from May 2014 and March 2015 by using the Office of the Kern County Surveyor Map of Merle Haggard Drive "which denotes the section line and road centerline (or specific plan line) . . . ." (*Id.*)  The pipelines were identified using potholing data to determine their exact locations at various stations to match the same stations in DPSI's plans.  (*Id.* at 18.)  SPEC Services then compared these plans to the DPSI plans and found that the "difference between the section line and center line is greatest on the eastern edge of the Subject Property," at about thirty-five feet. (*Id.*)  SPEC Services determined that the difference between the two plans revealed a lack of any legitimate interference.  DPSI's conclusion that interference with the development was posed was based upon the fact that the pipelines were located under the street; however, when the pipelines were placed under the sidewalk or landscaping as denoted in the March 2015 plans and confirmed by SPEC Services, there was no apparent interference with development.  (*Id.* at 19.)  According to SPEC Services, based on these plans, both pipelines are in fact below the minimum three-foot depth design standards set forth by the Pipeline Hazardous Materials Safety Administration ("PHMSA"), a division of the United States Department of Transportation.  (*Id.* at 19.)

As the above discussion makes clear, there is a genuine dispute of material fact here: some evidence suggests that C&C's opinion of interference was reasonable, while other evidence suggests the opposite.  The court is not permitted to weigh competing evidence at this stage.  *See Liberty Lobby*, 477 U.S. at 249.  Resolution of the question of reasonableness is necessary to resolving plaintiffs' trespass claim:  if plaintiffs' opinion as to interference was unreasonable, then plaintiffs may not invoke the satisfaction clause and demand that defendants relocate their pipelines.  *See Weisz Trucking*, 13 Cal. App. 3d at 261.  In that event, the easements remained in

full force and effect, and defendants did not exceed the scope of the permission they were granted under those easements. Alternatively, if C&C's opinion regarding interference was reasonable, C&C properly exercised its rights under the satisfaction clauses by demanding that defendants relocate their pipelines. Failure to do so may have therefore amounted to trespass. Because the antecedent question of reasonableness cannot be resolved on summary judgment, plaintiffs' motion will be denied in this respect.

**C.     Breach of Contract**

Finally, plaintiffs move for summary judgment on their breach of contract claim. "The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse of performance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2001) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).

The parties' dispute centers on the issue of breach, with plaintiffs claiming that Shell and Alon breached the easements by refusing to relocate their pipelines following C&C's demand letter. However, for the same reasons the granting of summary judgment is precluded on plaintiffs' trespass claim, it is also precluded on plaintiffs' breach of contract claim. Plaintiffs' success on the merits of the breach of contract claim hinges on the reasonableness of its opinion that the pipelines interfered with its use of the property. If plaintiffs' invocation of the satisfaction clause was objectively unreasonable, they had no basis to demand that the pipelines be relocated. In that event, defendants did not breach the Easements by failing to relocate the pipelines. Only the trier of fact can resolve that issue in this case. Plaintiffs' motion for summary judgment on its breach of contract claim will therefore be denied as well.[5]

/////

/////

---

[5] No other motions in this action are now pending before the court. On December 20, 2017, the assigned magistrate judge issued an order denying plaintiff's motion to modify the scheduling order to reopen discovery and allow plaintiff to file a motion to compel seeking discovery of the benefits defendant Shell had received by use of the property prior to plaintiff's acquisition of it. (Doc. No. 142.)

**CONCLUSION**

For all of these reasons,

1. Plaintiffs' motion for partial summary judgment (Doc. No. 124) is denied; and
2. The parties are directed to contact Courtroom Deputy Renee Gaumnitz at (559) 499-5652, or RGaumnitz@caed.uscourts.gov, within ten days of service of this order regarding the re-scheduling of the Final Pretrial Conference and Jury Trial dates in this case.

IT IS SO ORDERED.

Dated: **June 14, 2018**

UNITED STATES DISTRICT JUDGE