UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C&C PROPERTIES, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> SHELL PIPELINE COMPANY, et al., <br><br> Defendants. | No. 1:14-cv-01889-DAD-BAK (HBK) <br><br> ORDER ON REMAND TO ADDRESS SUBJECT MATTER JURISDICTION <br><br> (Doc. Nos. 331) |

This matter is before the court on remand from the U.S. Court of Appeals for the Ninth Circuit. (Doc. No. 331.) Specifically, on August 2, 2021, the Ninth Circuit issued an order remanding this action to this court "for the limited purpose of having the district court determine whether there is complete diversity in this case." (*Id.* at 3.) Having reviewed the parties' supplemental briefing and the evidence submitted to the court on remand, for the reasons explained below, the court finds that complete diversity exists between the parties and that this court has subject matter jurisdiction over this action on that basis.

**BACKGROUND**

On June 14, 2019, after five years of litigation and a ten-day jury trial in this business tort action between plaintiffs C&C Properties, Inc.; JEC Panama, LLC; and Wings Way, LLC (collectively, "plaintiffs") and defendants Alon Bakersfield Property, Inc. ("ABPI") and Paramount Petroleum Corporation ("Paramount") (collectively, "the Alon defendants") and

defendant Shell Pipeline Company ("Shell"),[1] a jury returned a unanimous verdict in plaintiffs'

favor on all of their claims.[2]  (*See* Doc. Nos. 1, 227.)  Pursuant to the jury's verdict, the court

---

[1] The court's docket in this case erroneously reflects four other active defendants, however they were all terminated from this action long before trial.  Plaintiffs voluntarily dismissed defendant Eott Energy Operation Limited Partnership and defendant Plains All American GP, LLC on February 4, 2015.  (Doc. Nos. 16, 17.)  In their first amended complaint, plaintiffs added defendant Chevron Pipe Line Company ("Chevron"), who thereafter filed a motion to join defendant Chevron U.S.A. Inc. as a necessary party, or in the alternative, to dismiss plaintiffs' claims against Chevron because joinder would destroy diversity.  (Doc. No. 45.)  On June 10, 2015, the court granted Chevron's motion to dismiss, thereby terminating the Chevron defendants from this action.  (*See* Doc. No. 55.)  Accordingly, the court will direct the Clerk of the Court to correct the docket to reflect that these four defendants have all previously been terminated from this action.

[2] Plaintiffs' original, first amended, and operative second amended complaints all named the Alon defendants as a single defendant "Alon USA Paramount Petroleum Corporation" (Doc. No. 1, 32, 103), and during trial, that single defendant was referred to as "defendant Alon" for short.  (*See* Trial Tr. Day One, Doc. No. 233 at 4) (counsel stating their appearances as "on behalf of defendant Alon").  However, on the tenth and final day of trial, after the case was submitted to the jury for deliberation, the following exchange occurred between counsel and the court:

> [Plaintiffs' counsel] MR. VOGELE:  Your Honor, there was an issue raised yesterday regarding the correct identification of the defendants.  Obviously Shell is Shell.  We've got that.  But when the complaint was drafted and then the answer was filed, both the plaintiffs' understanding of the name of the defendants, defendant -- the Alon defendants and counsel for Alon at the time were unclear on exactly what the proper name was.  We would ask that the Court allow amendment pursuant to information we have available to us today that the proper defendant -- the proper Alon defendant is Alon Bakersfield Property, Inc. and Paramount Petroleum Corporation.  Alon Bakersfield property, Inc. is the title holder on the easement.  And Paramount Petroleum Corporation is the operator of that pipeline.  One is a subsidiary of another.
>
> THE COURT:  Any objection?
>
> [Defendant Alon's counsel] MR. MATTHIAS: Your Honor, we certainly would stipulate to Alon Bakersfield Property, Inc. as substitute for the named plaintiff [*sic*].  It is the owner of the pipeline and the holder of the easement.  And we think it is the appropriate party.  We do not believe that Paramount Petroleum Corporation is an appropriate party.
>
> THE COURT:  All right.  Plaintiffs' request for amendment is granted as requested.  If it becomes an issue, Paramount Petroleum Corporation can certainly address it in post-trial motion.

(Doc. No. 242 at 2023–24.)  On the docket, the court's minutes from the proceedings on that day, June 14, 2019, state: "Outside presence of the jury, Plaintiffs' request to amend named

entered judgment in favor of plaintiffs. (Doc. No. 229.) The parties filed several post-trial motions, which this court ruled upon on November 27, 2019. (Doc. No. 310.) On December 6, 2019, the Alon defendants and defendant Shell separately appealed the judgment and this court's order resolving their post-trial motions, specifically the court's denial of their renewed motions for judgment as a matter of law, motion for new trial, and motion to amend the judgment, as well as the court's award of attorney's fees to plaintiffs. (Doc. Nos. 311, 313.)

