IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C&C PROPERTIES, INC., *et al.*, | § § § |
| Plaintiffs, | § § |
| v. | §   CIVIL ACTION NO. 1:14-cv-1889-LHR-CDB |
| SHELL PIPELINE COMPANY, *et al.*, | § § |
| Defendants. | § § § § |

**MEMORANDUM AND ORDER**

    C&C Properties, Inc. purchased land for commercial development, without knowing that Shell Pipeline Company, Alon Bakersfield Property, Inc., and Paramount Petroleum Corporation had oil and gas pipelines underneath the land.  The pipelines prevented C&C from developing the land as intended for over two years, until the defendants moved the pipelines.  C&C sued, alleging that the defendants' pipelines trespassed on C&C's land and breached the defendants' easement agreements.  A jury awarded C&C damages measured by the benefits the defendants had obtained from the trespassing pipelines.  The Ninth Circuit determined on appeal that the jury had impermissibly awarded damages for a period before Shell had been on notice of its trespass, and that the award against Alon was methodologically flawed.  On remand, the parties disagree about whether the mandate can be implemented without a new trial, and if so, how the damages awards should be revised.

    The court holds that a new trial is not required, and that the mandate can be implemented by striking the award against Alon, which the Ninth Circuit held was "deeply flawed," and reducing the award against Shell under remittitur.  The reasons are set out below.

I.   **Background**

   A.   **The Easements and Pipelines**

Shell Pipeline Company and Alon Bakersfield Property, Inc. owned easements and underground oil and gas pipelines on a parcel of land in Bakersfield, California. The easements were unrecorded. In October 2013, the plaintiffs, C&C Properties, Inc., JEC Panama, LLC, and Wings Way, LLC, purchased the property to develop an office complex, without knowledge of the easements or the pipelines. C&C did not discover the pipelines until April 2014. (Docket Entry No. 241 at 1890). On June 19, 2014, C&C sent letters to Shell and Alon demanding that they remove or relocate the pipelines within 60 days. (Docket Entry Nos. 164-1, 164-2). C&C then learned of the unrecorded easements and sent a second set of demand letters, dated August 5, 2014. (Docket Entry Nos. 164-5, 164-6). The second set of letters also demanded removal or relocation of the pipelines within 60 days—or no later than October 4, 2014. The defendants did not relocate the pipelines until December 2015.

   B.   **The Trial**

In November 2014, C&C sued Shell and Alon for trespass and, alternatively, for breach of the easement agreements. (Docket Entry No. 1). C&C sought as damages its economic losses from the date of purchase (October 2013) to the date that the defendants relocated the trespassing pipelines (December 2015). Alternatively, C&C sought damages in the amount of benefits the defendants had obtained by using the trespassing pipelines during the same period. After a ten-day trial, a jury found for C&C on the trespass claim and awarded C&C $33,230,768 based on the benefits Shell had obtained from the trespass, and $6,058,834 based on the benefits Alon had obtained from the trespass. (Docket Entry No. 227 at 3).

The defendants moved for judgment as a matter of law, for a new trial, and to alter or amend the judgment. (Docket Entry Nos. 250, 257, 258). Alon argued, in relevant part, that no evidence showed that Alon had actually obtained $6,058,834 in benefits from the trespassing pipeline. According to Alon, the damages award should be reduced to $204,000, the "transmission costs" that Alon had avoided by using the trespassing pipeline instead of an alternative, more expensive pipeline. (Docket Entry No. 310 at 7). Shell argued, in its motion to amend the judgment and for a new trial, that the $33,230,768 award should be eliminated because the "benefits obtained" measure of damages was unavailable as a matter of law. (Docket Entry No. 258 at 10–12). Alternatively, Shell argued that a new trial should be granted because the award was legally excessive. (*Id.* at 12–18).