The court notes that not once during the seven years of litigation did either of the Alon defendants (defendant ABPI or defendant Paramount) contend that this court lacked subject matter jurisdiction over this action and, most importantly, instead made affirmative representations supporting the existence of diversity jurisdiction over them in this court.[3] It was only after the Ninth Circuit *sua sponte* ordered supplemental briefing on this jurisdictional issue, on the eve of oral argument on the appeal, that the Alon defendants asserted that this court lacked subject matter jurisdiction based on diversity of citizenship of the parties. *See* Supplemental Brief of Appellants ABPI and Paramount, *C&C Props., Inc. et al. v. Alon Bakersfield Prop., Inc. et al.*,

---

Defendant Alon USA Paramount Petroleum Corporation to Alon Bakersfield Property Inc. and Paramount Petroleum Corporation is Granted." (Doc. No. 222.) At that time, the court's docket was updated to reflect that change. However, it has now come to the court's attention that the docket was updated incorrectly, reflecting a single named defendant "Alon Bakersfield Property Inc. & Paramount Petroleum Corporation," rather than correctly listing the two entities as separate defendants: "Alon Bakersfield Property Inc." and "Paramount Petroleum Corporation." Accordingly, the court will direct the Clerk of the Court to correct the docket to list these two defendants separately.

[3] Of course, parties cannot confer subject matter jurisdiction upon a federal court by their actions or consent. *See, e.g.*, *Akno 101 Market Street St. Louis Missouri LLC v. Pourtaghi*, 43 F.4th 624, 627 (6th Cir. 2022). However, it is just as clear that that parties can admit to facts which lead to the legal conclusion that diversity jurisdiction exists and upon which the court is entitled to rely. *See Pittsburgh, C. & St. L.R. Co. v. Ramsey*, 89 U.S. 322, 327 (1874) ("Consent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission."); *Hospitality Mgmt. Inc. v. Preferred Contractors Ins. Co.*, No. 3:18-cv-00452-YY, 2022 WL 3755156, at *6, n.4 (D. Ore. Aug. 30, 2022) (assembling cases); *see also Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) ("This is not to say that a defect in jurisdiction can be avoided by waiver or stipulation to submit to federal jurisdiction. It cannot. But a judicial admission of a fact is not the same thing as a waiver or a stipulation."). This is arguably especially the case after a jury trial has been conducted and the district court has entered judgment. *Hospitality Mgmt. Inc.*, 2022 WL 3755156, at *6, n.4.

No. 19-17463, Doc. No. 67 at 6–7 (9th Cir. July 14, 2021). Specifically, in their supplemental briefing to the Ninth Circuit, defendants ABPI and Paramount asserted for the first time that complete diversity of citizenship between the parties was lacking because defendants ABPI and Paramount maintained their principal places of business in California during the relevant time and are thus California citizens for the purposes of this action, as are plaintiffs. *Id.* Notably, the recent assertions of Californian citizenship by defendants ABPI and Paramount's are inconsistent with their admissions of being citizens of both Texas (principal place of business) and Delaware (state of incorporation) in their answer to plaintiffs' complaint. (*See* Doc. No. 14 at ¶ 5) ("Alon admits that it is a Delaware corporation with a principal place of business in Texas. Paramount Petroleum admits it is a Delaware corporation with a principal place of business in Texas.").[4] In their supplemental briefing submitted to the Ninth Circuit, the Alon defendants asserted that their admissions of citizenship in this regard were incorrect and that a remand to this court to conduct factfinding as to their true citizenship was therefore required. *See* Supplemental Brief of Appellants ABPI and Paramount, *C&C Props., Inc. et al. v. Alon Bakersfield Prop., Inc. et al.*, No. 19-17463, Doc. No. 67 at 7–8 (9th Cir. July 14, 2021).

In response, on August 2, 2019, the Ninth Circuit remanded this action "for the limited purpose of having the district court determine whether there is complete diversity in this case," "[b]ecause the record is insufficient to determine whether the citizenship of each plaintiff is diverse from the citizenship of each defendant, and factual disputes exist." (Doc. No. 331.)

Following the Ninth Circuit's remand and pursuant to this court's August 6, 2021 order setting a briefing schedule (Doc. No. 334), plaintiffs filed their brief addressing the question of diversity jurisdiction on August 30, 2021 (Doc. No. 335), accompanied by supporting

---

[4] The parties had stipulated that "all denials, responses, and affirmative defenses contained in the answer filed by the Original Defendants to the Complaint shall be deemed responsive to the [First Amended Complaint]." (Doc. No. 29 at 3.) In their briefing to this court on remand, plaintiffs assert, and defendants do not dispute, that "[t]he parties reached a similar agreement regarding [p]laintiffs' second amended complaint" but that the "agreement was not memorialized on the record." (Doc. No. 345 at 11.) Indeed, no other answer was filed in response to either of the amended complaints. Accordingly, the Alon defendants' jurisdictional admissions apply as to the allegations of plaintiffs' operative second amended complaint.

declarations and a request for judicial notice (Doc. No. 335-4).[5]  Defendant Shell filed a brief in response on September 21, 2021.[6]  (Doc. No. 336.)  On the same day, defendants ABPI and Paramount filed a joint response brief, along with supporting declarations.  (Doc. No. 337.)