**C.    The Appeal**

The district court denied the defendants' post-trial motions, (Docket Entry No. 310), and the defendants appealed. The Ninth Circuit vacated the denial of Shell's motions, holding that "the district court erred when it allowed C&C to seek trespass damages retroactive to the date C&C acquired title." (Docket Entry No. 364 at 10). The court continued:

> The record reflects that between June and August 2014, Plaintiffs' attorneys sent letters to Shell and Alon, informing them of C&C's interest and demanding removal and relocation of the pipelines. In C&C's August 5, 2014 letters, C&C demanded removal and relocation within 60 days. Therefore, on remand, the court should revise the judgment to reflect that liability accrued no earlier than October 4, 2014, which is 60 days from the August 5, 2014 demand.

(*Id.* at 10).

The Ninth Circuit also held that the district judge erred in denying Alon's motion to modify the judgment because "the method of calculating Alon's benefits obtained was deeply flawed. . . . C&C failed to advance a method that would reasonably approximate the amount of wrongful gain caused by Alon's trespass." (*Id.* at 10–11). The court stated:

3

> We need not decide what method *would* satisfy that requirement, because the method C&C used for Alon was clearly improper. In the absence of a sensible prima facie damages case, Alon was not required to provide an alternative methodology.

(*Id.* at 11).

### D. The Arguments on Remand

On remand, the parties filed briefs on how the Ninth Circuit's memorandum disposition should be interpreted and implemented. (Docket Entry Nos. 368–370). In February 2024, the case was assigned to this court, which is temporarily performing judicial duties in the United States District Court for the Eastern District of California to ease the backlog in that overburdened district. (Docket Entry No. 382).

In April 2024, the court heard oral argument on the remand briefing. (Docket Entry No. 384). The court ordered supplemental briefing, which the parties submitted. (Docket Entry Nos. 385–387). The case is ripe for decision.

## II. Analysis

### A. The Alon Damages

C&C argues that the damages award against Alon should be reduced to $180,000, the costs Alon avoided by using the trespassing pipeline instead of a more expensive pipeline, between October 4, 2014 (the earliest possible date when liability accrued, according to the Ninth Circuit) and December 2015 (the date Alon rerouted the trespassing pipeline). (Docket Entry No. 386 at 3). C&C argues that Alon is judicially estopped from arguing against this damages measure because Alon previously argued, in its post-trial motion, that the original damages award should be reduced based on this same "costs avoided" measure, and "Alon prevailed on that argument on appeal." (*Id.* at 2).

The court is not persuaded that judicial estoppel applies. Judicial estoppel prevents a party from making an argument that contradicts a previous argument on which the party prevailed. *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012). Alon did not prevail on its argument that the "costs avoided" measure of damages was appropriate. The Ninth Circuit held only that the method underlying the jury's award was legally flawed; the Circuit expressly did not determine whether some "alternate methodology" could support damages against Alon. (Docket Entry No. 364 at 11).

Remittitur of the damages award to the "costs avoided" figure would also exceed this court's discretion because the jury did not make a finding about the costs Alon avoided by using the trespassing pipeline. A "remittitur must reflect the maximum amount sustainable by the proof." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1087 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2583, 216 L. Ed. 2d 1193 (2023). "[T]he purpose of remittitur is to maintain the jury's verdict while "lopping off an excrescence." *Id.* (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). "[T]his is best achieved by 'minimizing the extent of judicial interference with a matter that is otherwise within the jury's domain.'" *Id.* (quoting *Earl v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320, 1328 (2d Cir. 1990)) (alteration adopted). "[W]here the method the jury used to calculate its award can be ascertained by a review of the verdict, the judge is responsible for preserving the jury's findings to the greatest extent possible by using that method of calculation in determining the remittitur amount." *Id.* A district court abuses its discretion when it uses a "remittitur calculation . . . that . . . cannot be sustained using the jury's findings of what [was] actually proved at trial." *Id.*

The parties agree that the jury's award against Alon was based on the price of the gas Alon moved through the trespassing pipeline over a 17-month period. (Docket Entry No. 370 at 24;

Docket Entry No. 368 at 4). While the jury heard evidence that Alon had an alternative pipeline through which it could have moved the gas, at greater cost, the jury made no finding, express or implied, that Alon avoided costs by using the trespassing pipeline. The court may not remit the damages award to an amount representing a measure with no connection to any of the jury's findings. *See Unicolors*, 52 F.4th at 1087.