---

[5] Plaintiffs request that the court take judicial notice of the Alon defendants' filings with the California Secretary of State, Delaware Secretary of State, and the United States Securities and Exchange Commission ("SEC"), as well as defendants' notice of posting a supersedeas bond in this action.  (Doc. No. 335-4.)  Rule 201 of the Federal Rules of Evidence allows a court to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute," because it (1) "is generally known within the trial court's territorial jurisdiction"; or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(a)–(b).  Judicial notice of the records from the California and Delaware Secretaries of State, as well as records from the SEC, is appropriate as these are all matters of public record.  *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (taking judicial notice of facts in a business entity profile on the California Secretary of State's website); *see also Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 3:08-cv-01166-WVG, 2009 WL 6597891 at *1 (S.D. Cal. 2009) (taking judicial notice of public records and government documents available from reliable sources on the Internet such as websites maintained by governmental agencies).  The court also grants judicial notice of the notice of posting of supersedeas bond, which is a public record, though not for the truth or accuracy of the statements therein.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) ("[W]hen resolving disputes, courts may not take judicial notice of court documents provided for the truth of the facts asserted therein when such documents contain facts essential to support a contention in a cause then before it.") (quotation marks and citation omitted).

[6] Defendant Shell is a Delaware limited partnership.  (Doc. No. 13 at 3.)  The citizenship unincorporated entities such as limited partnerships are dependent upon the citizenship of all of its members, or partners in a limited partnership.  *See Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) (holding that "[s]o long as such an entity is unincorporated, we apply our 'oft-repeated rule' that it possesses the citizenship of all its members.").  Plaintiffs' operative complaint alleges that "[a]fter a reasonable search of publicly available information, [p]laintiffs are informed and believe and thereon allege that Shell Pipeline's partners are not citizens of California."  (Doc. No. 103 at ¶ 4.)  Defendant Shell did not respond to plaintiffs' allegation that its partners were not citizens of California in its answer (Doc. No. 13 at ¶ 4) and does not dispute that complete diversity exists between it and plaintiffs in its supplemental briefing.  (Doc. No. 336 at 4.)  Based on the record before it, the court concludes that defendant Shell is not a citizen of California and diversity exists between plaintiffs and Shell.  As such, this order focuses solely on the citizenship of plaintiffs, on the one hand, and the Alon defendants on the other hand.  The court notes that defendant Shell's supplemental brief primarily addresses what should take place if this court were to find the Alon defendants to be nondiverse, specifically whether the court should revisit its order holding defendant Shell and the Alon defendants jointly liable for plaintiffs' attorneys' fees.  (*See* Doc. No. 336.)  The court need not address defendant Shell's arguments in this regard, however, because the court concludes that complete diversity exists.

1  Plaintiffs filed a reply thereto and evidentiary objections on September 28, 2021.  (Doc. Nos. 338,
2  339.)
3        On October 26, 2021, after a review of the parties' briefs and supporting evidence, this
4  court issued an order authorizing limited jurisdictional discovery and requiring the submission of
5  further supplemental briefing after that discovery was completed.  (Doc. No. 341.)  On February
6  25, 2022, plaintiffs filed their supplemental brief, along with supporting deposition transcripts and
7  responses to discovery requests.  (Doc. No. 345.)  The Alon defendants filed their response brief
8  on May 14, 2022 (Doc. No. 346), and plaintiffs filed their reply thereto on March 18, 2022.  (Doc.
9  No. 347.)

## LEGAL STANDARD

It is well settled that a corporation is a citizen of "(1) the state where its principal place of business is located, and (2) the state in which it is incorporated." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (citing 28 U.S.C. § 1332(c)(1)); *see also 3123 SMB LLC v. Horn*, 880 F.3d 461, 462-63 (9th Cir. 2018).  A corporation's "principal place of business" refers to the "place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010); *see also 3123 SMB LLC*, 880 F.3d at 463 ("[a corporation's principal place of business often proves elusive.")  This is commonly referred to as the "nerve center" of a corporation, and it is "normally the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion." *Hertz Corp.*, 559 U.S. at 93.

As the Supreme Court explained in *Hertz*:

> A corporation's "nerve center," usually its main headquarters, is a single place.  The public often (though not always) considers it the corporation's main place of business.  And it is a place within a State.  By contrast, the application of a more general business activities test has led some courts . . . to look, not at a particular place within a State, but incorrectly at the State itself, measuring the total amount of business activities that the corporation conducts there and determining whether they are "significantly larger" than in the next-ranking State.