Consistent with the Ninth Circuit's mandate, the court strikes the damages award against Alon. *See Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1330 (11th Cir. 1999) (when "a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount") (citing *New York, L.E. & W.R. Co. v. Estill*, 147 U.S. 591 (1893)). The costs award against Alon is also vacated. *Furman v. Cirrito*, 782 F.2d 353, 355 (2d Cir. 1986) ("When a district court judgment is reversed or substantially modified on appeal, any costs awarded to the previously prevailing party are automatically vacated."). An amended judgment will be issued awarding C&C no damages against Alon.

  **B.**  **The Shell Damages**

C&C argues that the damages award against Shell should be reduced to $30,086,052.86. (Docket Entry No. 386 at 5). Shell argues that a new trial is required, but that if a new trial is not granted, the damages should be reduced to $17,126,728. (Docket Entry No. 387 at 3). C&C interprets the jury verdict as awarding damages measured by Shell's gross revenues from August 18, 2014, through December 2015, while Shell argues that the jury used Shell's net profits from October 2013 through December 2015. The parties agree that the Ninth Circuit's mandate requires "the court [to] revise the judgment to reflect that liability accrued no earlier than October 4, 2014," but what that revision looks like depends on the jury's damages methodology.

6

The first issue is whether this court can ascertain the jury's method of calculating damages by reviewing the verdict. If so, the court must "preserv[e] the jury's findings to the greatest extent possible by using that method of calculation in determining the remittitur amount." *Unicolors*, 52 F.4th at 1087.

In his closing argument to the jury, C&C's counsel asked for a damages award based on Shell's gross revenues from October 2013 to December 2015, totaling $54,394,706. (Docket Entry No. 241 at 1910). C&C's counsel asked the jury to disregard evidence about Shell's expenses because the only evidence came from C&C's own expert, and "Shell has to put on evidence of their expenses, not [us]." (*Id.* at 1911).

The jury's $33,230,768 damages award was much less than C&C had asked for. Nonetheless, C&C argues that the jury must have used Shell's gross revenues to calculate damages, beginning the calculation 60 days after C&C's June 2014 demand letter instead of the October 2013 start date C&C had asked for. C&C argues this must have been the jury's damages methodology because (1) Shell offered no evidence of its expenses; (2) the jury requested a calculator, which it would not have needed had it awarded net profits; (3) the jury awarded more than the figure C&C's expert testified were Shell's net profits; and (4) calculating Shell's revenues from August 18, 2014, through December 2015 results in the amount of $33,242,900.77, which is close to the jury's $33,230,768 award. (Docket Entry No. 386 at 3–4, Docket Entry No. 370 at 15).

Shell argues that C&C's own expert's calculations provided the jury evidence of Shell's expenses on which it could have based an award of net profits. (Docket Entry No. 387 at 4). Shell also argues that the jury could not have awarded gross revenues without disregarding the jury instructions and violating California law. (Docket Entry No. 387 at 5–6).

7

The court is persuaded that the jury did have sufficient evidence of Shell's expenses to award damages based on Shell's net profits. C&C's expert subtracted Shell's costs from its gross revenues to arrive at a net profits figure from October 2013 to December 2015. (Docket Entry No. 387-1 at 19).[1] This calculation was admitted into evidence by agreement of the parties, as part of the expert's report. (*Id.* at 2; Docket Entry No. 238 at 1170). The parties also stipulated to the admission of a chart of Shell's costs of operating the pipeline during the same timeframe. (Docket Entry No. 387-1 at 2; Docket Entry No. 240 at 1801). C&C argues that its expert's calculation of Shell's costs and profits was "inadmissible hearsay." (Docket Entry No. 386 at 5). But C&C's evidentiary objection to its own expert's report comes five years too late; the evidence was admitted by agreement and was properly before the jury.