*Id.* The Supreme Court noted that the "nerve center" test may "produce results that seem to cut against the basic rationale" of the diversity jurisdiction statute, explaining that, for example:

> [I]f the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the "principal place of business" is New York. One could argue that members of the public in New Jersey would be less likely to be prejudiced against the corporation than persons in New York—yet the corporation will still be entitled to remove a New Jersey state case to federal court.

*Id.* at 96. The Court reiterated that "[t]he burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it" and that "[w]hen challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Id.* at 96–97.

As to a corporation that is a holding company, the Ninth Circuit has explained that a holding company "is not 'normal.' It engages in little activity, so there is little to direct, control, or coordinate. Its purpose—holding interest in other companies—is passive." *3123 SMB LLC*, 880 F.3d at 465 (internal citation omitted). Because a holding company "does little other than passively own other companies and supervise their management," the Ninth Circuit has held that the principal place of business for such a company is where the company's board meetings are held, "unless evidence shows that the corporation is directed from elsewhere." *Id.* at 463, 468.

Finally, it is important to keep in mind that "diversity jurisdiction 'depends upon the state of things at the time of the action brought[.]" *Id.* at 467 (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004)).

## ANALYSIS

Whether there is complete diversity of citizenship in this case turns on whether defendants ABPI and Paramount were citizens of California (as were plaintiffs) in November 2014, when plaintiffs filed their original complaint initiating this action. (Doc. No. 1); *see Grupo Dataflux*,

/////
/////
/////
/////

541 U.S. at 571 (whether diversity of citizenship exists is determined at the time the suit is filed).[7] Below, the court will address the citizenship of defendants ABPI and Paramount separately, and for the reasons explained below, concludes that this court has subject matter jurisdiction over this action because defendants ABPI and Paramount were not citizens of California when this action was brought.

**A.     Citizenship of Defendant ABPI**

In their supplemental brief, plaintiffs argue that in November 2014, defendant ABPI was a Delaware corporation with its principal place of business located in Dallas, Texas. (Doc. No. 345 at 6.) According to plaintiffs, ABPI's "Dallas-based board of directors . . . made the significant decisions affecting the corporation, specifically with respect to mergers, guaranteeing the debt of ABPI's parent corporation, and to become a Participating Employer under the Paramount Pension Plan and the Alon USA Pension Restoration Plan." (*Id.* at 22.) To support their contention that APBI's principal place of business was in Texas in 2014, plaintiffs point to the following

---

[7] No new complaint was filed when defendants ABPI and Paramount were substituted for defendant "Alon USA Paramount Petroleum Corporation" on the tenth and final day of trial. (Doc. Nos. 222; 242 at 2023–24.) A substituted party steps into the same position of the original party and is merely "a continuance of the original action." *McKnight v. Craig Adm'r*, 6 Cranch 183, 187 (1810). "Alon USA Paramount Petroleum Corporation" is not an entity that exists. The substitution of defendants neither changed the nature of the claims asserted nor altered the substance of the action, which the Alon defendants had jointly litigated through counsel since the commencement of this action (*see* Doc. No. 14 at ¶ 5 (differentiating between Alon and Paramount as separate corporations); *see also id.* at 14, identifying the Alon defendants as "Alon USA Energy, Inc. and Paramount Petroleum Corporation erroneously sued as Alon USA Paramount Petroleum Corporation")). In light of these facts, the court finds it appropriate to assess the citizenship of defendants ABPI and Paramount in 2014, when the complaint was first filed and when the Alon defendants began to litigate this action, rather than in 2019 when the substitution of the Alon defendants for the non-existent entity "Alon USA Paramount Petroleum Corporation" occurred. *See Grupo Dataflux*, 541 U.S. at 571 (the time-of-filing rule "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing"). Further, although plaintiffs initially discussed both 2014 and 2019 as relevant time periods in their first supplemental brief (*see* Doc. No. 335 at 11–19), both plaintiffs and the Alon defendants in their subsequent briefing agree that 2014 is the relevant time in determining whether diversity jurisdiction exists. (Doc. Nos. 337 at 15 (arguing that events in 2019 "have no bearing on the location from which their businesses were controlled and directed in 2014); 338 at 5 (arguing that diversity should be determined based on the November 2014 time period); 345 at 6 (identifying the issue as determining the principal place of business for the Alon defendants in November 2014); 346 at 12 ("The parties agree that the 'date that matters is the date when the complaint was filed' in 2014").)