Although the jury had sufficient evidence to award net profits, the court is not convinced by Shell's argument that the jury instructions, and California law, required the jury to award net profits. The relevant jury instruction stated:

> To recover damages for trespass, plaintiffs must prove the reasonable cost to rent similar property for the time when plaintiffs could not use their own property, or the benefits obtained by defendants because of their wrongful occupation. If there is evidence of both, plaintiffs are entitled to the greater of the two amounts.
>
> Benefits obtained may include a defendant's profits if they are directly linked to the wrongful occupation. Profits are total costs subtracted from total revenues.

(Docket Entry No. 221 at 27).

This instruction accurately stated California law. Benefits obtained by trespass are recoverable damages under California Civil Code § 3334, and those benefits may include proven profits. Shell incorrectly suggests that, because there was evidence of Shell's costs, the instruction

---

[1] The court denies C&C's motion to strike the declaration of Kasey J. Curtis in support of Shell's supplemental brief on remand. (Docket Entry No. 388). C&C states that the declaration "contains improper evidence, including evidence not previously submitted in this action." (*Id.*). But C&C does not identify the specific evidence it contends is improper.

required the jury to subtract the costs from any award based on benefits obtained.  The jury was instructed that any award *may* include profits, not that it *must* include profits.  Again, this is consistent with California law.  *See Bailey v. Outdoor Media Group*, 155 Cal. App. 4th 778, 788 (2007 ("We hold [] that when . . . the defendant presents credible evidence of the expenses it incurred, the trial court may offset those expenses against the gross income generated and award the profit as the benefit obtained under section 3334.").  Shell has not pointed to authority supporting the argument that gross revenues may not be awarded under section 3334 when there is evidence of costs.

The mere fact that the jury could have awarded net profits consistent with the evidence and the law does not mean that it did award net profits.  The jury could have awarded Shell's net profits from the trespassing pipeline from October 2013 through December 2015.  That calculation was presented to the jury in the report of C&C's expert.  (Docket Entry No. 387-1 at 19).  And although the jury's $33,230,768 award does not perfectly match the expert's calculation of $32,080,126, it is close.  On the other hand, the jury could have done as C&C argues, awarding Shell's gross revenues from August 18, 2014, through December 2015.  That number, too, is close to the jury's $33,230,768 award.  Unfortunately, the court does not believe that the mystery can be solved with reference to the clues offered by C&C.  The jury's request for a calculator is neither probative nor persuasive.

"[T]he method the jury used to calculate its award can[not] be ascertained by a review of the verdict." *Unicolors*, 52 F.4th at 1087.  The court cannot determine whether the jury based its damages award on Shell's net profits or its gross revenues, nor whether the jury began calculating damages from October 2013 (the date C&C purchased the property) or August 2014 (60 days after C&C's first demand letter).  Shell argues that this intractable uncertainty requires a new trial.  The

9

court instead concludes that the court must remit the damages based on a gross revenues methodology.

When it is not possible to ascertain which of two possible methodologies a jury used to calculate damages, any remittitur "must reflect the maximum amount sustainable by the proof," the jury's findings, and any legally permissible methodology.  *Unicolors*, 52 F.4th at 1087.  In ordering remittitur, the court may not "interfere[] [with] the jury's domain" by using a damages calculation that "cannot be sustained using the jury's findings."  *Id.*  A remittitur based on Shell's gross revenues would preserve more of the jury's award than a remittitur based on Shell's net profits.  The court could not order remittitur based on Shell's net profits without implicitly finding what the jury may not have found—that the evidence of Shell's costs was credible.