evidence:  (1) ABPI's Secretary of State filings in California and Delaware which list ABPI's principal place of business as being in Dallas, Texas; (2) the location of nearly all of its board meetings in Dallas, Texas (with occasional board meetings held in Israel); (3) the office locations of ABPI's board of directors and senior executives; (4) various corporate documents; and (5) the depositions of both current and former ABPI and Paramount executives.  (*Id.* at 7, 13–16, 18–22.) Plaintiffs also emphasize that none of the defendants contested jurisdiction in their answers to the complaint,[8] in their pretrial statement or objections to the pretrial order, or upon amendment of the named defendants at the end of trial.  (*Id.* at 10–12.)  To counter the Alon defendants' position that ABPI's principal place of business was and has always been in California, plaintiffs highlight that defendants' notice of posting a supersedeas bond in this action was notarized in Tennessee (where the current parent corporation of both ABPI and Paramount has its principal place of business) and was executed by Fred Green, the Chief Operating Officer of both ABPI and Paramount, and Lori Caltagirone, the Vice President of Risk Management of both ABPI and Paramount.  (*Id.* at 12.)  Plaintiffs contend that the evidence presented to this court on remand demonstrates that ABPI's principal place of business under the *Hertz* nerve center test was in Dallas, Texas during the relevant time.  (*Id.* at 33–35.)

In their response brief, the Alon defendants argue that plaintiffs have failed to meet their burden of proving that ABPI's principal place of business was in any place other than California. (Doc. No. 346 at 7.)  In particular, the Alon defendants take issue with plaintiffs' arguments and evidence with regard to the location of ABPI's board of directors and executive officers.  (*Id.* at 7–10, 15.)  Defendant ABPI contends that the location of its board meetings is not dispositive because the *Hertz* nerve center test "reflects that a corporation's board is not its 'nerve center' . . . because a corporate board does not exercise operational control over the corporation's activities," and because ABPI's board met not only in Texas but also in Israel once a year.  (*Id.* at 7–8, 12.) Defendant ABPI emphasizes that the citizenship of a subsidiary depends on the "control and coordination of the subsidiary's own business operations" although "it is to be expected that a

---

[8]  As noted above, the parties reached an agreement that defendants' original answer would be responsive to each of the subsequently amended complaints.  (*See* Doc. Nos. 29 at 3; 345 at 11.)

parent corporation will exercise some degree of ultimate authority over its subsidiary[.]"  (*Id.* at 9) (citing out-of-circuit district court decisions).  The Alon defendants describe ABPI's activities in 2014 as "consist[ing] of maintaining its major asset, the out-of-service Bakersfield Refinery, and attempting to eke out some revenue from it by selling its storage capacity and using it to blend fuel products that were then offered for sale."  (*Id.* at 10.)  According to defendants, plaintiffs' evidence does not show that those activities were directed, controlled, or coordinated by ABPI's board of directors in Texas, who, according to the Alon defendants, were merely "acting as ordinary boards, not managers of their corporations' business activities" and whose meetings only lasted between 15 minutes and three hours as "small parts of a much broader agenda" in "joint or seriatim meetings of the boards of all of [the] associated entities and subsidiaries" of Alon USA, the parent company of ABPI and Paramount.  (*Id.* at 11.)

In reply, plaintiffs argue that the Alon defendants are erroneously applying the "place of operations" test in "focusing on local management's efforts to 'eke out' some business activity in California, and ignoring senior management's sweeping changes to the core of the Alon defendants' business in Texas."  (Doc. No. 347 at 4–5.)  Plaintiffs contend that the actions taken by ABPI's board constituted actual direction, control, and coordination of ABPI's activities, not merely formulaic ratification of such activities.  (*Id.* at 6–7.)  Plaintiffs argue that ABPI "is more properly viewed as a holding company than as an operating entity" because ABPI "appears to have had no employees" and "its only apparent function was to hold the refinery asset."  (*Id.* at 9.)  According to plaintiffs, ABPI's domicile is therefore "where it held its board meetings:  Dallas" because the Ninth Circuit has held that the principal place of business for a corporation with few activities is the location of its board meetings.  (*Id.*) (citing *3123 SMB LLC*, 880 F.3d at 468).

The evidence submitted by plaintiffs, particularly the declaration and deposition testimony of Jimmy Crosby, the former Vice President of Refining at Alon USA who transferred to serve in the same position at Paramount after it was acquired by Alon USA in 2006, and the declaration of Steve Farkas, General Counsel of Paramount from 1995 to 2010, supports a finding that ABPI is a holding company.  (*See* Doc. Nos. 337-1, 337-3, 345-1).  In his declaration, Mr. Crosby explained that ABPI acquired the Bakersfield refinery in 2010 which was subsequently "placed

10

*under the direction of Paramount Petroleum.*"  (Doc. No. 337-3 at ¶ 8) (emphasis added).  Indeed, Steve Farkas clarified in his declaration that it was actually defendant Paramount who initially acquired the Bakersfield refinery in 2010 "and then assigned the assets to Alon Bakersfield Property, Inc."  (Doc. No. 337-1 at ¶ 6.)  This appears from the evidence to be a pattern of behavior, as Paramount also acquired another refinery, described as the "Big West refinery," in 2010 before transferring ownership to ABPI.  (Doc. No. 345-1 at 222, 397–401.)  In his deposition testimony Mr. Farkas explained it even more plainly:  "when [the Big West refinery] was purchased, it was an asset of Paramount.  And then, at some point, ABPI was created to put the assets of Bakersfield into that entity[.]"  (Doc. No. 345-1 at 339:6–9.)  Similarly, Mr. Crosby stated further that "[b]oth the operational as well as the business facets of the Bakersfield Facility and the Paramount Refinery were always run out of Paramount by the onsite management team [in California]."  (Doc. No. 337-3 at ¶ 11.)  Mr. Farkas also explained that "[a]fter the acquisition, operations at the Bakersfield Facility were primarily managed by the personnel located at the Paramount Refinery."  (Doc. No. 337-1 at ¶ 6.)  Mr. Crosby confirmed at his deposition that the Bakersfield refinery, the very asset that ABPI was formed to hold, was "managed out of the Paramount refinery," that ABPI reported to the management team at Paramount, and that Paramount's General Counsel and Paramount's Vice President of Human Resources and Community Relations handled all legal, human resources, and public relations matters for both Paramount and ABPI.  (*See* Doc. No. 345-1 at 343:18–344:10.)

   The evidence now before the court establishes that Paramount acquired the Bakersfield refinery before assigning it to ABPI, a fellow subsidiary of Alon USA, to hold as ABPI's major asset.  However, the evidence discussed above also shows that the day-to-day operations of the refinery were managed by Paramount in California.  The court concludes that ABPI is therefore a holding company that itself "engages in little activity" because the refineries held by ABPI are in actuality operated by defendant Paramount.  *See 3123 SMB LLC*, 880 F.3d at 465; (Doc. Nos. 337-1, 337-3, 345-1).

   If *3123 SMB LLC*'s reasoning applies here as plaintiffs contend, then ABPI had its principal place of business in Texas because it had no employees of its own and left the operation

of its assets to Paramount, which had its principal place of business in Texas. *See 3123 SMB LLC*, 880 F.3d at 465, 468 (because a holding company's purpose is to "hold[ ] interest in other companies" and thus "there is little to direct, control, or coordinate," a "*recently-formed* holding company's principal place of business is the place where it has board meetings, regardless of whether such meetings have already occurred, unless evidence shows that the corporation is directed from elsewhere") (emphasis added). However, the facts of *3123 SMB LLC* are distinguishable from those presented here because the holding company in that case was only 25 days old and "[i]n that brief time, the only business [it] conducted was to incorporate." *3123 SMB LLC*, 880 F.3d at 467–68. Given the difficulty in determining the place of that holding company's nerve center, the Ninth Circuit in *3123 SMB LLC* concluded that it could look to the location of its board meetings even if such meetings have not yet occurred. *Id.* at 468. Here, however, as evidenced by the declarations and deposition testimony of executives of both ABPI and Paramount, ABPI was established years before the relevant time (November 2014) and had conducted business for several years, including receiving ownership of the Bakersfield refinery and the Big West refinery, guaranteeing a substantial loan for Alon USA, and stopping the crude oil refining operations at the refineries. (Doc. Nos. 337-1 at ¶ 6; 337-2 at ¶¶ 9, 12; 337-3 at ¶ 8; 345-1 at 222, 285–86, 397–401.) Because ABPI conducted substantial business prior to and during 2014, the location of ABPI's board meetings in Texas is not dispositive in determining its principal place of business.

Nonetheless, under the *Hertz* nerve center analysis, the court concludes that ABPI's principal place of business was in Texas, where its board of directors and executive officers directed ABPI's activities. Although ABPI's visible activities were carried out in California, such day-to-day operations are merely akin to "the bulk of a company's business activities visible to the public," a factor that is not dispositive in determining a corporation's principal place of business. *Hertz*, 559 U.S. at 96 (noting that "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York."). The evidence presented in this case supports plaintiffs' contention that, in light of the lack of actual ABPI employees in

California, ABPI's board and executive officers directed ABPI's activities from Dallas, Texas by making there the decision to hold the Bakersfield refinery as an ABPI asset and to cease the crude oil refining operations that had previously consisted of the bulk of the refinery's operations. (Doc. Nos. 337-2 at ¶¶ 9, 12; 345-1 at 215–16, 344–45.) Tellingly in this regard, Paul Eisman, who served concurrently as the President of Alon USA, ABPI, and Paramount, testified at his deposition that he believed the decisions by Paramount to purchase the Big West refinery and subsequently to transfer ownership of that refinery to ABPI, were made by Alon USA's board of directors (membership of which overlapped significantly with ABPI's board) which operated out of Dallas, Texas. (Doc. No. 345-1 at 222, 228–29.) Similarly, the evidence before the court establishes that the decision to have ABPI guarantee a loan for Alon USA did not involve any officers in California but was rather a decision directed by ABPI's board of directors in Dallas, Texas. (*Id.* at 285–86.) It is the case that Moshen Ahmadi, the General Manager of Planning, Economics, and Logistics for Paramount, was purportedly "participating in the decision making process in how to run and operate the closed Bakersfield Facility" held by ABPI. (Doc. No. 337-2 at ¶ 11.) Notably, however, Mr. Ahmadi was not a corporate officer of ABPI (or Paramount) and appeared only to manage the day-to-day operations of ABPI, rather than directing and controlling ABPI's decision-making as contemplated by the *Hertz* nerve center test. (*See id.* at ¶ 13) (describing those operations as including the renting of storage space at the Bakersfield refinery and fulfilling Paramount's active contracts). Indeed, the evidence submitted here establishes that the major direction and coordination of ABPI's activities, including holding ownership of refineries and shutting down crude oil refining at those refineries, were decisions made solely by ABPI's board of directors in Texas, and the resulting public-facing activities arising from those decisions consisted of the day-to-day operations conducted by California employees, including Mr. Ahmadi. Under the *Hertz* nerve center test, it is the direction of ABPI's major decisions by the board of directors in Dallas, Texas and not the public-facing activities in California, that determines ABPI's principal place of business. *Hertz*, 559 U.S. at 96.

For these reasons, the court finds that at the time this action was brought, defendant ABPI's principal place of business was in Dallas, Texas.

**B.      Citizenship of Defendant Paramount**

As with their arguments regarding ABPI's citizenship, the parties' supplemental briefing present very different narratives based on substantively the same facts in a bid to establish the citizenship of defendant Paramount. Plaintiffs argue that when their complaint was filed in 2014, ABPI and Paramount were both in the midst of "sweeping changes to the core of the Alon defendants' business" directed by their boards of directors (membership of which nearly completely overlapped) located in Texas. (Doc. No. 347 at 5.) In contrast, the Alon defendants argue that ABPI and Paramount operated functionally independently of their boards of directors, making all major decisions regarding the corporations' activities in California such that the boards of directors merely ratified the decisions made by officers and managers located in California. (Doc. No. 346 at 7.) The Alon defendants contend that ABPI's California managers "were responsible for the[] corporation[']s strategy and initiatives," used a bottom-up approach to develop their budget prior to presenting it to senior management and to the board, and "took the initiative for the major transactions" by "develop[ing] the process and the sales documents" for board approval. (*Id.* at 13–14.) Both plaintiffs and defendants advance many of the same arguments as to the origin, control, and direction of Paramount's activities as they have with respect to ABPI's activities, while drawing little distinction between the two defendants. (Doc. Nos. 346, 347.) The court will not repeat those arguments, which have already been summarized above.

In short, the evidence submitted by the parties does establish that many of Paramount's activities were conducted in California. According to the declaration of its General Counsel, Paramount operated its own legal, human resources, information technology, accounting, and payroll departments out of the Paramount refinery in California both prior to and after Alon USA's acquisition of defendant Paramount. (Doc. No. 337-1 at ¶¶ 4–5.) Paramount's California management team included a Vice President of Refining, Vice President of Crude Supply and Trading, and Vice President of Human Resources, as well as the following non-officers: a General Manager, a Maintenance Manager, and a West Coast Controller. (Doc. No. 337-3 at ¶ 9.) When Mr. Crosby transferred from Alon USA in Texas to Paramount in 2006 to serve as its new

1  Vice President of Refining, he moved from Texas to work in California through his tenure at
2  Paramount. (*Id.* at ¶ 3.) However, Paramount's other executives and officers, including its
3  President, Chief Executive Officer, Chief Financial Officer, Secretary, Vice President of Supply,
4  another Vice President of Refining, and Vice President of Mergers and Acquisitions, all worked
5  out of Dallas, Texas. (Doc. No. 345-1 at 496.) Paramount's California employees did work on
6  developing budgets, preparing business plans for operations to generate revenue after the
7  shutdown of the crude oil refining operations, engaging in contract negotiations "regarding the
8  purchasing, blending, and selling of fuel products," and managed such day-to-day operations as
9  "maintaining responsibility for accounting, payroll, HR, environmental and legal issues." (Doc.
10 Nos. 337-1 at ¶¶ 7–9; 337-3 at ¶ 10.) However, those proposed budgets and business plans were
11 subsequently presented to officers and directors in Dallas, Texas for their review and approval.
12 (Doc. No. 345-1 at 208–12, 247, 355–57.)
13      As discussed above in addressing ABPI's citizenship, the location of a corporation's day-
14 to-day operations in California alone does not establish that corporation's principal place of
15 business as being in California under the nerve center test. *Hertz*, 559 U.S. at 96. Thus, that
16 Paramount's day-to-day operations took place in California does not end the court's inquiry.
17 Activities such as the California management team's contract negotiations for the purchase and
18 sale of fuel products without first requiring approval from officers and directors in Dallas (*see*
19 Doc. No. 345-1 at 363–64), demonstrate that Paramount operated in California, but certainly does
20 not establish that Paramount's activities were directed from California. Rather, the evidence
21 presented here demonstrates that the majority of Paramount's corporate decision-making
22 originated in Dallas from its highest-level executives. Paramount's President, CEO, Chief
23 Financial Officer, Vice President, and board of directors, all of who worked from Texas, directed
24 the major activities of Paramount, including but not limited to: (1) the purchase of the Big West
25 refinery; (2) the purchase of the Bakersfield refinery; (3) the transfer of both the Big West and
26 Bakersfield refineries to ABPI's holdings; (4) the decision to shut down crude oil refining
27 operations in these refineries; and (5) the merging of the Huntington E-P Pipeline Corporation.
28 (Doc. No. 345-1 at 285–88, 344–48, 358–62.) Paramount's California employees and officers

were not responsible for these major corporate decisions, and at times appeared not to even know where those decisions originated from, but merely were aware that the decisions had been made. *(See id.)* In a similar set of facts and circumstances, another district court found that that the evidence established that a corporation was domiciled in New York because that was where the "lion's share of [its] corporate decisionmaking [was] clearly made" and where its "highest-level executives [including the CEO, Chief Compliance Officer, Chief Legal Officer, and Vice President of Acquisitions] do their work." *Benchmark Invs., Inc. v. PAVmed Inc.*, No. 1:20-cv-10888-VSB, 2021 WL 5967918, at *1, 3–4 (S.D.N.Y. Dec. 16, 2021). The court concluded that the corporation's principal place of business was in New York even though the corporation was "organized under Arkansas law with a stated principal place of business in Georgia," referred to its Georgia facilities as its headquarters, and operated its staff meetings as well as all finance, accounting, supervisory and frontline compliance activities out of its Georgia headquarters. *Id.* This court finds the decision in *Benchmark Investments, Inc.* to be instructive and persuasive here.

      As is the case with ABPI, the evidence presented to this court is sufficient to establish that Paramount's Dallas-based officers and directors controlled the direction of the company's activities, leaving merely the logistics of the day-to-day operations to its California managers. The evidence also establishes that Paramount's "highest-level executives [did] their work" in Dallas, "and [defendants'] materials filed in opposition do not contradict that evidence" but instead only show that Paramount's day-to-day operations were managed by its California managers. *Benchmark Invs., Inc.*, 2021 WL 5967918 at *4. Defendants' contentions are misplaced because their showing is simply insufficient to counter plaintiffs' evidence that those activities were directed by Paramount's officers and board of directors in Dallas, Texas. Instructive in this regard is the decision in *Chang v. Biosuccess Biotech, Co.*, where the district court held that a "focus on the outward-facing aspects of [a corporation's] business operations" is insufficient to support a finding that the principal place of business is in the state in which "its day-to-day operations and public interface occur." *Chang v. Biosuccess Biotech, Co.*, No. 5:14-cv-00425-LHK, 2014 WL 1494340, at *2–3 (N.D. Cal. Apr. 16, 2014). Rather, the principal place of business for a corporation is the state where "officers direct the company's high-level

decisions from," even if it differs from the state its day-to-day operations occur in. *Id.* Here, as the plaintiffs did in *Chang*, defendants miss the mark in "focus[ing] on the outward-facing aspects of [Paramount's] business operations" in contending that Paramount's principal place of business in is in California. That focus is misplaced and does not negate the weight of the evidence establishing that Paramount's executive officers directed its major corporate activities from Texas. *See id.*

The court finds that plaintiffs have carried their burden of establishing that Paramount's principal place of business is in Texas, where Paramount's officers and board of directors "direct, control, and coordinate" Paramount's activities. *Hertz*, 559 U.S. at 93.

## CONCLUSION

For the foregoing reasons, the court finds that the evidence before it establishes that both ABPI's and Paramount's principal place of business is in Dallas, Texas and that, as a result, defendants ABPI and Paramount are citizens of Texas. Because defendant Shell is not a citizen of California and plaintiffs are citizens of California, the court finds that complete diversity exists between the parties and that this court has subject matter jurisdiction over this action on that basis.

The court also directs the Clerk of Court to make the following corrections to the docket:

1. Reflect that the following four defendants have been terminated from this action:
   a. Eott Energy Operation Limited Partnership;
   b. Plains All American GP, LLC;
   c. Chevron Pipe Line Company; and
   d. Chevron U.S.A. Inc.;
2. List defendants Alon Bakersfield Property Inc. and Paramount Petroleum Corporation as two separate defendants; and

/////
/////
/////
/////

17

3. Reassign this case to U.S. District Judge Ana I. deAlba for all further proceedings before the district court. The parties are advised that all future filings in this case in the district court shall bear the new case number of 1:14-cv-01889-ADA.

IT IS SO ORDERED.

Dated: **September 2, 2022**  /s/ Dale A. Drozd

UNITED STATES DISTRICT JUDGE