The court finds that a new trial is not needed.  Shell relies on *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 926 F. Supp. 2d 1100, 1104 (N.D. Cal. 2013), *vacated and remanded*, 786 F.3d 983 (Fed. Cir. 2015), *rev'd and remanded*, 580 U.S. 53, 137 S. Ct. 429, 196 L. Ed. 2d 363 (2016).  In that case, the Northern District of California ordered a new trial to determine Apple's damages from Samsung's patent infringement because the jury had awarded Apple damages for periods before Samsung had had notice of Apple's patents.  The court determined that there was "no readily identifiable amount that . . . could [be] remit[ted] to remedy th[e] problem" because the evidence of Samsung's sales was presented on a quarterly basis, and Samsung had received notice of some patents "somewhere in the middle" of certain quarters.  *Id.* at 1118–19.  "As the sales of these products may not have been evenly distributed throughout the quarter, the evidence is not sufficient to support even a pro-rated award for the sales in the second quarter of 2011, because such an award might include sales for which Samsung had no notice."  *Id.* at 1119–20.

*Apple* does not, as Shell argues, stand for the broad proposition that a court may not order remittitur based on an "extrapolati[on] of damages for more specific time frames." (Docket Entry No. 369 at 19). Shell is correct that C&C's requested remittitur requires calculating Shell's revenues for a partial month (October 4, 2014 to October 31, 2014). The most precise calculation the record allows is to average Shell's $1,930,961.79 of October revenues across 31 days (resulting in $62,289.09) and deducting three-days' worth ($186,867.27) from the total monthly revenues (resulting in $1,744,094.52). Shell is correct that this calculation assumes that its October revenues were evenly distributed throughout the month—a necessary assumption because Shell's daily revenues for the relevant period are not in evidence. This assumption could result in undercompensating C&C, if Shell's actual revenues in the first three days of October were less than $186,867.27. On the other hand, the assumption could overcompensate C&C if the revenues in those three days exceeded $186,867.27. This is the same type of potential inaccuracy that led the *Apple* court to order a new trial rather than remittitur.

Nonetheless, *Apple* is distinguishable on the ground that the margin of error there was far greater than it is here. The evidence in *Apple* was of Samsung's quarterly sales. Averaging quarterly sales across three months to approximate monthly sales, and then across individual days to approximate sales for a partial month, is a crude methodology, especially when billions of dollars are at issue. Here, by contrast, the record shows Shell's monthly revenues, and the margin of error involves only three days of revenues. A new trial is not warranted to forestall a potential error of this magnitude that could, depending on Shell's actual revenues for those three days, benefit either party.

Finally, the court rejects Shell's argument that C&C is judicially estopped from arguing for remittitur based on a gross revenues methodology. While it is true that C&C previously

11

defended the jury's award on the ground that C&C was entitled to damages that began accruing on the date of purchase, October 2013, the Ninth Circuit did not agree, so C&C did not prevail on its prior inconsistent position. *See Milton*, 692 F.3d at 993.

The court denies C&C's request for postjudgment interest. The Ninth Circuit determined that the trial court acted reasonably in denying C&C's request for prejudgment interest, "because of the great discrepancy between the amount of damages initially requested and the amount awarded by the jury." (Docket Entry No. 364 at 14). The damages calculations in this case have not been straightforward, as is apparent from the Ninth Circuit's reversal and the extensive briefing and oral argument on remand debating how to calculate an appropriate remittitur. Postjudgment interest, like prejudgment interest, is not appropriate here.

### III. Conclusion

The jury's damages award against Alon is stricken. A revised judgment will be issued. A remittitur of the jury's damages award against Shell is ordered. The award is revised to reflect Shell's gross revenues from October 4, 2014, through December 2015, equaling **$30,086,052.86**. C&C must inform the court no later than **May 24, 2024,** if it opts for a new trial in lieu of accepting the remittitur. If C&C does not opt for a new trial, the court will issue a revised judgment.

SIGNED on May 15, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge